# EXHIBIT 5

 

**BJA FY 17 Edward Byrne Memorial Justice Assistance Grant
(JAG) Program - Local Solicitation** 2017-H2238-CA-DJ

[Application]  [Correspondence]    Application: [Switch to ... ▼]

**Application Handbook**                    **Overview**

[Overview]

[Applicant
Information]

[Project Information]

[Budget and
Program
Attachments]

[Assurances and
Certifications]

[Review SF 424]

[Submit Application]

[Help/Frequently
Asked Questions]

[GMS Home]

[Log Off]

This handbook allows you to complete the application process for applying to the
BJA FY 17 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local
Solicitation. At the end of the application process you will have the opportunity to
view and print the SF-424 form.

| *Type of Submission | ○ Application Construction<br>◉ Application Non-Construction | ○ Preapplication Construction<br>○ Preapplication Non-Construction |
|---|---|---|
| *Type of Application | | New ▼ |
| | If Revision, select appropriate option | Type of Revision ▼ |
| | If Other, specify | |
| *Is application subject to review by state executive order 12372 process? | ○ Yes  This preapplication/application was made available to the state executive order 12372 process for review on [▼] [▼] [▼]<br>○ No  Program is not covered by E.O. 12372<br>◉ N/A  Program has not been selected by state for review | |

[ Save and Continue ]

 **BJA FY 17 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation** 2017-H2238-CA-DJ 

<u>Application</u>          <u>Correspondence</u>          Application: Switch to ... ▼

**Application Handbook**

<u>Overview</u>

<u>Applicant Information</u>

<u>Project Information</u>

<u>Budget and Program Attachments</u>

<u>Assurances and Certifications</u>

<u>Review SF 424</u>

<u>Submit Application</u>

<u>Help/Frequently Asked Questions</u>

<u>GMS Home</u>

<u>Log Off</u>

## Applicant Information

Verify that the following information filled is correct and fill out any missing information. To save changes, click on the "Save and Continue" button.

\* - Indicates required field

| | |
|---|---|
| *Is the applicant delinquent on any federal debt? (If Yes is selected, please upload an explanation) | ○ Yes  ◉ No |
| *Employer Identification Number (EIN) | 95  - 6000735 |
| *Type of Applicant | Township ▼ |
| Type of Applicant (Other): | |
| *Organizational Unit | Office of the Mayor |
| *Legal Name (Legal Jurisdiction Name) | City of Los Angeles |
| *Vendor Address 1 | City Hall, 200 North Spring S |
| Vendor Address 2 | |
| *Vendor City | Los Angeles |
| Vendor County/Parish | |
| *Vendor State | California ▼ |
| *Vendor ZIP | 90012  -3239    Zip+4 Lookup |
| **Please provide Point of Contact Information for matters involving this application** | |
| *Contact Prefix: | Mrs. ▼ |
| Contact Prefix (Other): | |
| *Contact First Name: | Mayra |
| Contact Middle Initial: | |
| *Contact Last Name: | Medel |
| Contact Suffix: | Select a Suffix ▼ |
| Contact Suffix (Other) : | |

| | |
|---|---|
| *Contact Title: | Grant Specialist |
| *Contact Address Line 1: | City Hall, 200 North Spring Street, Room |
| Contact Address Line 2: | |
| *Contact City | Los Angeles |
| Contact County: | |
| *Contact State: | California ▼ |
| *Contact Zip Code: | 90012 - 3239    Zip+4 Lookup |
| *Contact Phone Number: | 213   978   2619   Ext: |
| Contact Fax Number: | 213   978   0718 |
| *Contact E-mail Address: | mayra.medel@lacity.org    Email Help |

Save and Continue

 **BJA FY 17 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation** 2017-H2238-CA-DJ 

Application          Correspondence          Application: [Switch to ...    ▼]

| **Application Handbook** | **Project Information** |
|---|---|

Overview

Applicant Information

Project Information

Budget and Program Attachments

Assurances and Certifications

Review SF 424

Submit Application

Help/Frequently Asked Questions

GMS Home

Log Off

**\*Descriptive Title of Applicant's Project**
City of Los Angeles: Community Law Enforcement and Recovery (CLEAR) Program.  County of Los Angeles; Crime Reduction and Public Safety Improvement Initiative.

**\*Areas Affected by Project**
City and County of Los Angeles, California

**Proposed Project**

| | **\*Start Date** | October ▼ | 01 ▼ | 2016 ▼ |
|---|---|---|---|---|
| | **\*End Date** | September ▼ | 30 ▼ | 2020 ▼ |

**\*Congressional Districts of**

| | Project | Congressional District 31, CA ▲<br>Congressional District 32, CA<br>Congressional District 33, CA<br>Congressional District 34, CA ▼ |
|---|---|---|

**\*Estimated Funding**

| Federal | $ 1953647 | .00 |
|---|---|---|
| Applicant | $ 0 | .00 |
| State | $ 0 | .00 |
| Local | $ 0 | .00 |
| Other | $ 0 | .00 |
| Program Income | $ 0 | .00 |
| TOTAL | $ 1953647 | .00 |

[Save and Continue]



BJA FY 17 Edward Byrne Memorial Justice Assistance Grant
(JAG) Program - Local Solicitation  2017-H2238-CA-DJ



| Application | Correspondence | Application: | Switch to ... ▼ |

**Application Handbook**

Overview

Applicant Information

Project Information

Budget and Program Attachments

Assurances and Certifications

Review SF 424

Submit Application

Help/Frequently Asked Questions

GMS Home

Log Off

This page allows you to upload the Budget Detail Worksheet, Financial Management and System of Internal Controls Questionnaire (FCQ) form, Program Narrative, and other Program attachments. Click the attach button to continue.

## FCQ Attachment

In accordance with the Part 200 Uniform Requirements as set out at 2 C.F.R. 200.205, Federal agencies must have in place a framework for evaluating the risks posed by applicants before they receive a Federal award. To facilitate part of this risk evaluation, all applicants are to download, complete, and submit the Financial Management and System of Internal Controls Questionnaire.

You can download the current FCQ form here.

| JAG 17 Attachment 8 - Financial Management and System of Internal Controls Questionnaire .pdf | Delete |

Your FCQ form has been successfully attached, but the application has not been submitted to OJP. Please continue with your application.

## Budget and other Program Attachments

| JAG 17 Attachment 1 - City of LA Qualification and Reservation of Rights.pdf | Delete |
| JAG 17 Attachment 2 - City of LA Abstract.pdf | Delete |
| JAG 17 Attachment 3 - City of LA Program Narrative.pdf | Delete |
| JAG 17 Attachment 4 - City of LA Budget Narrative.pdf | Delete |
| JAG 17 Attachment 5 - City of LA Review Narrative.pdf | Delete |
| JAG 17 Attachment 6 - MOU_8.31.17.pdf | Delete |
| JAG 17 Attachment 7 - City of LA Disclosure of Pending Applications.pdf | Delete |
| JAG 17 Attachment 8 - Financial Management and System of Internal Controls Questionnaire..pdf | Delete |
| JAG 17 Attachment 9 - City Disclosure of High Risk Status.pdf | Delete |
| JAG 17 Attachment 10 - City Disclosure of Lobbying Activities.pdf | Delete |
| JAG 17 Attachment 11 - LA County Letter to DOJ (1).pdf | Delete |
| JAG 17 Attachment 12 - LA County Budget Narratives and Summary (1).pdf | Delete |
| JAG 17 Attachment 13 - LA County Disclosure of Pending Applications.pdf | Delete |
| JAG 17 Attachment 14 - LA County Disclosure of High Risk Status.pdf | Delete |
| JAG 17 Attachment 15 - LA County Disclosure of Lobbying Activities.pdf | Delete |
| Click on the Attach Button to upload an attachment | Attach |

Continue

Your file has been successfully attached, but the application has not been submitted to OJP. Please continue with your application.

Please download the latest version of  Adobe Acrobat Reader®.



**BJA FY 17 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation** 2017-H2238-CA-DJ



[Application](#)      [Correspondence](#)      Application: Switch to ... ▼

**Application Handbook**

[Overview](#)

[Applicant Information](#)

[Project Information](#)

[Budget and Program Attachments](#)

[Assurances and Certifications](#)

[Review SF 424](#)

[Submit Application](#)

[Help/Frequently Asked Questions](#)

[GMS Home](#)

[Log Off](#)

## Assurances and Certifications

To the best of my knowledge and belief, all data in this application/preapplication is true and correct, the document has been duly authorized by the governing body of the applicant and the applicant will comply with the attached assurances if the assistance is awarded.

Your typed name, in lieu of your signature represents your legal binding acceptance of the terms of this application and your statement of the veracity of the representations made in this application. The document has been duly authorized by the governing body of the applicant and the applicant will comply with the following:

1. [A␣␣urance␣](#)
2. [Certification␣␣Regarding Lobbying; Debarment, Su␣pen␣ion and Other Re␣pon␣ibility Matter␣; and Drug Free Workplace requirement␣.](#)

If you are an applicant for any Violence Against Women grants, this includes the Certification of Compliance with the Statutory Eligibility Requirements of the Violence Against Women Act.

\* - Indicates required field

| | |
|---|---|
| **\*Prefix:** | Mr. ▼ |
| Prefix (Other): | |
| **\*First Name:** | Jeff |
| Middle Initial: | |
| **\*Last Name:** | Gorell |
| Suffix | Suffix: ▼ |
| Suffix (Other): | |
| **\*Title:** | Deputy Mayor |
| **\*Address Line 1:** | City Hall, 200 North Spring Street, Room |
| Address Line 2: | |
| **\*City:** | Los Angeles |
| County: | |
| **\*State:** | California ▼ |
| **\*Zip Code:** | 90012 - 3239   [Zip+4 Lookup](#) |
| **\*Phone:** | 213 - 978 - 0687   Ext : |
| Fax: | 213 - 978 - 0718 |
| **\*E-mail:** | jeff.gorell@lacity.org   [Email Help](#) |

\* ☑ I have examined the information provided here regarding the signing authority and certify it is accurate. I am the signing authority, or have been delegated or designated formally as the signing authority by the appropriate authority of official, to provide the information requested throughout this application system on behalf of this jurisdiction. Information regarding the signing authority, or the delegation of such authority, has been placed in a file and is available on-site for immediate review.

Save and Continue



OMB APPROVAL NUMBER
1121-0140

EXPIRES 05/31/2019

U.S. DEPARTMENT OF JUSTICE

OFFICE OF JUSTICE PROGRAMS

CERTIFIED STANDARD ASSURANCES

On behalf of the Applicant, and in support of this application for a grant or cooperative agreement, I certify under penalty of perjury to the Office of Justice Programs (OJP), U.S. Department of Justice ("Department"), that all of the following are true and correct:

(1) I have the authority to make the following representations on behalf of myself and the Applicant. I understand that these representations will be relied upon as material in any OJP decision to make an award to the Applicant based on its application.

(2) I certify that the Applicant has the legal authority to apply for the federal assistance sought by the application, and that it has the institutional, managerial, and financial capability (including funds sufficient to pay any required non-federal share of project costs) to plan, manage, and complete the project described in the application properly.

(3) I assure that, throughout the period of performance for the award (if any) made by OJP based on the application--

    a. the Applicant will comply with all award requirements and all federal statutes and regulations applicable to the award;

    b. the Applicant will require all subrecipients to comply with all applicable award requirements and all applicable federal statutes and regulations; and

    c. the Applicant will maintain safeguards to address and prevent any organizational conflict of interest, and also to prohibit employees from using their positions in any manner that poses, or appears to pose, a personal or financial conflict of interest.

(4) The Applicant understands that the federal statutes and regulations applicable to the award (if any) made by OJP based on the application specifically include statutes and regulations pertaining to civil rights and nondiscrimination, and, in addition--

    a. the Applicant understands that the applicable statutes pertaining to civil rights will include section 601 of the Civil Rights Act of 1964 (42 U.S.C. § 2000d); section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794); section 901 of the Education Amendments of 1972 (20 U.S.C. § 1681); and section 303 of the Age Discrimination Act of 1975 (42 U.S.C. § 6102);

    b. the Applicant understands that the applicable statutes pertaining to nondiscrimination may include section 815(c) of Title I of the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. § 3789d(c)); section 1407(e) of the Victims of Crime Act of 1984 (42 U.S.C. § 10604(e)); section 299A(b) of the Juvenile Justice and Delinquency Prevention Act of 2002 (42 U.S.C. § 5672(b)); and that the grant condition set out at section 40002(b)(13) of the Violence Against Women Act (42 U.S.C. § 13925(b)(13)) also may apply;

    c. the Applicant understands that it must require any subrecipient to comply with all such applicable statutes (and associated regulations); and

    d. on behalf of the Applicant, I make the specific assurances set out in 28 C.F.R. §§ 42.105 and 42.204.

(5) The Applicant also understands that (in addition to any applicable program-specific regulations and to applicable federal regulations that pertain to civil rights and nondiscrimination) the federal regulations applicable to the award (if any) made by OJP based on the application may include, but are not limited to, 2 C.F.R. Part 2800 (the DOJ "Part 200 Uniform Requirements") and 28 C.F.R. Parts 22 (confidentiality - research and statistical information), 23 (criminal intelligence systems), and 46 (human subjects protection).

(6) I assure that the Applicant will assist OJP as necessary (and will require subrecipients and contractors to assist as necessary) with the Department's compliance with section 106 of the National Historic Preservation Act of 1966 (54 U.S.C. § 306108), the Archeological and Historical Preservation Act of 1974 (54 U.S.C. §§ 312501-312508), and the National Environmental Policy Act of 1969 (42 U.S.C. §§ 4321-4335), and 28 C.F.R. Parts 61 (NEPA) and 63 (floodplains and wetlands).

(7) I assure that the Applicant will give the Department and the Government Accountability Office, through any authorized representative, access to, and opportunity to examine, all paper or electronic records related to the award (if any) made by OJP based on the application.

(8) I assure that, if the Applicant is a governmental entity, with respect to the award (if any) made by OJP based on the application--

   a. it will comply with the requirements of the Uniform Relocation Assistance and Real Property Acquisitions Act of 1970 (42 U.S.C. §§ 4601-4655), which govern the treatment of persons displaced as a result of federal and federally-assisted programs; and

   b. it will comply with requirements of 5 U.S.C. §§ 1501-1508 and 7324-7328, which limit certain political activities of State or local government employees whose principal employment is in connection with an activity financed in whole or in part by federal assistance.

I acknowledge that a materially false, fictitious, or fraudulent statement (or concealment or omission of a material fact) in this certification, or in the application that it supports, may be the subject of criminal prosecution (including under 18 U.S.C. §§ 1001 and/or 1621, and/or 42 U.S.C. § 3795a), and also may subject me and the Applicant to civil penalties and administrative remedies for false claims or otherwise (including under 31 U.S.C. §§ 3729-3730 and 3801-3812). I also acknowledge that OJP awards, including certifications provided in connection with such awards, are subject to review by the Department, including by OJP and by the Department's Office of the Inspector General.

[ Close Window ]

NOTE  You mu  t click on the "Accept" button at the bottom of the page      before clo  ing thi    window

U S  DEPARTMENT OF JUSTICE
OFFICE OF JUSTICE PROGRAMS
OFFICE OF THE CHIEF FINANCIAL OFFICER

CERTIFICATIONS REGARDING LOBBYING; DEBARMENT , SUSPENSION AND OTHER RESPONSIBILITY MATTERS;
AND DRUG-FREE WORKPLACE REQUIREMENTS

Applicants should refer to the regulations cited below to determine the certification to which they are required to attest.
Applicant    hould al  o review the in  truction  for certification included in the regulation  before completing thi  form
Acceptance of this form provides for compliance with certification requirements under 28 CFR Part 69, "New Restrictions on
Lobbying," 2 CFR Part 2867, "DOJ Implementation of OMB Guidance on Nonprocurement Debarment and Suspension," and
28 CFR Part 83, "Government-wide Debarment and Suspension," and Government-wide Requirements for Drug-Free
Workplace (Grant  ) " The certification    hall be treated a  a material repre  entation of fact upon which reliance will be placed
when the Department of Justice determines to award the covered transaction, grant, or cooperative agreement.

1. LOBBYING As required by Section 1352, Title 31 of the U.S. Code, and implemented at 28 CFR Part 69, for persons
entering into a grant or cooperative agreement over $100,000, as defined at 28 CFR Part 69, the applicant certifies that:

(a) No Federal appropriated fund  have been paid or will be paid, by or on behalf of the under  igned, to any per  on for
influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of
Congress, or an employee of a Member of Congress in connection with the making of any Federal grant, the entering into of
any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal grant or
cooperative agreement;

(b) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or
attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or
an employee of a Member of Congress in connection with this Federal grant or cooperative agreement, the undersigned shall
complete and  ubmit Standard Form  LLL, "Di  clo  ure of Lobbying Activitie  ," in accordance with it  in  truction  ;

(c) The undersigned shall require that the language of this certification be included in the award documents for all subawards
at all tiers (including subgrants, contracts under grants and cooperative agreements, and subcontracts) and that all sub-
recipients shall certify and disclose accordingly.

2  DEBARMENT, SUSPENSION, AND OTHER RESPONSIBILITY MATTERS (DIRECT RECIPIENT)

Pursuant to Executive Order 12549, Debarment and Suspension, implemented at 2 CFR Part 2867, for prospective
participants in primary covered transactions, as defined at 2 CFR Section 2867.20(a), and other requirements:

A. The applicant certifies that it and its principals:

(a) Are not pre  ently debarred,  u  pended, propo  ed for debarment, declared ineligible,  entenced to a denial of Federal
benefits by a State or Federal court, or voluntarily excluded from covered transactions by any Federal department or agency;

(b) Have not within a three-year period preceding this application been convicted of or had a civil judgment rendered against
them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public
(Federal, State, or local) tran  action or contract under a public tran  action; violation of Federal or State antitru  t  tatute  or
commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or
receiving stolen property;

(c) Have not within a two-year period preceding this application been convicted of a felony criminal violation under any
Federal law, unle     uch felony criminal conviction ha  been di  clo  ed in writing to the Office of Ju  tice Program  (OJP) at
Ojpcompliancereporting@usdoj.gov, and, after such disclosure, the applicant has received a specific written determination
from OJP that neither suspension nor debarment of the applicant is necessary to protect the interests of the Government in
this case.

(d) Are not pre  ently indicted for or otherwi  e criminally or civilly charged by a governmental entity (Federal, State, or local)
with commission of any of the offenses enumerated in paragraph (b) of this certification; and

(e) Have not within a three-year period preceding this application had one or more public transactions (Federal, State, or local) terminated for cause or default.

B. Where the applicant is unable to certify to any of the statements in this certification, he or she shall attach an explanation to this application.

3. FEDERAL TAXES

A. If the applicant is a corporation, the applicant certifies that either (1) the corporation has no unpaid Federal tax liability that has been assessed, for which all judicial and administrative remedies have been exhausted or have lapsed, that is not being paid in a timely manner pursuant to an agreement with the authority responsible for collecting the tax liability, or (2) the corporation has provided written notice of such an unpaid tax liability (or liabilities) to OJP at Ojpcompliancereporting@usdoj.gov, and, after such disclosure, the applicant has received a specific written determination from OJP that neither suspension nor debarment of the applicant is necessary to protect the interests of the Government in this case.

B. Where the applicant is unable to certify to any of the statements in this certification, he or she shall attach an explanation to this application.

4. DRUG-FREE WORKPLACE (GRANTEES OTHER THAN INDIVIDUALS)

As required by the Drug-Free Workplace Act of 1988, and implemented at 28 CFR Part 83, Subpart F, for grantees, as defined at 28 CFR Sections 83.620 and 83.650:

A. The applicant certifies that it will or will continue to provide a drug-free workplace by:

(a) Publishing a statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the grantee's workplace and specifying the actions that will be taken against employees for violation of such prohibition;

(b) Establishing an on-going drug-free awareness program to inform employees about

(1) The dangers of drug abuse in the workplace;

(2) The grantee's policy of maintaining a drug-free workplace;

(3) Any available drug counseling, rehabilitation, and employee assistance programs; and

(4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c) Making it a requirement that each employee to be engaged in the performance of the grant be given a copy of the statement required by paragraph (a);

(d) Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the grant, the employee will

(1) Abide by the terms of the statement; and

(2) Notify the employer in writing of his or her conviction for a violation of a criminal drug statute occurring in the workplace no later than five calendar days after such conviction;

(e) Notifying the agency, in writing, within 10 calendar days after receiving notice under subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title, to: Department of Justice, Office of Justice Programs, ATTN: Control Desk, 810 7th Street, N.W., Washington, D.C. 20531. Notice shall include the identification number(s) of each affected grant;

(f) Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted

(1) Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1973, as amended; or

(2) Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency;

(g) Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

As the duly authorized representative of the applicant, I hereby certify that the applicant will comply with the above certifications.

Accept



BJA FY 17 Edward Byrne Memorial Justice Assistance Grant
(JAG) Program - Local Solicitation  2017-H2238-CA-DJ



Application          Correspondence          Application: | Switch to ... ▼ |

**Review SF-424**  Print a Copy

| Application Handbook | | | |
|---|---|---|---|
| | **APPLICATION FOR FEDERAL ASSISTANCE** | **2. DATE SUBMITTED** | **Applicant Identifier** |
| Overview | **1. TYPE OF SUBMISSION** Application Non Construction | **3. DATE RECEIVED BY STATE** | **State Application Identifier** |
| Applicant Information | | **4. DATE RECEIVED BY FEDERAL AGENCY** | **Federal Identifier** |
| Project Information | | | |
| Budget and Program Attachments | **5.APPLICANT INFORMATION** | | |
| | **Legal Name** City of Los Angeles | | **Organizational Unit** Office of the Mayor |
| Assurances and Certifications | **Address** City Hall, 200 North Spring Street, Room 303 Los Angeles, California 90012 3239 | | **Name and telephone number of the person to be contacted on matters involving this application** Medel, Mayra (213) 978-2619 |
| Review SF 424 | | | |
| Submit Application | **6. EMPLOYER IDENTIFICATION NUMBER (EIN)** 95-6000735 | | **7. TYPE OF APPLICANT** Township |
| Help/Frequently Asked Questions | **8. TYPE OF APPLICATION** New | | **9. NAME OF FEDERAL AGENCY** Bureau of Justice Assistance |
| GMS Home | **10. CATALOG OF FEDERAL DOMESTIC ASSISTANCE** NUMBER: 16.738 CFDA Edward Byrne Memorial Justice Assistance TITLE: Grant Program | | **11. DESCRIPTIVE TITLE OF APPLICANT'S PROJECT** City of Los Angeles: Community Law Enforcement and Recovery (CLEAR) Program. County of Los Angeles; Crime Reduction and Public Safety Improvement Initiative |
| Log Off | | | |
| | **12. AREAS AFFECTED BY PROJECT** City and County of Los Angeles, California | | |
| | **13. PROPOSED PROJECT** Start Date      October 01, 2016 End Date:      September 30, 2020 | | **14. CONGRESSIONAL DISTRICTS OF** a. Applicant b. Project                    CA34 |
| | **15. ESTIMATED FUNDING** | | **16. IS APPLICATION SUBJECT TO REVIEW BY STATE EXECUTIVE ORDER 12372 PROCESS?** Program has not been selected by state for review |
| | Federal | $1,953,647 | |
| | Applicant | $0 | |
| | State | $0 | |
| | Local | $0 | |
| | Other | $0 | |
| | Program Income | $0 | **17. IS THE APPLICANT DELINQUENT ON ANY FEDERAL DEBT?** N |
| | TOTAL | $1,953,647 | |

**18. TO THE BEST OF MY KNOWLEDGE AND BELIEF, ALL DATA IN THIS APPLICATION PREAPPLICATION ARE TRUE AND CORRECT, THE DOCUMENT HAS BEEN DULY AUTHORIZED**

BY GOVERNING BODY OF THE APPLICANT AND THE APPLICANT WILL COMPLY WITH THE
ATTACHED ASSURANCES IF THE ASSISTANCE IS REQUIRED.

Continue

     BJA FY 17 Edward Byrne Memorial Justice Assistance Grant
(JAG) Program - Local Solicitation    2017-H2238-CA-DJ     

<u>Help/Frequently
Asked Questions</u>

<u>GMS Home</u>

<u>Log Off</u>

Submit Application

Your application for the BJA FY 17 Edward Byrne Memorial Ju tice A i tance Grant
(JAG) Program  Local Solicitation ha  been  ucce fully  ubmitted. You will no
longer be able to edit any information  ubmitted. However, you can log in any time
to view the application information.

You will be contacted by the Program Office when your application is processed or
any other action is required by you.



**ERIC GARCETTI**
**MAYOR**

August 31, 2017

Tracey Trautman, Acting Director
Bureau of Justice Assistance
Office of Justice Programs
810 Seventh Street, NW
Washington, D.C. 20531

Dear Ms. Trautman:

      This letter is being submitted as part of the City of Los Angeles' ("City") FY 2017
application ("Application") for the Edward Byrne Memorial Justice Assistance Grant ("JAG")
Program. Please be advised that the City submits its Application for the FY 2017 JAG grant
with the qualifications and reservations set forth in this letter.

      The City's Application is being submitted in response to the FY 2017 JAG Local
Solicitation ("Local Solicitation"). The Local Solicitation stated that "two new express
conditions" would be included in individual FY 2017 JAG awards. With respect to the "program
or activity" to be funded, these two conditions ("Conditions") would require state and local
jurisdictions to: "(1) permit personnel of the U.S. Department of Homeland Security (DHS) to
access any correctional or detention facility in order to meet with an alien (or an individual
believed to be an alien) and inquire as to his or her right to be or remain in the United States and
(2) provide at least 48 hours' advance notice to DHS regarding the scheduled release date and
time of an alien in the jurisdiction's custody when DHS requests such notice in order to take
custody of the alien pursuant to the Immigration and Nationality Act."

      Presently, the legality of the Conditions has been challenged by several lawsuits,
including one by the City. In connection with one such lawsuit, the United States Department of
Justice ("DOJ") explained that an applicant is not required to accept or reject the Conditions at
the time the application is submitted and that "[o]nce OJP generates the award package and
sends each approved applicant an award notification, the applicant has at least 45 calendar days
to sign and submit the award acceptance document to OJP....Only at *that* time – upon signing

the award document – does a grantee commit to abide by the grant conditions." (Defendant's Opposition to Plaintiff's Motion to Expedite Briefing Schedule, *The City of Chicago v. Sessions*, No. 1:17-cv-05720 (N.D. Ill.))

In light of these representations made by the DOJ, the continuing legal challenges to the validity of the Conditions, and notwithstanding the City's submission of the Certified Standard Assurances as part of its Application, the City is submitting its Application with the qualification that it is withholding any commitment to, or confirmation of, its compliance with the Conditions.

Further, the City expressly reserves its rights to challenge the legality of the Conditions upon receipt of the final award conditions, to continue to challenge their legality through the City's lawsuit (City of Los Angeles' Motion to Intervene; Memorandum of Points and Authorities in Support of that Motion to Intervene, *City and County of San Francisco vs Sessions*, No. 4:17-cv-04642-SBA (N.D. Cal.)), and to avail itself of any court orders made in its or any other case regarding the validity of the Conditions.

Sincerely,

Jeff Gorell
Deputy Mayor
City of Los Angeles
Mayor's Office of Public Safety

City of Los Angeles                                  FY 2017 Justice Assistance Grant

**Abstract – Attachment 2**

**Applicant Name:**      City of Los Angeles

**Project Title:** Community Law Enforcement and Recovery (CLEAR) Program

**Goals of Project and Strategies Used:**

The City of Los Angeles will utilize its Justice Assistance Grant funding to support the Community Law Enforcement and Recovery Program (CLEAR). The CLEAR Program began in 1997 as an innovative City/County partnership to combat gang violence in Los Angeles by vertically-integrating a system of neighborhood policing and gang prosecution.

The primary purpose of CLEAR is to facilitate the recovery of targeted gang-infested communities through collaboration between criminal justice agencies including the Los Angeles Police Department (LAPD), Los Angeles County Probation Department, Los Angeles City Attorney, Los Angeles County District Attorney, California Department of Corrections, and Los Angeles Mayor's Office. Through Community Impact Teams, CLEAR engages residents of each CLEAR site integrating resident input to improve quality of life issues.

There are currently 9 CLEAR sites, located in the following LAPD divisions: Northeast, Newton, Southeast, Foothill, Southwest, Hollenbeck/Boyle Heights, Hollenbeck/Ramona Gardens, Rampart, and 77th. Each CLEAR site is assigned a Deputy City Attorney, a Deputy District Attorney, and Probation Officer, in addition to 1 Detective, 1 Sergeant, and 8 Police Officers.

**Project Identifiers:**
- Gangs
- Violence-Violent Crime
- Community Prosecution

City of Los Angeles                                   FY 2017 Justice Assistance Grant

## Program Narrative – Attachment 3

## Community Law Enforcement and Recovery (CLEAR) Program

The Community Law Enforcement and Recovery (CLEAR) Program began in 1997 as an innovative City of Los Angeles/Los Angeles County partnership to combat gang violence in Los Angeles. The primary purpose of CLEAR is to facilitate the recovery of gang-infested communities. This is accomplished by decreasing gang crime in targeted communities through an effective, cross-agency collaboration with City and County criminal justice agencies. The CLEAR team includes the Los Angeles Police Department (LAPD), Los Angeles County Probation Department, Los Angeles City Attorney, Los Angeles County District Attorney, and the California Department of Corrections. The City of Los Angeles will dedicate 100% of its FY 2017 Justice Assistance Grant allocation to support the CLEAR program.

CLEAR has had a verifiable impact in decreasing gang crime and on maintaining lower levels of gang crime. Until 2014, the City of Los Angeles had experienced 12 years of continuous declines in crime, with crime in CLEAR sites experiencing larger declines than the rest of the City. In 2015, the City of Los Angeles, along with many other cities nationally, began experiencing an uptick in crime. In 2016, Citywide, Total Violent Crime increased 10.2% with Total Part I Crime increasing 5.5%. Citywide Homicide increased by 13.1%. In that same year however, total Homicides in the primary and secondary reporting districts of the CLEAR sites decreased by 22%.[1] Despite the overall crime increases experienced City-wide, the continued success of the CLEAR model has resulted in significantly smaller increases in violent and gang-related crimes.

Community members have also been meaningfully engaged in the process of community recovery. These members, along with government agencies (both within and outside the criminal

---

[1] Los Angeles Police Department

City of Los Angeles                              FY 2017 Justice Assistance Grant

justice system), have created innovative mechanisms to collaborate amongst themselves and with these communities.  Furthermore, monthly activity reports are created to assist each site with monitoring and revising plans and strategies.

**CLEAR Partners**

The key to CLEAR's success has been the immediate availability of police officers, District Attorneys, City Attorneys, and Probation and Parole Officers in the defined primary and secondary target areas.  The role of each team member is outlined below:

• **The Los Angeles Police Department** deploys officers who are designated to respond to gang-related criminal activity within their respective CLEAR target area, and coordinates law enforcement efforts to suppress gang crime.

• **The California Department of Corrections** monitors and closely supervises all parolees during their re-entry into society to avert them from engaging in criminal activity upon their release.

• **The Los Angeles County Probation Department** works with the City Attorney to ensure that gang members receive appropriate conditions of probation that prohibit association with other gang members, through curfews and restrictions on returning to designated areas.

• **The Los Angeles County District Attorney's Office and City Attorney's Office** vertically prosecute the most difficult cases generated by CLEAR unit arrests using novel and innovative prosecution strategies that may include granting cross-designation status to city prosecutors, so that cases can be effectively pursued in superior court. They also track all arrests made by the CLEAR unit and prepare reports on the progress of the prosecution efforts, from the point of arrest through the final court disposition of each case, including the length of imprisonment or the terms of probation ordered, and prepare and prosecute

Attachment 3                              2

City of Los Angeles                                    FY 2017 Justice Assistance Grant

civil injunctions against gang member activities within the CLEAR sites. CLEAR team members also collaborate with residents within each CLEAR site through the creation of a Community Impact Team (CIT).   The CIT's focus is specifically on quality of life issues such as graffiti, litter and juvenile loitering.   The CIT also facilitates a linkage between CLEAR's suppression efforts and other gang prevention and intervention programs. Community members on the CITs identify effective community organizations in their area and facilitate a relationship between those organizations and law enforcement agencies, which partner to secure support from individuals and businesses within the community.

**Selection of CLEAR Sites**

Areas with high rates of gang-related crime are generally selected as CLEAR sites.   Within each site, there is a primary target area and a secondary target area, identified by LAPD Reporting Districts, which track all LAPD crime data.   Primary target areas are comprised of those reporting districts with the most gang activity in the CLEAR site area.   Secondary target areas are comprised of those reporting districts with a high level of gang activity, but at lower levels than in the primary target areas.   Program resources are deployed first to the primary target areas and then to secondary target areas.   This approach ensures that resources are efficiently deployed to areas with the most gang-related crime.

**<u>Goals, Objectives and Evaluation</u>**

The goal of the CLEAR program is to reduce the propagation of gangs, gang membership, and gang-related criminal activity.   An independent evaluation of the effectiveness of the CLEAR program is prepared and submitted to the CLEAR Executive Board on an annual basis.   The Executive Board chooses the entity that will conduct the evaluation through a

City of Los Angeles                          FY 2017 Justice Assistance Grant

competitive bidding process after sending out requests for proposals.  The evaluation includes a description of the extent to which the project has accomplished the following:

   a)  A decrease in gang crime in each CLEAR site;

   b)  A decrease in violent gang crime in each CLEAR site; and

   c)  The prosecution of those arrested for gang-related crimes in the CLEAR sites.

In addition, the CLEAR program will utilize the following performance measures consistent with Bureau of Justice Assistance Grant Program:

   a)  Percent change in number of individuals arrested in a targeted group by crime type;

   b)  Expected change in arrests;

   c)  Percent change in reported crime rates in a community by crime type; and

   d)  Expected change in crime rates.

An evaluation consultant will provide ongoing monthly, quarterly, and annual reports that contain comparative data analysis on crime reduction in the CLEAR sites. Details of the evaluation process include:

- Site Activity Statistics: On a monthly basis, collect data reflecting site activities.  Provide law enforcement with access to an electronic web-based system to input collected data. Include numbers of arrests, prosecutions, and other related activities.

- On a quarterly basis, obtain and analyze gang crime data for all CLEAR sites using a statistical model approved by the CLEAR Executive Board.  Compare site gang crime statistics to division-wide gang crime statistics.

- Create and distribute four semi-annual reports to be presented to the Board that will include the following content in one or more of the four reports:

Attachment 3                          4

City of Los Angeles                                     FY 2017 Justice Assistance Grant

    o   An implementation study that details how the program was implemented across all sites during the contract period, citing any challenges and successes as well as making recommendations for the future;

    o   Document all pertinent changes that occurred during the contract period, including but not limited to Reporting Districts, staff turnover, analysis of which sites have the greatest change in gang-related crime, etc.;

    o   A comprehensive overview that details CLEAR operations and outcomes in a historical, cross-site context; and

    o   An analysis of CLEAR's impact on each community including feedback from community members.

**Project Implementation**

    Funding from the JAG 17 award will be utilized for the salaries for nine City Attorneys, District Attorneys, and Probation Officers at each of the following CLEAR sites:

| CLEAR site | City Attorney | District Attorney | Probation Officer |
|---|---|---|---|
| Northeast | X | X | X |
| Newton | X | X | X |
| Southeast | X | X | X |
| Foothill | X | X | X |
| Southwest | X | X | X |
| Boyle Heights | X | X | X |
| Ramona Gardens | X | X | X |
| Rampart | X | X | X |
| 77th | X | X | X |

    Funding will ensure that program activities are not interrupted and that all staff can continue to dedicate their time to their roles within the CLEAR team.  Funding will cover CLEAR staffing and grant administration for the entirety of the grant term, through September 30, 2020. As the fiscal agent for this grant, the Los Angeles Mayor's Office of Public Safety will obtain all

Attachment 3                                     5

City of Los Angeles                                    FY 2017 Justice Assistance Grant

necessary internal approvals to expend the grant and enter into formal agreements with the partner agencies.   The operational teams in the CLEAR sites will continue to implement the specific CLEAR strategy for the identified area and continue coordination of services with the office of Gang Reduction and Youth Development (GRYD).   The CLEAR Executive Committee will continue to oversee and monitor CLEAR activities in the target areas. CLEAR activities will be evaluated, and based upon the initial findings strategies in all sites, will be modified and expanded.

**Project Management**

The Mayor's Office of Public Safety will manage the City of Los Angeles Justice Assistance Grant Award Program.  The Office has over a decade of experience in managing grant funds and a history of grant compliance. The Office is responsible for securing and administering the City's State and Federal public safety and criminal justice grants, all of which require programmatic and fiscal audits.

The City and County of Los Angeles are grouped as disparate jurisdictions for this grant. The City will act as the fiscal agent and submit all required reports and grant adjustments, as needed.  The City will ensure that County expenditures are in compliance with grant guidelines. The City and County will plan to expend the funding based on a 50-50 split of the total allocation (after the deduction of 10% of the award by the City of Los Angeles for the administration of the grant), amounting to $879,141.15 each for the City and County respectively, and $195,364.70 for administration.

Attachment 3                                    6

City of Los Angeles                                FY 2017 Justice Assistance Grant

## Budget and Budget Narrative – Attachment 4
## Community Law Enforcement and Recovery (CLEAR) Program

**Budget Narrative**

The City of Los Angeles will dedicate 100% of its FY 2017 Justice Assistance Grant allocation to support the CLEAR program in order to maximize the cost effectiveness of the grant expenditure. The award allocation will assist to sustain approximately 20% - 30% of the salaries for the City Attorneys, District Attorneys, and Probation Officers assigned to the CLEAR areas. In addition, LAPD Officers assigned to CLEAR areas are funded by the City of Los Angeles entirely. The remaining costs of the CLEAR program are supported by the City and County general funds.

An independent evaluation of the effectiveness of the CLEAR program is also conducted and includes the analysis of crime data within CLEAR sites, prosecution rates for CLEAR areas, as well as follow the performance measures consistent with the BJA- JAG Program. Until 2014, the City of Los Angeles had experienced 12 years of continuous declines in crime, with crime in CLEAR sites experiencing larger declines than the rest of the City. In 2015, the City of Los Angeles, along with many other cities nationally, began experiencing an uptick in crime. In 2016, Citywide, Total Violent Crime increased 10.2% with Total Part I Crime increasing 5.5%. Citywide Homicide increased by 13.1%. In that same year however, total Homicides in the primary and secondary reporting districts of the CLEAR sites decreased by 22%.[1] Despite the overall crime increases experienced City-wide, the continued success of the CLEAR model has resulted in significantly smaller increases in violent and gang-related crimes. Despite the overall crime increases experienced City-wide, the CLEAR program has not only proven to be effective program, but also cost efficient as well.

The Justice Assistance Grant award will be allocated to the following departments as noted:

**A. Personnel Services:** *List each position by title. Show the annual salary rate and the percentage of time to be devoted to the project. Compensation paid for employees engaged in grant activities must be consistent with that paid for similar work within the applicant organization.*

<u>Los Angeles City Attorney</u>
The Los Angeles City Attorney's Office dedicates nine FTE Deputy City Attorneys at the following CLEAR sites (Boyle Heights, Foothill, Newton, Northeast, Ramona Gardens, Southeast, Southwest, Rampart and 77th). These positions will be staffed by full time dedicated and experienced Deputy City Attorneys from the City Attorney Gang Unit. Each prosecutor assigned to the CLEAR Team will vertically prosecute all misdemeanor offenses and local ordinance violations committed by targeted gang members, focus on gang related nuisance and quality of life issues, work cooperatively with the other Team members, and participate in the respective Community Impact Teams. They will also attend and participate in community meetings and events related to CLEAR operations in the respective sites.

---

[1] Los Angeles Police Department

Attachment 4

City of Los Angeles                              FY 2017 Justice Assistance Grant

2 FTE Los Angeles Deputy City Attorney III X $7,272.20 X 12 months
@ 29.807042% = $52,023.07

1 FTE Los Angeles Deputy City Attorney III X $15,473.47 X 12 months
@ 14.008667% = $26,011.52

1 FTE Los Angeles Deputy City Attorney III X $15,266.33 X 12 months
@ 14.1987429% = $26,011.52

1 FTE Los Angeles Deputy City Attorney III X $15,250.40 X 12 months
@ 14.2135744% = $26,011.52

1 FTE Los Angeles Deputy City Attorney III X $14,919.40 X 12 months
@ 14.528915% = $26,011.52

1 FTE Los Angeles Deputy City Attorney II X $11,932.47 X 12 months
@ 18.165784% = $26,011.52

1 FTE Los Angeles Deputy City Attorney I X $9,244.80 X 12 months
@ 23.4469858% = $26,011.52

1 FTE Los Angeles Deputy City Attorney I X $8,960.00 X 12 months
@ 24.192265% = $26,011.52


**TOTAL CITY ATTORNEY SALARIES: $ 234,103.71**

<u>The Mayor's Office</u>
The City of Los Angeles Mayor's Office of Public Safety administers the Justice Assistance
Award. The Office serves on the CLEAR Executive Committee and monitors the Professional
Services Agreements with the County and the project evaluator. Additionally, the Office
provides fiscal management and oversees reporting to the Bureau of Justice Assistance. The City
of LA is retaining 10% of the total award allocation for administration and management of the
grant.

1 FTE Mayoral Aide VIII X $2,981.78 X 36 months @ 26.652790% = $28,610.19

4 FTE Mayoral Aide V X $1,925.02 X 36 months @ 41.284120% = $114,440.77

**TOTAL MAYOR'S OFFICE SALARIES= $143,050.96**

**TOTAL PERSONNEL: $ 377,154.64**


**B. Fringe Benefits:** *Fringe benefits should be based on actual known costs or an established
formula. Fringe benefits are for the personnel listed in budget category and only for the
percentage of time devoted to the project. Fringe benefits on overtime hours are limited to FICA,
Workman's Compensation, and Unemployment Compensation.*


Attachment 4

City of Los Angeles                                    FY 2017 Justice Assistance Grant

1 FTE Mayoral Aide VIII X $2,981.78 X 36 months @ 9.746925% = $10,462.75

4 FTE Mayoral Aide V X $1,925.02 X 36 months @ 15.097603% = $41,850.99

**TOTAL FRINGE BENEFITS = $ 52,313.74**

**F. Consultants/Contracts:** *Provide a description of the service to be provided by contract and an estimate of the cost.*

Community Law Enforcement and Recovery (CLEAR) Program

*Los Angeles County District Attorney*
The District Attorney's Office dedicates 9 FTE Deputy District Attorneys for the CLEAR sites (Northeast, Newton, Southwest, Southeast, Boyle Heights, Rampart, Ramona Gardens, 77th, and Foothill). The Deputy District Attorneys are from the District Attorney's Hardcore Gang Division. Each dedicated Attorney must be a Deputy District Attorney III or higher with a minimum of five years of experience as a Deputy District Attorney. The Deputy District Attorney will review all felony arrests of adult gang members made by the CLEAR Team and files charges where appropriate. The Deputy District Attorney(s) vertically prosecutes (from the filing stage to sentencing), all violent gang related felonies committed by the targeted gang or occurring in the targeted area. Additionally, the Deputy District Attorneys works with CLEAR investigators to insure felony cases are fully prepared for trial. In cases which probation is granted, the Deputy District Attorney advocates the imposition of gang terms and conditions such as prohibiting association with known gang members and possessing firearms or other deadly weapons. The CLEAR Deputy District Attorneys will vigorously litigate felony probation violations that are filed on the targeted gang members. The Deputy District Attorneys will also provide ongoing advice to CLEAR officers and investigators on legal issues and case preparation.

9 FTE Los Angeles County Deputy District Attorney III X $ 12,764.67 X 12 months = $1,378,584.36 @ 28.31865583% = $390,396.56

**TOTAL DISTRICT ATTORNEY FUNDING: $ 390,396.56**

*Los Angeles County Probation Department*
The Probation Department dedicates 9 FTE Deputy Probation Officers for the CLEAR sites (Northeast, Newton, Southwest, Southeast, Rampart, Boyle Heights, Ramona Gardens, 77th, and Foothill). The staff dedicated to carrying out the Probation Department's participation in the coordination, development and implementation of CLEAR are the Deputy Probation Officer II (s). These officers coordinate and conduct the following field-related activities: police ride-alongs, sweeps, field visits, Community Based Organization contacts, search and seizures, warrant pickups, etc. They also coordinate Community Impact Teams and facilitate the monthly team meetings with law enforcement, community representatives, community-based agencies, and other city and county agencies for each target neighborhood. Additionally, DPO's serve as liaisons between the Probation Department and the Los Angeles Police Department, District Attorney, City Attorney, State Parole, courts and community-based agencies in matters related to the program. They are also responsible for monitoring and enforcing the terms and conditions of probation on

Attachment 4

City of Los Angeles                                        FY 2017 Justice Assistance Grant

both assigned and non-assigned cases, effecting timely detection and verification of violations, imposing conditions of probation specifically related to gang behavior, ensuring that probation violations will lead to timely sanctioning, maintaining awareness of gang and criminal activity, maintaining efforts to discourage gang group activity and minimize gang cohesiveness, and redirecting individual gang members into non-gang activities, etc.

9 FTE Los Angeles County Deputy Probation Officer II X $7,329.55 X 12 months = $791,591.40 @ 32.041854% = $253,640.56

**TOTAL PROBATION FUNDING: $253,640.56**

**TOTAL CONTRACTUAL SERVICES: $644, 037.12**

**G. Other Costs** – List items (e.g., rent, reproduction, telephone, janitorial or security services, and investigative or confidential funds) by major type and the basis of the computation. For example, provide the square footage and the cost per square foot for rent, or provide a monthly rental cost and how many months to rent.

Mayor's Office personnel will use smart phones for grant-related purposes.

2 smart phones @ $41.68/ month x 12 months = $1,000.32

**TOTAL OTHER COSTS: $1,000.32**

Attachment 4

City of Los Angeles                                    FY 2017 Justice Assistance Grant

**Budget Detail**
**Community Law Enforcement and Recovery (CLEAR) Program**

---

**A. Personnel** – *List each position by title and name of employee, if available.  Show the annual salary rate and the percentage of time to be devoted to the project.  Compensation paid for employees engaged in grant activities must be consistent with that paid for similar work within the applicant organization.*

| Name/Position | Computation | Cost |
|---|---|---|
| Deputy City Attorney III | 2 FTE X $7,272.20 X 12 months @ 29.807042% | $52,023.07 |
| | 1 FTE X $15,473.47 X 12 months @ 14.008667% | $26,011.52 |
| | 1 FTE X $15,266.33 X 12 months @ 14.1987429% | $26,011.52 |
| | 1 FTE III X $15,250.40 X 12 months @ 14.2135744% | $26,011.52 |
| | 1 FTE X$14,919.40 X 12 months  @ 14.528915% | $26,011.52 |
| Deputy City Attorney II | 1 FTE X $11,932.47 X 12 months @ 18.165784% | $26,011.52 |
| Deputy City Attorney I | 1 FTE $9,244.80 X 12 months @ 23.4469858% | $26,011.52 |
| | 1 FTE X $8,960.00 X 12 months @ 24.192265% | $26,011.52 |
| Mayoral Aide VIII (1 Director) | 1 FTE X $2,981.78 X 36 months @ 26.652790% | $28,610.19 |
| Mayoral Aide V (2 Grant Specialists & 2 Accountants) | 4 FTE X $1,925.02 X 36 months @ 41.284120% | $114,440.77 |
| | **TOTAL** | **$ 377,154.67** |

Attachment 4

City of Los Angeles                                    FY 2017 Justice Assistance Grant

---

**B. Fringe Benefits –** *Fringe benefits should be based on actual known costs or an established formula.  Fringe benefits are for the personnel listed in budget category and only for the percentage of time devoted to the project.  Fringe benefits on overtime hours are limited to FICA, Workman's Compensation, and Unemployment Compensation.*

| Name/Position | Computation | Cost |
|---|---|---|
| Mayoral Aide VIII (1 Director) | 1 FTE X $2,981.78 X 36 months @ 9.746925% X CAP 37 | $10,462.75 |
| Mayoral Aide V (2 Grant Specialists & 2 Accountants) | 4 FTE V X $1,925.02 X 36 months @ 15.097603% X CAP 37 | $41,850.99 |
| | | **TOTAL $ 52,313.74** |

---

**C. Travel** – *Itemize travel expenses of project personnel by purpose (e.g., staff to training, field interviews, advisory group meeting, etc.).  Show the basis of computation (e.g., six people to 3-day training at $X airfare, $X lodging, $X subsistence).*

| Purpose of Travel | Location | Item | Computation | Cost |
|---|---|---|---|---|
| | | | **TOTAL** | **$0.00** |

---

**D. Equipment** – *List non-expendable items that are to be purchases.  Non-expendable equipment is tangible property having a useful life of more than two years and an acquisition cost of $5,000 or more per unit.  Expendable items should be included either in the "Supplies" category or in the "Other" category.  Rented or leased equipment costs should be listed in the "Contractual" category.*

| Item | Computation | Cost |
|---|---|---|
| | **TOTAL** | **$ 0.00** |

---

**E. Supplies** – *List items by type (office supplies, postage, training materials, copying paper, and expendable equipment items costing less than $1,000, such as books, hand held tape recorders) and show the basis for computation.  Supplies include any materials that are expendable or consumed during the course of the project.*

| Supply Items | Computation | Cost |
|---|---|---|
| | **TOTAL** | **$0.00** |

---

**F. Consultants/Contracts**

**Consultant Fees:** *For each consultant enter the name, if know, service to be provided, hourly or daily fee (8-hour day), and estimated time on the project.  Consultant fees in excess of $450 per day require additional justification and prior approval from BJA.*

---

City of Los Angeles                    FY 2017 Justice Assistance Grant

| Name of Consultant | Service Provided | Computation | Cost |
|---|---|---|---|

**Contracts:** *Provide a description of the service to be provided by contract and an estimate of the cost.*

## COMMUNITY LAW ENFORCEMENT AND RECOVERY (CLEAR)

***District Attorney' Office***: The District Attorney's Office dedicates 9 FTE Deputy District Attorneys for the CLEAR sites (Boyle Heights, Foothill, Newton, Northeast, Ramona Gardens, Southeast, Southwest, Rampart and 77th). The Deputy District Attorneys are from the District Attorney's Hardcore Gang Division. Each dedicated Attorney must be a Deputy District Attorney III or higher with a minimum of five years of experience as a Deputy District Attorney. The Deputy District Attorney will review all felony arrests of adult gang members made by the CLEAR Team and files charges where appropriate. The Deputy District Attorney(s) vertically prosecutes (from the filing stage to sentencing), all violent gang related felonies committed by the targeted gang or occurring in the targeted area. Additionally the Deputy District Attorneys works with CLEAR investigators to insure felony cases are fully prepared for trial. In cases which probation is granted, the Deputy District Attorney advocates the imposition of gang terms and conditions such as prohibiting association with known gang members and possessing firearms or other deadly weapons. The CLEAR Deputy District Attorneys will vigorously litigate felony probation violations that are filed on the targeted gang members. The Deputy District Attorneys will also provide ongoing advice to CLEAR officers and investigators on legal issues and case preparation.

9 FTE X $ 12,764.67 X 12 months = $1,378,584.36 @ 28.3186558% = $390,396.56

### TOTAL DISTRICT ATTORNEY FUNDING: $ 390,396.56

***Probation Department:*** The Probation Department dedicates 9 FTE Deputy Probation Officers for the CLEAR sites (Boyle Heights, Foothill, Newton, Northeast, Ramona Gardens, Southeast, Southwest, Rampart and 77th). The staff dedicated to carrying out the Probation Department's participation in the coordination, development and implementation of CLEAR are the Deputy Probation Officer II (s). These officers coordinate and conduct the following field-related activities: police ride-alongs, sweeps, field visits, Community Based Organization contacts, search and seizures, warrant pickups, etc. They also coordinate Community Impact Teams and facilitate the monthly team meetings with law enforcement, community representatives, community-based agencies, and other city and county agencies for each target neighborhood. Additionally, DPO's serve as liaisons between the Probation Department and the Los Angeles Police Department, District Attorney, City Attorney, State Parole, courts and community-based agencies in matters related to the program. They are also responsible for monitoring and enforcing the terms and conditions of probation on both assigned and non-assigned cases, effecting timely detection and verification of violations, imposing conditions of probation specifically related to gang behavior, ensuring that probation violations will lead to timely sanctioning, maintaining awareness of gang and criminal activity, maintaining efforts to discourage gang group activity and minimize gang cohesiveness, and redirecting individual gang members into non-gang activities, etc.

Attachment 4

City of Los Angeles                                     FY 2017 Justice Assistance Grant

9 FTE X $7,329.55 X 12 months = $791,591.40 @ 32.041854% = $253,640.56

**TOTAL PROBATION FUNDING: $ 253,640.56**

Evaluation Consultant
A consultant has been selected by a competitive bid process to provide evaluation services for the City of Los Angeles.  The scope of work will include data analysis for all of the primary and secondary target areas.  Quarterly reports are provided to the Executive Committee and data is used to address crime trends and deployment for each particular site, as well as collect the data required for grant reporting.  Additional support is provided for revisions and updates for the CLEAR operations manual and the ongoing evaluation of the Community Impact Teams.

**TOTAL EVALUATION = $0.00**

|  |  |
|---|---|
| **TOTAL CONTRACTUAL SERVICES** | **$ 644,037.21** |

**G. Other Costs** – *List items (e.g., rent, reproduction, telephone, janitorial or security services, and investigative or confidential funds) by major type and the basis of the computation.  For example, provide the square footage and the cost per square foot for rent, or provide a monthly rental cost and how many months to rent.*

| Description | Computation | Cost |
|---|---|---|
| 2 smart phones | $41.68 month x 12 months | $1,000.32 |
|  | **TOTAL** | **$1,000.32** |

Attachment 4

City of Los Angeles                                    FY 2016 Justice Assistance Grant

**CLEAR PROGRAM Budget Summary** –*Transfer the totals for each category to the spaces below.  Compute the total project costs.*

| Budget Category | Amount |
|---|---|
| **A. Personnel** | **$377,154.67** |
| **B. Fringe Benefits** | **$52,313.74** |
| **C. Travel** | **$0** |
| **D. Equipment** | **$0** |
| **E. Supplies** | **$0** |
| **F. Consultants/Contracts** | **$644,037.12** |
| **G. Other Costs** | **$1,000.32** |
| **H. Indirect Costs** | **$0** |
| **TOTAL PROJECT COSTS** | **$1,074,505.85** |
| **Total Request** | **$1,074,505.85** |
| | 1,074,505.85 |

Attachment 4

City of Los Angeles                                    FY 2017 Justice Assistance Grant

**Review Narrative – Attachment 5**

The City of Los Angeles anticipates making its Fiscal Year 2017 Justice Assistance Grant Application available to the Los Angeles City Council for its review and comment by September 30, 2017.  There will be opportunity for public comment at the Committee meeting, prior to the full Council meeting.  The Agendas listing this item will be made public at least 72 hours in advance of each meeting via the City of LA website. Following Council approval, this document will become public record upon filing with the City Clerk's office.  A Memorandum of Understanding is included as an attachment to this application.

**MOU – Attachment 6**

MEMORANDUM OF UNDERSTANDING BETWEEN
THE COUNTY OF LOS ANGELES AND THE CITY OF LOS ANGELES
2017 EDWARD BYRNE MEMORIAL JUSTICE ASSISTANCE GRANT (JAG) PROGRAM
AWARD

This Memorandum of Understanding ("MOU") is made and entered into this _____ day of
_____ 2017, by and between the County of Los Angeles, a subdivision of the State of
California, acting by and through its governing body, the Los Angeles County Board of
Supervisors, ("County"), and the City of Los Angeles, acting by and through it governing body,
the City Council, ("City").

## WITNESSETH

WHEREAS, this MOU is authorized pursuant to Section 23005 of the Government Code, and
was specifically authorized by the County (refer to Board File dated ___/___/___ ); and

WHEREAS, this MOU is authorized by the Los Angeles City Council and the Mayor of Los
Angeles (refer to Council File # _____ dated _____); and

WHEREAS, the United States Department of Justice, Office of Justice Programs' Bureau of
Justice Assistance ("BJA") administers the U.S. Department of Justice, FY 2017 Edward Byrne
Memorial Justice Assistance Grant ("FY17 JAG") Program; and

WHEREAS, BJA requires this MOU be executed between the County and City prior to
allocating the FY17 JAG funds; and

WHEREAS, each governing body, in performing governmental functions or in paying for the
performance of governmental functions hereunder, shall make that performance or those
payments from current revenues legally available to that party; and

WHEREAS, each governing body finds that the performance of this MOU is in the best interests
of both parties, that the undertaking will benefit the public, and that the division of costs fairly
compensates the performing party for the services or functions under this MOU; and

WHEREAS, the City agrees to serve as the applicant/fiscal agent for the FY17 JAG funds
allocated to the City and County and to provide the County with the amount of JAG funds
approved by BJA for use as approved by BJA under the FY17 JAG program.

NOW THEREFORE, the COUNTY and CITY agree as follows:

1

### Section 1.

The term of this MOU shall commence on October 1, 2016 and end September 30, 2020. Said term is subject to the provisions herein.

### Section 2.

Upon the disbursement by BJA to the City of all FY17 JAG funds allocated to the City and County, the City agrees to disburse on a reimbursement basis to County that amount allocated by BJA to the County (the "Disbursement Amount"). The Disbursement Amount is the amount of JAG funds allocated to the County by BJA less 10% of such allocated amount to be retained by the City as compensation to the City for its role as applicant/fiscal agent of such FY17 JAG funds. The County agrees to use the FY17 JAG funds allocated to it for those projects approved by BJA under the FY17 JAG program as set forth in the application for the FY17 JAG funds submitted by the City to BJA. Prior to disbursement of the Disbursement Amount of FY17 JAG funds to the County, the County agrees to enter into a contract with the City setting forth the County's and the City's assurances and obligations regarding the use of FY17 JAG funds, which shall include without limitation compliance with all applicable laws and reporting requirements related to the FY17 JAG program and the use of the FY17 JAG funds (the "Contract"). Currently the Disbursement Amount is contemplated to be Eight Hundred Seventy-Nine Thousand One Hundred Forty-One Dollars and Fifteen Cents ($879,141.15).

### Section 3.

Nothing in the performance of this MOU shall impose any liability for claims against the City or County other than claims for which liability may be imposed by the California Tort Claims Act, or claims by the State or Federal Government for unallowable expenditure of the funds provided by this MOU.

### Section 4.

Any expenditures made prior to the execution of this MOU shall be eligible for reimbursement by FY17 JAG funds only upon explicit approval by BJA, such approval to be made in BJA's sole discretion. Funding for all periods of this MOU is subject to the continuing availability of Federal funds for this program. The MOU may be terminated immediately upon written notice to County of a loss or reduction of Federal grant funds.

### Section 5.

Upon execution of this MOU, the County shall provide performance reports on a quarterly and semi-annual basis demonstrating progress in achieving desired goals and outcomes in a form and manner as required under the FY17 JAG program.

### Section 6.

Each of the parties to this MOU is a public entity. In contemplation of the provisions of Section 895.2 of the Government Code of the State of California imposing certain tort liability jointly upon public entities, solely by reason of such entities being parties to an Agreement as defined by Section 895.2 of said Code, the parties hereto, as between themselves, pursuant to the authorization contained in Section 895.4 and 895.6 of said Code, will each assume the full liability imposed upon it or upon any of its officers, agents, or employees by law, for injury caused by a negligent or wrongful act or omission occurring in the performance of this

Agreement, to the same extent that such liability would be imposed in the absence of Section 895.2 of said Code. To achieve the above stated purpose, each party indemnifies and holds harmless the other party solely by virtue of said Section 895.2. The provision of Section 2778 of the California Civil Code is made a part hereto as if fully set forth herein. County certifies that it has adequate self-insured retention of funds to meet any obligation arising from this MOU.  City also certifies that it has adequate self-insured retention of funds to meet any obligation arising from this MOU.

Each party to this MOU will be responsible for its own actions in providing services under this MOU and shall not be liable for any civil liability that may arise from the furnishing of the services by the other party.

Section 7.

The parties to this MOU warrant that they will abide by all the Federal, State and other governmental rules and regulations applicable to the FY17 JAG funds. The County shall be liable to the City, as fiscal agent, for any sums spent under the FY17 JAG grant found to be ineligible by the State or Federal government. The County shall cooperate and assist the City in any audit, or administrative or judicial actions brought by the State or Federal government concerning the activities funded by this MOU.

Section 8.

The parties to this MOU do not intend for any third party to obtain a right by virtue of this MOU.

Section 9.

By entering into this MOU, the parties do not intend to create any obligations express or implied other than those set out herein.  Further, this MOU shall not create any rights in any party not a signatory hereto.

IN WITNESS WHEREOF, the governing bodies of the parties hereto have authorized the foregoing Memorandum of Agreement between the County of Los Angeles and the City of Los Angeles to be executed on the _____ day of _____ 2017.

COUNTY OF LOS ANGELES

APPROVED AS TO FORM:
OFFICE OF COUNTY COUNSEL


By: _____
SACHI A. HAMAI
Chief Executive Officer

By: _____
JOSEPH A. LANGTON
Principal Deputy County Counsel

Date: _____

Date: _____

Attach County Seal Here




CITY OF LOS ANGELES
ERIC GARCETTI, Mayor

Attach City Seal Here

By:_____

Date: _____




APPROVED AS TO FORM:
CITY OF LOS ANGELES
MICHAEL N. FEUER, City Attorney

ATTEST:
HOLLY WILCOTT, City Clerk


By: _____
Barak Vaughn, Deputy City Attorney

By: _____
      Deputy City Clerk

Date: _____

Date: _____


Council File/CAO Number _____ Date _____ _____

Said Agreement is Number _____of City Contracts

4

City of Los Angeles                                    FY 2017 Justice Assistance Grant

**Disclosure of Pending Applications – Attachment 7**


The City of Los Angeles does not have pending applications submitted within the last 12 months
for federally funded grants or subgrants that include requests for funding to support the same
project being proposed under this solicitation and will cover the identical cost items outlined in
the budget narrative and worksheet in the application under this solicitation.



**U.S. DEPARTMENT OF JUSTICE**
**OFFICE OF JUSTICE PROGRAMS**

OMB Number: 1121-0329
Expiration Date: 12/31/2018

## FINANCIAL MANAGEMENT AND SYSTEM OF INTERNAL CONTROLS QUESTIONNAIRE

The financial management system of each non-Federal entity must provide for the following
  · Retention requirements for records
  · Requests for transfer of records
  · Methods for collection, transmission and storage of information
  · Access to records
  · Restrictions on public access to records

(1) Identification, in its accounts, of all Federal awards received and expended and the Federal programs under which they were received. Federal program and Federal award identification must include, as applicable, the CFDA title and number, Federal award identification number and year, name of the Federal agency, and name of the pass-through entity, if any.

(2) Accurate, current, and complete disclosure of the financial results of each Federal award or program.

(3) Records that identify adequately the source and application of funds for federally-funded activities. These records must contain information pertaining to Federal awards, authorizations, obligations, unobligated balances, assets, expenditures, income and interest and be supported by source documentation.

(4) Effective control over, and accountability for, all funds, property, and other assets. The non-Federal entity must adequately safeguard all assets and assure that they are used solely for authorized purposes.

(5) Comparison of expenditures with budget amounts for each Federal award.

(6) Written procedures to document the receipt and disbursement of Federal funds including procedures to minimize the time elapsing between the transfer of funds from the United States Treasury or the pass-through entity and the disbursement by the non-Federal entity whether the payment is made by electronic funds transfer, or issuance or redemption of checks, warrants, or payment by other means.

(7) Written procedures for determining the allowability of costs.

## APPLICANT ORGANIZATIONAL INFORMATION

1. Name of Organization and Address:

| | |
|---|---|
| **Organization Name:** | The Mayor's Office of Public Safety |
| Street1: | 200 N. Spring St., Suite 303 |
| Street2: | |
| City: | Los Angeles |
| State: | CA: California |
| Zip Code: | 90012 |

2. Authorized Representative's Name and Title:

| Prefix: | First Name: | Middle Name: |
|---|---|---|
| | Caitlin | |

| Last Name: | Suffix: |
|---|---|
| Ishigooka | |

Title:
Director of Grants Finance

| 3. Phone: | (213) 978-2619 | 4. Fax: | |
|---|---|---|---|

5. Email: caitlin.ishigooka@lacity.org

| 6. Year Established: | 7. Employer Identification Number (EIN): | 8. DUNS Number: |
|---|---|---|
| 1791 | 95-6000735 | 0699283490000 |

9. Type of Organization:

☐ State   ☒ Municipality   ☐ Non-Profit   ☐ Higher Education   ☐ Tribal   ☐ For-Profit
☐ Other

**U.S. DEPARTMENT OF JUSTICE**
**OFFICE OF JUSTICE PROGRAMS**

OMB Number: 1121-0329
Expiration Date: 12/31/2018

| AUDIT INFORMATION |
|---|

An audit is conducted using generally accepted auditing standards (GAAS) or Generally Accepted Governmental Auditing Standards (GAGAS) and results in an audit report with an opinion.

10. The organization has undergone the following types of audit(s)(Please check all that apply):

☒ OMB A-133 Single Audit
☐ Financial Statement Audit
☐ Defense Contract Agency Audit (DCAA)
☐ None
☐ Programmatic Audit & Agency:

☐ Other Audit & Agency:

11. Most Recent Audit:  ☒ Within the past 12 months  ☐ Within the past two years  ☐ More than two years

Name of Audit Agency/Firm: MGO CPA

**AUDITOR'S OPINION:**

12. On the most recent audit, what was the auditor's opinion?

☒ Unqualified Opinion   ☐ Qualified Opinion   ☐ Disclaimer, Going Concern or Adverse Opinions

Please enter the number of findings:

Please enter the amount of questioned costs:

Were material weaknesses noted in either the Financial Statement or Single Audit?  ☐ Yes   ☐ No

| ACCOUNTING SYSTEM |
|---|

13. Which of the following best describes your accounting system:

☐ Manual   ☒ Automated   ☐ Combination

| | |
|---|---|
| 14. Does the accounting system identify the receipt and expenditure of program funds separately for each grant? | ☒ Yes  ☐ No  ☐ Not Sure |
| 15. Does the accounting system provide for the recording of expenditures for each grant/contract by budget cost categories shown in the approved budget? | ☒ Yes  ☐ No  ☐ Not Sure |
| 16. Does your accounting system have the capability to document the recording of cost sharing or match for each grant? Can you determine if documentation is available to support recorded match or cost share? | ☒ Yes  ☐ No  ☐ Not Sure |
| 17. Are time distribution records maintained for each employee that specifically identify effort charged to a particular grant or cost objective? | ☒ Yes  ☐ No  ☐ Not Sure |
| 18. Does the accounting/financial system include budgetary controls to preclude incurring obligations or costs in excess of total funds available or by budget cost category (e.g. Personnel, Travel, etc.)? | ☒ Yes  ☐ No  ☐ Not Sure |
| 19. Is the organization familiar with the existing Federal regulation and guidelines containing the Cost Principles and procedures for the determination and allowance of costs in connection with Federal grants? | ☒ Yes  ☐ No  ☐ Not Sure |



**U.S. DEPARTMENT OF JUSTICE**
**OFFICE OF JUSTICE PROGRAMS**

OMB Number: 1121-0329
Expiration Date: 12/31/2018

## PROPERTY STANDARDS, PROCUREMENT STANDARDS, AND TRAVEL POLICIES

### PROPERTY STANDARDS

| | |
|---|---|
| 20. Does your property management system(s) provide for maintaining: (1) a description of the equipment; (2) an identification number; (3) source of the property, including the award number; (4) where title vests; (5) acquisition date; (6) federal share of property cost; (7) location and condition of the property; (8) acquisition cost; & (9) ultimate disposition information? | ☒ Yes   ☐ No   ☐ Not Sure |

### PROCUREMENT STANDARDS

| | |
|---|---|
| 21. Does your organization maintain written procurement procedures which (1) avoid unnecessary purchases; (2) provide an analysis of lease and purchase alternatives; and (3) provide a process for soliciting goods and services? | ☒ Yes   ☐ No   ☐ Not Sure |
| 22. Does your procurement system provide for the conduct to determine selection on a competitive basis and documentation of cost or price analysis for each procurement action? | ☒ Yes   ☐ No   ☐ Not Sure |
| 23. Does your procurement system include provisions for checking the "Excluded Parties List" system for suspended or debarred sub-grantees and contractors, prior to award? Please visit www.sam.gov. | ☒ Yes   ☐ No   ☐ Not Sure |

### TRAVEL POLICY

24. Does your organization:

(a) maintain a standard travel policy?      ☒ Yes      ☐ No

(b) adhere to the Federal Travel Regulation? (FTR)   ☒ Yes      ☐ No

### SUBRECIPIENT MANAGEMENT AND MONITORING

| | |
|---|---|
| 25. (For Pass-through entities only). Does your organization have controls in place to monitor activities of subrecipients, as necessary, to determine that Federal awards are used for authorized purposes in compliance with laws, regulations, and the provisions of the award and that performance goals are achieved (2 CFR200)? | ☒ Yes   ☐ No   ☐ Not Sure<br>☐ N/A (Your organization does not make subawards.) |

## STANDARDS FOR FINANCIAL MANAGEMENT SYSTEMS AND APPLICANT CERTIFICATION

I certify that the above information is complete and correct to the best of my knowledge. This document must be certified by the organization's Authorized Representative, Executive Director, Chief Financial Officer, Chairman of the Board of Directors, or similar position.

| Name: | [signature] | Date: | 2017-08-31 |
|---|---|---|---|

| Title: | ☐ Executive Director   ☐ Chief Financial Officer   ☐ Chairman |
|---|---|
| | ☒ Other   Director of Grants and Fiance |

Phone:   (213) 978-2619

City of Los Angeles                                    FY 2017 Justice Assistance Grant

**Disclosure of High Risk Status – Attachment 9**

The City of Los Angeles is not designated as a High Risk by another federal grant making agency.

Attachment 9                            1

City of Los Angeles                                          FY 2017 Justice Assistance Grant

**Disclosure of Lobbying Activities – Attachment 10**

The City of Los Angeles does not expend funds for Lobbying Activities.

LA County Letter to DOJ - Attachment 11

Dear Department of Justice,

We submit this letter along with our application for grant funding under the Edward Byrne Memorial Justice Assistance Grant Program ("Byrne JAG Program") to provide notice to the U.S. Department of Justice ("DOJ") that the County of Los Angeles (the "County") has determined that it cannot agree to comply with the two new conditions that DOJ has claimed it will impose on grant recipients because those conditions are unlawful.

## I.    Introduction

DOJ recently published its FY 2017 Solicitation for the Office of Justice Programs Byrne JAG Program grants. As in the past two years, the solicitation requires that JAG Grant applicants certify compliance with 8 U.S.C. § 1373. Edward Byrne Memorial Justice Assistance Grant Program FY 2017 State Solicitation at 31 ("Byrne JAG Solicitation").[1] This year, the solicitation includes two new "express conditions" with which applying jurisdictions must comply: Jurisdictions must "(1) permit personnel of the U.S. Department of Homeland Security ("DHS") to access any correctional or detention facility in order to meet with an alien (or an individual believed to be an alien) and inquire as to his or her right to be or remain in the United States" ("Access Condition"); and "(2) provide at least 48 hours' advance notice to DHS regarding the scheduled release date and time of an alien in the jurisdiction's custody when DHS requests such notice in order to take custody of the alien pursuant to the Immigration and Nationality Act" ("Notice Condition").[2] For the reasons specified below, the County cannot agree to the new Access and Notice Conditions because the conditions are unlawful.

## II.    DOJ Cannot Lawfully Impose the Access and Notice Conditions on Applicants

DOJ has stated in the Byrne JAG grant solicitation forms that FY2017 grant recipients will be required to comply with the Access and Notice Conditions and that these two "express conditions" "will be an authorized and priority purpose of the award." Byrne JAG Solicitation at 31.[3] For the reasons stated below, the conditions exceed DOJ's delegated authority, violate

---

[1] *Available at* https://www.bja.gov/Funding/JAGState17.pdf (last visited Aug. 19, 2017) (state solicitation). DOJ also has posted its application for local Byrne JAG applicants, which contains identical conditions. *See* Edward Byrne Memorial Justice Assistance Grant Program FY 2017 Local Solicitation, *available at* https://www.bja.gov/Funding/JAGLocal17.pdf (last visited Aug. 19, 2017). Los Angeles County receives state Byrne JAG funding on a "pass-through" basis through California, and receives local Byrne JAG funding by applying for it directly and through the City of Los Angeles. The underlying constitutional issues pertaining to this letter are nearly identical, and thus this letter does not distinguish between the two types of grant.

[2] *Id.* at 32.

[3] The County understands that it is not required at this time to agree to these conditions. Indeed, DOJ has taken the position in litigation that Byrne JAG applicants need not agree to comply with these conditions until the Department decides whether to award funding to the jurisdiction. *See* Defendant's Opposition to Plaintiff's Motion to Expedite Briefing Schedule, *City of Chicago v. Sessions*, No. 17-cv-5720, ECF No. 28, at 1-3 & n.2 (N.D.Ill. Aug. 14, 2017). Because the solicitation's materials state that Byrne JAG awards "*will* include" these conditions, however, the

the U.S. Constitution's Spending Clause, and violate the separation of powers. Because they are unlawful, the County cannot be required to certify compliance with the new Access and Notice Conditions as a condition for receiving Byrne JAG funding. *See South Dakota v. Dole*, 483 U.S. 203, 207 (1987).

## A.   *DOJ Lacks Statutory Authority to Impose the Access and Notice Conditions*

As a federal agency, DOJ may exercise only that authority that is expressly conferred by statute; its "power to act . . . is authoritatively prescribed by Congress, so that when [it] act[s] improperly, no less than when [it] acts beyond [its] jurisdiction, what [it] do[es] is ultra vires." *City of Arlington v. FCC*, 133 S. Ct. 1863, 1869 (2013) (describing the scope of federal agencies' authority to act). Here, DOJ has imposed two *new* conditions for JAG Grant applicants that Congress has not authorized DOJ to impose, either in the Byrne JAG statute or any other law. By contrast, the JAG statute expressly provides the Attorney General with limited authority to specify the "form" of the application, 42 U.S.C. § 3752(a), and omits any authorization to add additional substantive conditions to that application. Congress's decision to confer discretion over form, but not substance, demands respect, and indicates that it did not grant DOJ the authority to impose additional grant conditions on JAG grants. *See Russello v. United States*, 464 U.S. 16, 23-24 (1983) ("Congress acts intentionally and purposely in the disparate inclusion or exclusion of statutory text.").

The statute conferring authority on DOJ to administer the Byrne JAG program provides the Attorney General with only limited administrative powers. For instance, DOJ may specify the "form" of the application, and require that applicants prove that they have the financial integrity to meet the goals to which they plan to apply funding. *See* 42 U.S.C. §§ 3752(a), (a)(4). The statute also confers limited discretion for the Attorney General to require grant recipients to report on activities and data relevant to the funding. *Id.* § 3751(c) (Attorney General may "reasonably require" applicants to "maintain and report . . . data, records and information (programmatic and financial)"). *Nowhere* in the statute does Congress grant DOJ discretion to impose other substantive conditions—and certainly not conditions that, like the Access and Notice Conditions, have no basis in any other statute. *Cf.* 42 U.S.C. § 3752(a)(5)(d) (providing that grant applicants may be required to certify compliance with "all applicable laws"); *see also Chrysler Corp. v. Brown*, 441 U.S. 281 (1979) (finding the word "law" in statute allowing disclosures "authorized by law" meant only statutes and substantive regulations).

Congress has demonstrated that it knows how to explicitly confer agency discretion to add substantive grant conditions when it wants to do so. Elsewhere in the same statute that includes the Byrne JAG grant, the Omnibus Crime Control and Safe Streets Act of 1968,

---

County submits this letter as notification why it need not and does not agree to comply with the Access and Notice Conditions as a condition for receiving Byrne JAG funding.

Congress created a different grant program that expressly authorized administering agencies to impose reasonable grant conditions. *See* 42 U.S.C. § 3796gg-1(e)(3) (Attorney General may "impose reasonable conditions on grant awards . . ."). One does not "lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply," especially where Congress has done so in the same statute. *Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 341 (2005). It is therefore clear that Congress acted intentionally when it decided not to confer the same authority for the Byrne JAG grants.

## B. *The Access and Notice Provisions Violate the Administrative Procedure Act*

The Access and Notice Provisions were not adopted through notice-and-comment rulemaking procedures, which are required by the Administrative Procedure Act ("APA"). *See* 5 U.S.C. §§ 553(b)-(c). JAG Grants are disbursed pursuant to DOJ regulations. *See* 42 U.S.C. § 3754 (requiring the Attorney General to issue rules to carry out the Byrne JAG Grant program); *see also* 28 C.F.R. § 33 (establishing rules for Criminal Justice Block Grants including grantee assurances). The newly imposed conditions therefore violate both the Byrne JAG program's authorizing statute and its implementing regulations. Administrative actions that conflict with, amend, or repeal a prior rulemaking must also comply with the APA's rulemaking requirements. See *Erringer v. Thompson*, 371 F.3d 625, 632 (9th Cir. 2004) ("Any rule that effectively amends a prior legislative rule is legislative and must be promulgated under notice and comment rulemaking.") DOJ did not issue the Access and Notice Conditions through notice and comment rulemaking; it simply issued a press release and subsequently included the Conditions in the grant solicitation. Moreover, when administrative actions "create rights, impose obligations, or effect a change in existing law" they are considered "legislative rules" and may be issued "only by using the notice and comment procedure described in the APA." *Hemp Indus. Ass'n v. Drug Enf't Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003). These actions do not comply with the Administrative Procedure Act and therefore must be rescinded. *See* 5 U.S.C. § 553.

## C. *The Access and Notice Conditions Violate the Separation of Powers*

Second, the Access and Notice Conditions violate the separation of powers, because DOJ is threatening to withhold funds Congress has appropriated on bases that Congress has not set forth in legislation. The Constitution vests the spending power in the Legislative Branch, not the Executive. *See In re Aiken Cty.*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013); *see also Train v. City of New York*, 420 U.S. 35, 44 (1975) (the Executive lacked discretion to spend less than the full amount of funds authorized by Congress under the Federal Water Pollution Contract Act Amendments of 1972). DOJ thus cannot withhold—*i.e.*, refuse to spend as Congress has directed—funds based on conditions that Congress itself did not supply. Nor may DOJ skirt this requirement by applying conditions it believes Congress should have imposed. The Executive branch "does not have unilateral authority to refuse to spend . . . funds" that have already been appropriated by Congress "for a particular project or program." *In re Aiken Cty.*, 725 F.3d at 261 n.1 (D.C. Cir. 2013).

3

In directing that jurisdictions are not eligible to receive Byrne JAG funding if they do not comply with the conditions—conditions that Congress did not include in the statute—DOJ is asserting legislative power that the Constitution vests exclusively in Congress. The Constitution empowers Congress, not the President, to appropriate funding as part of the charge to "provide for the . . . general Welfare of the United States." U.S. Const. art. I, § 8, cl. 1. The President may veto a bill passed by Congress under its Appropriations authority, but the President may not amend or repeal only a portion of an appropriation. *Clinton v. City of New York*, 524 U.S. 417, 438 (1998) (holding that the line-item veto violates the separation of powers principle). While Congress may give the Executive Branch discretion about how to spend appropriated funds, this discretion cannot be so expansive that it "gives the President the unilateral power to change the text of duly enacted statutes." *Id.* at 447.

Indeed, "Congress has intentionally limited the ability of the President to withhold or 'impound' appropriated funds and has provided that the President may only do so after following particular procedures and after receiving Congress's express permission." *Cty. of Santa Clara v. Trump*, No. 17-cv-485, 2017 WL 1459081, at \*21 (N.D. Cal. Apr. 25, 2017) (citing Impoundment Control Act of 1974, 2 U.S.C. §§ 683 *et seq.*). Thus, in threatening to withhold Byrne JAG funding for noncompliance with extra-statutory conditions, DOJ is acting contrary to an explicit congressional directive, an area in which the Executive's powers are "at its lowest ebb." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring). In these situations, the Executive can act only when its power in the relevant subject matter is "exclusive" and "preclusive." *Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2084 (2015). Executive power to impose spending conditions is neither, meaning that DOJ's attempts to contradict Congress's express will must fail.

## D.    *The Access and Notice Provisions Violate the Spending Clause of the U.S. Constitution*

Even if *Congress* had expressly included the Access and Notice conditions in the Byrne JAG statute, they would not be lawful under the Spending Clause. While Congress has the power to condition federal grants on states and localities complying with certain conditions, those conditions must be unambiguous, and they must "reasonably related to the purpose of the expenditure" to which they are tied." *Dole*, 483 U.S. at 213. The Access and Notice Conditions do not satisfy either requirement, and thus cannot be constitutionally imposed on the County.

*First*, the Access and Notice Conditions are too vague to pass constitutional muster. When Congress attaches conditions to grants it must do so "unambiguously," so that states and localities may "voluntarily and knowingly accept" the grant knowing exactly what the conditions require. *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 16-17 (1981); *see also Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) ("[Recipients] cannot knowingly accept conditions of which they are 'unaware' or which they are 'unable to

ascertain.'" (quoting *Pennhurst*, 451 U.S. at 17)). Both conditions fail this requirement. The Access Condition purports to require that recipients allow DHS officials "to access any correctional or detention facility" to question detained individuals. But the condition provides no guidance as to whether the County will be allowed to limit this "access" and questioning in order to comply with California law, which requires that detainees be allowed to refuse to answer immigration officials' questions. *See* TRUTH Act, Cal. Gov't Code § 7283 *et seq.* Nor does the Access Condition define "detention center," leaving grant recipients unable to determine whether it will apply to, for example, short-term holding cells or juvenile detention centers (which must comply with separate state laws governing the detention and treatment of juveniles).

As for the Notice Condition, it is unclear how a jurisdiction could comply with the condition when the jurisdiction itself does not have 48 hours' notice of an individual's release date—for example, due to good time credit calculations, or if the detention itself lasts a total of less than 48 hours. Jurisdictions are thus left guessing whether the condition applies in such circumstances, and, if it does, whether it would require them to hold these individuals longer in order to provide DHS the requisite notice.

For neither condition, therefore, does DOJ provide states and localities with the requisite information for them to "voluntarily and knowingly accept" Byrne JAG funding. *Pennhurst*, 481 U.S. at 17. Moreover, if DOJ were correct that the Byrne JAG statute provides the agency unfettered authority to impose new conditions that have no basis in any statute or regulation, then the Byrne JAG statute itself would be too ambiguous to pass constitutional muster. A court must thus read the statute narrowly as permitting only those conditions *the statute itself* clearly imposes. *See Sauer v. U.S. Dep't of Educ.*, 668 F.3d 644, 652 (9th Cir. 2012) (because the grant statute in question did not "clearly require participating states" to comply with the challenged condition, *Pennhurst* and "the canon of constitutional avoidance counsels us to interpret the Act as not imposing such a condition"). Thus, neither the new conditions nor DOJ's reading of the Byrne JAG statute satisfy the Constitution's requirement that jurisdictions be given clear notice of grant conditions.

*Second*, federal grant conditions are illegitimate "if they are unrelated 'to the federal interest in particular national projects or programs.'" *Id.* at 207 (quoting *Massachusetts v. United States*, 435 U.S. 444, 461 (1978) (plurality opinion)). This required nexus is a constitutional limitation on Congress's power to regulate state and local governments. *See, e.g., N. Ill. Chapter of Assoc. Builders & Contractors, Inc. v. Lavin*, 431 F.3d 1004, 1006 (7th Cir. 2005) ("Conditions on spending may become [an impermissible] regulation if they affect conduct other than the financed project.").

The Access and Notice Conditions are not reasonably related to the federal interest in the Byrne JAG program. The central objectives of the JAG program are (1) to ensure that funds are distributed across the country in a way that accounts for population and violent crime, 42 U.S.C.

§ 3755, and (2) to "give State and local governments more flexibility to spend [federal] money for programs that work for them rather than to impose a 'one size fits all' solution." H.R. Rep. No. 109-233, at 89 (2005). DOJ's imposition of inflexible strictures that affect how grant recipients regulate programs outside of those funded by Byrne JAG funding (*i.e.*, every detention center, regardless of its funding source) is distinctly outside the scope of the grant program and contrary to its purpose. *Cf. USAID v. Alliance for Open Soc'y Int'l*, 133 S. Ct. 2321, 2328 (2013) (approving "conditions that define the limits of the government spending program" and prohibiting "conditions that seek to leverage funding to regulate . . . outside the contours of the program itself").

## III.     Conclusion

For the foregoing reasons, the County will not agree to comply with the new Access and Notice Conditions implemented for FY 2017 because they are unlawful. The County therefore submits the attached solicitation on the understanding that it will not agree to comply with the Access and Notice Conditions.

6

County of Los Angeles                                    FY 2017 Justice Assistance Grant

**County of Los Angeles Disparate Jurisdiction Budget – Attachment 12**

2017 Justice Assistance Grant Budget Narratives & Summary
County of Los Angeles
Crime Reduction and Public Safety Improvement Initiative

The County of Los Angeles has participated in the Bureau of Justice Assistance (BJA) funded specialized crime reduction and public safety improvement programs since 1996, through the former Local Law Enforcement Block Grant (LLEBG) program. The County plans to continue on a similar path under the Edward Byrne Memorial Justice Assistance Grant (JAG) by maintaining programs similar to those previously funded under the LLEBG program.

<u>**Goals and Objectives**</u>:

The overall goal of the County's Crime Reduction and Public Safety Improvement Initiative is to reduce crime and improve public safety. Personal and community safety is recognized as being one of our most basic needs. The County has been working in a cooperative effort with various justice and law enforcement agencies to target street gangs with the use of search warrants, arrests, and the seizure of firearms and weapons. It is most important for perpetrators of violent gang crimes to be identified, arrested, prosecuted, and convicted in accordance with the law. This is done to protect the public from crime that can ruin the local economy, and have a negative impact on the quality of life for all persons.

Public safety is enhanced when offenders are held accountable and redirected from delinquent and criminal behavior. Strategies to positively impact the behavior of probationers and at-risk youth through early intervention, prevention and suppression programs are a key element of Los Angeles County's Crime Reduction and Public Safety Improvement Initiative. The County's Probation Department administers a variety of services to heighten and promote public safety. County Probation Officers work in a collaborative manner with other law enforcement agencies to prevent and reduce criminal behavior by holding probationers accountable through case management, supervision, and monitoring. The County program will continue to develop and implement specific strategies that target and focus on prosecution programs to suppress organized criminal gang behavior and control the impact of gangs on our community; increased law enforcement presence in the community particularly during large, high profile community events; Sheriff Department services to heighten and promote public safety on and off school campuses; and ongoing collaboration between the County Sheriff's Department and other law enforcement agencies to prevent and reduce criminal behavior through case management, supervision, and monitoring. Additionally, the County will be enhancing its program by adding four new Contractors upon approval from the Department of Justice to assist with crime prevention and education of at-risk youth.

County of Los Angeles                                    FY 2017 Justice Assistance Grant

**Law Enforcement Programs:**

Los Angeles County Sheriff's Department (LASD) – Patrol Services Overtime
As a means of deterring crime and deploying first responders expeditiously, funding will be used to finance supplemental patrol services to enhance law enforcement services in the unincorporated areas of the County.  Additionally, funding will provide for increased law enforcement presence countywide particularly during the large, high profile community events, rallies, protests and activities with large participant turnout and during holidays when there is an increased need for law enforcement services.

County of Los Angeles                                      FY 2017 Justice Assistance Grant

**Prosecution and Court Programs:**

District Attorney's Office  - Strategies Against Gang Environments (SAGE)
The Sage program abates street gang violence and narcotic related activities by utilizing civil injunctions and other procedures deemed appropriate by local law enforcement authorities. The program provides collaborative efforts among the Los Angeles County District Attorney, Los Angeles County Sheriff and the City of Los Angeles Police Department to suppress gang activities in targeted areas.

The District Attorney's component of SAGE provides focused vertical prosecutions, tracks criminal proceedings of notorious gang members, and contributes expertise and local resources to facilitate the successful arrest and prosecution of gang members who commit serious and/or violent felonies. Assigned Deputy District Attorney staff assists in the coordination of probation and parole sweeps by providing guidance and training to local officers on legal search and seizure precedents applicable to the target group. The program also works to suppress and abate street gang activity, graffiti, vandalism, narcotic sales and use, and criminal nuisance properties and related problems that lead to the commission of violent and serious gang-related crimes.

Alternative Sentencing Program/Paralegal Services - Public Defender
Funding will be used by the Public Defender to finance paralegal services for the Alternative Sentencing Program.  The program enhances the adjudication process of cases involving violent offenders by utilizing paralegals to assist attorneys in securing information for preparation of the penalty phase in capital cases and alternative sentencing reports in cases where there is significant mitigating information to support alternative sentencing.  This program presents the Court with a range of sentencing options which offer punishment, control, and accountability, frequently at less cost than jail or prison.  This program can reduce unnecessary jail and prison use with a potential for a positive impact upon the management of overcrowded jail facilities.

Alternative Sentencing Program/Psychiatric Social Worker Services – Alternate Public Defender
Funding will be used by the Alternate Public Defender (APD) to finance the services of Psychiatric Social Workers (PSW) for the Alternative Sentencing Program.  The Alternate Public Defenders Alternative Sentencing program enhances the adjudication process of cases involving mentally ill clients by providing in-house Psychiatric Social Workers that are knowledgeable in mental health and substance abuse that can make a quick assessment as to what program, if any, would be suitable for the client.  PSW work for the Department of Mental Health and are assigned to APD cases.  By having a PSW in-house, in addition to putting the client at ease, the County will also avoid issues relating to "mandatory reporting".  As an employee of the APD, the PSW must honor the Attorney-Client Privilege, thus maintaining confidentiality.

County of Los Angeles                          FY 2017 Justice Assistance Grant

**Prevention and Education Programs:**

School-Based Supervision Program - Probation
The School-Based Supervision Program increases school attendance, competencies and performance, and provides access to skills and resources needed by parents to effectively parent their children.  This multi-phase program involves the placement of Deputy Probation Officers to high schools and middle schools to assess the strengths and needs of at-risk youth in the program. Based on those assessments, case planning exercises will be conducted, and the youth will be entered into one or many intervention treatment programs. Funding will be used to finance the salary of the Deputy Probation Officer position.

AB109  Re-Entry Housing Project

Funding will be used to contract with outside agencies to work in collaboration with the Los Angeles Sheriff's Department to provide reunification services to formerly incarcerated women and their families in order to provide a successful transition back into their community, decrease recidivism and reduce crime by potential repeat offenders.  The program provides services to aid participants with locating and moving into housing and support services in the form of education, job-training, and skill building opportunities.  Funds will be used for the contractor personnel, operating and administrative expenses.

County of Los Angeles                                    FY 2017 Justice Assistance Grant

LAW ENFORCEMENT PROGRAMS
BUDGET REQUEST


Program:        Los Angeles Sheriff's Department – Patrol Services Overtime

| Allocation Category | Allocated Amount |
|---|---|
| Personnel | |
| Hiring: | |
| Other:  Overtime – Deputy/Sergeant | $32,498.15 |
| Personnel Subtotal | $32,498.15 |
| Travel | $0 |
| Equipment/Technology | $0 |
| Supplies | $0 |
| Contractual | $0 |
| Other | $0 |
| **Grand Total** | **$32,498.15** |


Attachment 12                                    5

County of Los Angeles                                          FY 2017 Justice Assistance Grant

PROSECUTION AND COURT PROGRAMS
BUDGET REQUEST

Program:      District Attorney's Office - Strategies Against Gang Environments (SAGE)

| Allocation Category | Allocated Amount |
|---|---|
| Personnel | |
|     Hiring: | |
|     Other:  Attorneys, Sworn Officers | $97,019 |
| Personnel Subtotal | $97,019 |
| Travel | $0 |
| Equipment/Technology | $0 |
| Supplies | $0 |
| Contractual | $0 |
| Other | $0 |
| **Grand Total** | **$97,019** |

Attachment 12                                          6

County of Los Angeles                                    FY 2017 Justice Assistance Grant

PROSECUTION AND COURT PROGRAM
BUDGET REQUEST


Program:        Alternative Sentencing Program/Paralegal Services - Public Defender


| Allocation Category | Allocated Amount |
|---|---|
| Personnel | |
|     Hiring | $0 |
|     Other:  Attorneys. Paralegals | $248,747 |
| Personnel Subtotal | $248,747 |
| Travel | $0 |
| Equipment/Technology | $0 |
| Supplies | $0 |
| Contractual | $0 |
| Other | $0 |
| **Grand Total** | **$248,747** |

Attachment 12                                    7

County of Los Angeles                                    FY 2017 Justice Assistance Grant

PROSECUTION AND COURT PROGRAM
BUDGET REQUEST

Program:        Alternative Sentencing Program/Social Worker – Alternate Public Defender

| Allocation Category | Allocated Amount |
|---|---|
| Personnel | |
| Hiring | $0 |
| Other:  Psychiatric Social Worker | $112,801 |
| Personnel Subtotal | $112,801 |
| Travel | $0 |
| Equipment/Technology | $0 |
| Supplies | $0 |
| Contractual | $0 |
| Other | $0 |
| **Grand Total** | **$112,801** |

Attachment 12                                    8

County of Los Angeles                                      FY 2017 Justice Assistance Grant

PREVENTION AND EDUCATION PROGRAM
BUDGET REQUEST

Program:      School-Based Supervision Program - Probation Department

| Allocation Category | Allocated Amount |
|---|---|
| Personnel | |
| Hiring | $0 |
| Other:  Deputy Probation Officer | $97,019 |
| Personnel Subtotal | $97,019 |
| Travel | $0 |
| Equipment/Technology | $0 |
| Supplies | $0 |
| Contractual | $0 |
| Other | $0 |
| **Grand Total** | **$97,019** |

Attachment 12                           9

County of Los Angeles                                      FY 2017 Justice Assistance Grant


PREVENTION AND EDUCATION PROGRAM
BUDGET REQUEST


Program:        AB109 Re-Entry Housing Project


| Allocation Category | Allocated Amount |
|---|---|
| Personnel Services | $0 |
| Fringe Benefits: | $0 |
| Personnel Subtotal: | $0 |
| Travel | $0 |
| Equipment/Technology | $0 |
| Supplies | $0 |
| Contractual | $291,057 |
| Other | $0 |
| **Grand Total** | **$291,097** |


Attachment 12                              10

County of Los Angeles                              FY 2017 Justice Assistance Grant

**County of Los Angeles Disparate Jurisdiction Budget**
2017 Justice Assistance Grant Budget Narrative

| **Crime Reduction and Public Safety Improvement Initiative Programs Budget Summary** –*Transfer the totals for each category to the spaces below.  Compute the total project costs.* | |
|---|---|
| **Budget Category** | **Amount** |
| **A. Personnel** | <u>$555,586</u> |
| **B. Fringe Benefits** | <u>$32,498.15</u> |
| **C. Travel** | <u>$0</u> |
| **D. Equipment** | <u>$0</u> |
| **E. Supplies** | <u>$0</u> |
| **F. Consultants/Contracts** | <u>$291,057</u> |
| **G. Other Costs** | <u>$0</u> |
| **H. Indirect Costs** | <u>$0</u> |
| **TOTAL PROJECT COSTS** | <u>$879,141.15</u> |
| **Total Request** | <u>$879,141.15</u> |

City of Los Angeles                                           FY 2017 Justice Assistance Grant

**Disclosure of Pending Applications – Attachment 13**

This is to affirm that to our knowledge the County of Los Angeles does not have pending applications submitted within the last 12 months for federally funded grants or subgrants (including cooperative agreements) that include requests for funding to support the same project being proposed under this solicitation and will cover identical cost items outlined in the County's 2017 JAG budget narrative and worksheet in the application under this solicitation.

| Federal or State Funding Agency | Solicitation / Project Name | Name/ Phone/ E-mail for Point of Contact at Funding Agency |
|---|---|---|
| **NONE** | | |

Attachment 13                                    1

County of Los Angeles                    FY 2017 Justice Assistance Grant

## Disclosure of High Risk Status – Attachment 14

The County of Los Angeles is not designated as a High Risk by another federal grant making agency.

County of Los Angeles                          FY 2017 Justice Assistance Grant

## Disclosure of Lobbying Activities – Attachment 15

The County of Los Angeles does not expend funds for Lobbying Activities.