MICHAEL N. FEUER, SBN 111529
City Attorney
JAMES P. CLARK, SBN 64780
Chief Deputy City Attorney
LEELA A. KAPUR, SBN 125548
Executive Assistant City Attorney
VALERIE L. FLORES, SBN 138572
Managing Senior Assistant City Attorney
MICHAEL DUNDAS, SBN 226930
Deputy City Attorney
200 North Main Street, City Hall East
Suite 800
Los Angeles, California 90012
james.p.clark@lacity.org
Telephone: (213) 978-8344
Facsimile: (213) 978-8312

MITCHELL A. KAMIN, SBN 202788
MÓNICA RAMÍREZ ALMADANI, SBN 234893
NEEMA T. SAHNI, SBN 274240
Covington & Burling LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, California 90067-4643
mkamin@cov.com
Telephone:  (424) 332-4800
Facsimile:  (424) 332-4749

DAVID M. ZIONTS, admitted *pro hac vice*
IVANO M. VENTRESCA, admitted *pro hac vice*
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
dzionts@cov.com
Telephone: (202) 662-6000
Facsimile:  (202) 662-5987

*Attorneys for Plaintiff City of Los Angeles*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF LOS ANGELES,<br><br>Plaintiff,<br><br>v.<br><br>JEFFERSON B. SESSIONS, III, in his official capacity as Attorney General of the United States; ALAN R. HANSON, in his official capacity as Acting Assistant | Case No. 2:17-cv-07215-R-JCx<br><br>**CITY OF LOS ANGELES' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Judge:  The Honorable Manuel L. Real |

Attorney General of the Office of Justice
Programs; RUSSELL WASHINGTON, in
his official capacity as Acting Director of
the Office of Community Oriented Policing
Services; UNITED STATES
DEPARTMENT OF JUSTICE.

      Defendants.

Date:   February 20, 2018
Time:  10:00 a.m.

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................. 1

ARGUMENT ....................................................................................................... 3

I.    Defendants' Attempt To Evade Judicial Review Fails. .................................. 3

    A.    Los Angeles Has Standing Because It Suffered Competitive Injury In
        The 2017 COPS Grant Cycle. ............................................................. 3

    B.    The Case Is Not Moot. ........................................................................ 4

        1.    The "Capable of Repetition, Yet Evading Review" Doctrine
            Applies. .................................................................................... 5

        2.    Defendants Are Not Entitled To Summary Judgment On The
            Question Of Whether Los Angeles Would Have Received A FY
            2017 Award. ............................................................................. 8

II.    Plaintiff Is Entitled To Judgment As A Matter of Law. ................................. 9

    A.    The Challenged Considerations Are *Ultra Vires*. ............................... 9

        1.    DOJ Lacks Statutory Authority To Use The COPS Program To
            Pressure States And Local Communities To Change Laws,
            Regulations, And Policies Unrelated To The Program As
            Created By Congress. ................................................................ 11

        2.    DOJ Cannot Divert Funds That Congress Designated For
            Community Policing To Federal Civil Immigration
            Enforcement. ........................................................................... 15

        3.    The Choice Before The Court Is Not Unfettered Agency Power
            Or Grant Awards Chosen By Lottery. ...................................... 17

    B.    The Challenged Considerations Violate The Spending Clause Because
        Defendants Cannot Identify Any Reasonable Relationship They Bear
        To The Community Policing Purpose Of The COPS Program. ........ 20

    C.    The Challenged Considerations Are Arbitrary And Capricious. ....... 21

III.    An Injunction Barring Defendants From Using The Invalid Considerations Is
      Appropriate. ............................................................................................. 23

CONCLUSION .................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adarand Constructors, Inc. v. Pena*,
  515 U.S. 200 (1995)..................................................................................4

*Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle*,
  829 F.2d 933 (9th Cir. 1987) ....................................................................7

*Alaska Oil & Gas Ass'n v. Jewell*,
  815 F.3d 544 (9th Cir. 2016) ..................................................................22

*Az. Cattle Growers' Ass'n v. U.S. Fish & Wildlife, Bureau of Land Mgmt.*,
  273 F.3d 1229 (9th Cir. 2001) ................................................................22

*Barilla v. Ervin*,
  886 F.2d 1514 (9th Cir. 1989), *overruled on other grounds by Simpson v.
  Lear Astronics Corp.*, 77 F.3d 1170 (9th Cir. 1996) ...................................5

*Bresgal v. Brock*,
  843 F.2d 1163 (9th Cir. 1987) ................................................................24

*Bullfrog Films, Inc. v. Wick*,
  847 F.2d 502 (9th Cir. 1988) ....................................................................3

*Califano v. Yamasaki*,
  442 U.S. 682 (1979)................................................................................23

*Chamber of Commerce of U.S. v. Whiting*,
  563 U.S. 582 (2011)................................................................................10

*Com. Va., Dep't of Educ. v. Riley*,
  106 F.3d 559 (4th Cir. 1997) (en banc) ............................................13, 14

*Coral Const. Co. v. King Cty.*,
  941 F.2d 910 (9th Cir. 1991) ....................................................................4

*DeCanas v. Bica*,
  424 U.S. 351 (1976)................................................................................15

*Decker v. O'Donnell*,
  661 F.2d 598 (7th Cir. 1980) ..................................................................23

*Defenders of Wildlife v. Jewell*,
    176 F. Supp. 3d 975, 1004 (D. Mont. 2016)................................................22

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
    92 F.3d 1486 (9th Cir. 1996) ......................................................................24

*Ely v. Velde*,
    451 F.2d 1130 (4th Cir. 1971) ....................................................................13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)......................................................................................6

*Gregory v. Ashcroft*,
    501 U.S. 452 (1991)....................................................................................13

*Honig v. Doe*,
    484 U.S. 305 (1988)......................................................................................6

*Karuk Tribe of California v. United States Forest Serv.*,
    681 F.3d 1006 (9th Cir. 2012) ......................................................................5

*Kingdomware Technologies, Inc. v. United States*,
    136 S. Ct. 1969 (2016)..................................................................................5

*Lewis v. Continental Bank Corp.*,
    494 U.S. 472 (1990)......................................................................................6

*Los Angeles Cty. v. Davis*,
    440 U.S. 625 (1979)......................................................................................7

*Murphy v. Hunt*,
    455 U.S. 478 (1982)......................................................................................5

*NE Fla. Chapter of Associated Gen. Contractors of America v. Jacksonville*,
    508 U.S. 656 (1993)......................................................................................3

*Nevada v. Skinner*,
    884 F.2d 445 (9th Cir. 1989) ......................................................................20

*New York v. United States*,
    505 U.S. 144 (1992)....................................................................................20

*Pacific Coast Fed'n of Fishermen's Ass'ns v. U.S. Bureau of Reclamation*,
    426 F.3d 1082 (9th Cir. 2005) ....................................................................22

*Philadelphia v. Sessions*,
    2017 WL 5489476 (E.D. Pa. Nov. 15, 2017), *appeal filed* (3d Cir. Jan.
    18, 2018) .................................................................................................. 21

*Preston v. Heckler*,
    734 F.2d 1359 (9th Cir. 1984) .................................................................. 3

*Regents of the University of California v. Bakke*,
    438 U.S. 265 (1978) .................................................................................. 3

*Robbins v. Reagan*,
    780 F.2d 37 (D.C. Cir. 1985) ............................................................... 9, 11

*Ry. Labor Execs. Ass'n v. Nat'l Mediation Bd.*,
    29 F.3d 655 (D.C. Cir. 1994) (en banc) .................................................. 12

*Santa Clara v. Trump*,
    2017 WL 5569835 (N.D. Cal. Nov. 20, 2017) ........................................ 23

*Schism v. United States*,
    316 F.3d 1259 (Fed. Cir. 2002) .............................................................. 19

*Skaff v. Meridien N. Am. Beverly Hills, LLC*,
    506 F.3d 832 (9th Cir. 2007) ................................................................... 4

*South Dakota v. Dole*,
    483 U.S. 203 (1987) ................................................................................ 12

*Texas v. United States*,
    809 F.3d 134 (5th Cir. 2015), aff'd by an equally divided court, 136 S.
    Ct. 2271 (2016) ...................................................................................... 23

*Washington v. Trump*,
    847 F.3d 1151 (9th Cir. 2017) ................................................................ 23

*Wolfson v. Brammer*,
    616 F.3d 1045 (9th Cir. 2010) .................................................................. 7

**Statutes and Legislative History Materials**

5 U.S.C. § 706(2)(A) ...................................................................................... 21

8 U.S.C. § 1357(g) ................................................................................... 16, 17

34 U.S.C. § 10122 ......................................................................................... 14

34 U.S.C. § 10381 ......................................................................2, 9, 11, 13, 15, 19

34 U.S.C. § 10382 ................................................................................ 18, 19

42 U.S.C. § 3766(a) ...................................................................................... 14

*Controlling Crime Through More Effective Law Enforcement: Hearings*
*Before the Subcomm. on Criminal Laws and Procedure of the S. Comm.*
*on the Judiciary*, 90th Cong. (1967) ............................................................. 14

Pub. L. No. 103-322 ...................................................................................... 16

S. Rep. 90-1097, 1968 U.S.C.C.A.N. 2112, 2276 (1968) .................................. 13

1

## **INTRODUCTION**

The U.S. Department of Justice ("DOJ") asks this Court to endorse a boundless interpretation of its own authority.  Defendants assert that DOJ may transform a grant program that Congress expressly designed to support the hiring of state and local officers for "deployment in community-oriented policing" (the "COPS grant"), into a tool to pressure states and localities to adopt the unrelated immigration policy preferences of the Attorney General.  In Fiscal Year ("FY") 2017, that preference was for states and localities to "partner" with federal immigration authorities, and otherwise participate in enforcing federal civil immigration law (the "Challenged Considerations").  In future years, if DOJ has this authority, the Attorney General might decide to favor states that abolish the death penalty (or promise to impose it more frequently); or states that strengthen (or relax) their gun laws; or states that criminalize (or legalize) marijuana.  The ways in which DOJ might, in the future, use an unrelated grant program to induce sovereign states to change their laws and policies are limitless.

Congress did not silently grant such a power when it authorized DOJ to administer a grant program for the hiring of state and local officers to engage in community policing.  Remarkably, after Los Angeles highlighted the sweeping implications of Defendants' position, Defendants did not attempt to suggest any limit on what DOJ may do under the guise of administering the COPS grant.  Instead, they resorted to arguing against a straw man: DOJ must have the power to favor or disfavor applicants on any grounds the Attorney General pleases, or else DOJ would be reduced to selecting grant recipients by random lottery.  This hyperbole cannot be squared with the statute.  Congress defined the contours of the COPS program and left the agency administering it with substantial room to exercise its judgment within the confines of that program and its purposes.  It does not follow that DOJ can use its control over the purse strings to pressure states and localities to adopt unrelated laws and policies, or to divert grant funds to a purpose having nothing to do with community-oriented policing.

1  Rather than confront the City's arguments, Defendants ignore or implicitly
2  concede them.  For example, Defendants do not dispute that their interpretation of the
3  COPS statute would render superfluous the only provision in which Congress *did*
4  authorize DOJ to give preference to an applicant based on its adoption of policies
5  unrelated to the need for, or use of, COPS grant funds.  *See* 34 U.S.C. § 10381(c)(2)-(3)
6  (permitting preferential consideration to be given to states with certain laws providing for
7  lenient treatment of human trafficking victims).  That provision confirms that Congress
8  did not intend to empower DOJ to use COPS grants to obtain *other* unrelated policy
9  concessions from states and localities.

10  Defendants also do not provide an explanation for how combating illegal
11  immigration relates to Congress's goal to fund community policing.  They instead invoke
12  the "belie[f]" of the COPS Office (Defs.' Br. 23) that illegal immigration is a public
13  safety issue.  Even assuming arguendo that this "belie[f]" were based in fact—which it is
14  not—Congress did not create the COPS program to fund *any* kind of policing that relates
15  to an asserted public safety interest.  The agency cannot disregard the express statutory
16  purpose of a grant program it is charged with administering, and Defendants offer no
17  explanation for why they may do so here.

18  Defendants also seek to insulate this usurpation of Legislative Branch authority
19  from review by the Judicial Branch.  They claim the case is moot because, on the
20  unilateral declaration of a COPS Office employee, Los Angeles would not have received
21  a 2017 grant anyway.  Defendants ask the Court to treat this representation as conclusive
22  despite admitting a material misrepresentation in their rush to make a similar claim in
23  response to the City's application for a preliminary injunction, which ultimately caused
24  the City to withdraw that motion.  More fundamentally, however, it does not matter what
25  would have happened in the 2017 grant cycle.  Los Angeles plainly has standing to
26  challenge the competitive injury it suffered, and an annual grant program is the paradigm
27  case for the "capable of repetition, yet evading review" exception to mootness.  There is
28  more than a reasonable expectation that Los Angeles will apply for another COPS

grant—indeed, it intends to do so this year—and that DOJ will use improper immigration-related considerations to disfavor the City.  Defendants cannot benefit from their misrepresentation—which eliminated any possibility of obtaining preliminary relief for the 2017 grant cycle—and then use the short timeframe in which COPS funding is applied for and granted to insulate from review their unlawful overreach of federal agency authority.

The Court should therefore grant partial summary judgment to Plaintiff, deny Defendants' motion for partial summary judgment, and enter final judgment under Federal Rule of Civil Procedure 54(b) in favor of Plaintiff on Counts Four, Five, and Six; declare that Defendants' actions are unlawful; and enjoin them from administering the COPS program in this unlawful manner going forward.

## ARGUMENT

## I.    Defendants' Attempt To Evade Judicial Review Fails.

### A.    Los Angeles Has Standing Because It Suffered Competitive Injury In The 2017 COPS Grant Cycle.

This is a case of competitive harm: the federal agency charged with awarding grants consistent with a congressional statute, here DOJ, unlawfully favored Los Angeles' competitors for a federal grant, and the City sued to restore the competition to a level, and lawful, playing field.  "Such competitive injuries have often been recognized as grounds for standing." *Bullfrog Films, Inc. v. Wick*, 847 F.2d 502, 506 (9th Cir. 1988).  Thus, "when challenged agency conduct allegedly renders a person unable to fairly compete for some benefit, that person has suffered a sufficient 'injury in fact' and has standing." *Preston v. Heckler*, 734 F.2d 1359, 1365 (9th Cir. 1984); *see also Regents of the Univ. of Cal. v. Bakke*, 438 U.S. 265, 281 n.14 (1978).

In such cases, it is not necessary for the plaintiff to show that it would have received the award, contract, or other benefit it sought but for the unfair disadvantage it faced.  "[T]he 'injury in fact' is the inability to compete on an equal footing in the bidding process, not the loss of a contract" or other benefit.  *NE Fla. Chapter of*

1    *Associated Gen. Contractors of America v. Jacksonville*, 508 U.S. 656, 666 (1993); *see*

2    *also Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995) ("[Plaintiff] need not

3    demonstrate that it has been, or will be, the low bidder on a Government contract. . . .

4    The aggrieved party 'need not allege that he would have obtained the benefit but for the

5    barrier in order to establish standing.'" (internal citation omitted)); *Coral Const. Co. v.

6    King Cty.*, 941 F.2d 910, 930 (9th Cir. 1991) (stating that a construction company

7    challenging a set-aside for women-owned businesses was injured "every time the

8    company simply places a bid").

9        "The existence of standing turns on the facts as they existed at the time the plaintiff

10    filed the complaint." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838

11    (9th Cir. 2007).  Los Angeles filed this lawsuit after DOJ announced that it would give

12    preferential treatment to COPS applicants based on unlawful considerations, and before

13    DOJ made awards on the basis of the Challenged Considerations.  The City did not agree

14    to DOJ's demands in order to receive the preferential treatment accorded to its

15    competitors, and so was forced to compete on an uneven playing field.  This injury more

16    than suffices to establish the City's standing.

17        **B.    The Case Is Not Moot.**

18        Defendants offer no argument that the City's competitive injury did not provide it

19    standing at the time it filed its complaint.  Instead, Defendants argue that later

20    developments mooted the case: DOJ issued the 2017 COPS awards on November 20,

21    2017, Request for Judicial Notice ("RJN") (ECF 49-3) Ex. H, Nov. Press Release, and—

22    according to the unilateral assertions of Defendants—the City would not have won an

23    award anyway.  There are reasons to doubt Defendants' representations at this stage of

24    the litigation, particularly since they have already admitted to making a misrepresentation

25    related to this question in an earlier filing.  But the more fundamental point is that it does

26    not matter whether the illegal considerations made a difference in the City's application

27    this year: DOJ's use of impermissible criteria to make COPS awards is capable of

28

repetition, and the short duration of the grant cycle means that it would inherently evade
review.

### 1.    The "Capable of Repetition, Yet Evading Review" Doctrine Applies.

There is a well-established exception to mootness where "(1) 'the challenged
action [is] in its duration too short to be fully litigated prior to cessation or expiration,'
and (2) 'there [is] a reasonable expectation that the same complaining party [will] be
subject to the same action again.'"  *Kingdomware Technologies, Inc. v. United States*,
136 S. Ct. 1969, 1976 (2016) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).
Agency actions lasting only one or two years evade judicial review as a matter of law.
*See id.* ("We have previously held that a period of two years is too short to complete
judicial review of the lawfulness of the procurement."); *see also Karuk Tribe of Cal. v.
U.S. Forest Serv.*, 681 F.3d 1006, 1017-18 (9th Cir. 2012) ("We have repeatedly held that
similar actions lasting only one or two years evade review.").  Since COPS grants are
awarded annually, *see* Decl. of Andrew Dorr ¶ 10 (ECF 53-1), DOJ's unlawful
administration of those awards necessarily would evade review.  *See* Wright & Miller,
Fed. Prac. & Proc. § 3533.8 (3d ed. 2017) (noting the "wide array of circumstances [that]
have led courts to deny mootness" as capable of repetition yet evading review, including
"disputes over the terms or awards of government contracts or grants [which] often
involve short contract periods and repeat bidders").

In order to establish the second prong of the capable of repetition doctrine, all a
plaintiff must show is a "reasonable expectation," rather than a "mere physical or
theoretical possibility," that it will be subject to the challenged action in the future.
*Murphy v. Hunt*, 455 U.S. 478, 483 (1982).  This standard is "not a very demanding one."
*Barilla v. Ervin*, 886 F.2d 1514, 1520 (9th Cir. 1989), *overruled on other grounds by
Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174 (9th Cir. 1996).  The question is
simply "whether the controversy [is] *capable* of repetition and not . . . whether the
claimant ha[s] demonstrated that a recurrence of the dispute [is] more probable than not."

*Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988).  Indeed, the Supreme Court has found that the exception to mootness applies when the plaintiff's expectations of recurrence "were hardly demonstrably probable." *Id.*  And it is Defendants that bear the "heavy burden of persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).[1]

Los Angeles reasonably expects to suffer the same competitive disadvantage in future grant cycles.  Defendants insist that the COPS Office at DOJ has not yet decided whether to use the same immigration-related factors in the FY 2018 process.  Defs.' Br. 12.  But the use of such factors in grant decisions has been a loudly proclaimed priority of the Attorney General as head of DOJ.[2]  DOJ's announcement of this past year's COPS grants oddly said nothing at all about the community-oriented policing programs being funded, but instead boasted of its success in persuading applicants to participate in civil immigration enforcement.  RJN, Ex. H, Nov. Press Release.  Defendants cannot seriously dispute that there is a reasonable expectation the same Attorney General could act on the same priorities this year and in future years.

Defendants also claim that the City can have no reasonable expectation of its injury recurring because it does not apply for the COPS grant every year.  Defs.' Br. 13.  Los Angeles has, however, applied for the grant for the past two years.  Dorr Decl. ¶ 36.  Moreover, the City intends to apply for the COPS grant in the FY 2018 grant cycle.

---

[1] Defendants' reference to the "likelihood of future injury" standard for seeking injunctive relief, Defs.' Br. 12, is inapposite.  The "capable of repetition" doctrine is an *exception* to this standard.  When it applies, as it does here, it permits "suits for prospective relief to go forward" based only on a "reasonable expectation" of future injury.  *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 481 (1990).

[2] *See, e.g.*, Attorney General Jeff Sessions Delivers Remarks on Sanctuary Jurisdictions, DOJ (March 27, 2017), https://www.justice.gov/opa/speech/attorney-general-jeff-sessions-delivers-remarks-sanctuary-jurisdictions.

Decl. of Stella Larracas ¶ 5. It is thus quite likely that Los Angeles will apply for the COPS grant again and face a competitive disadvantage in doing so—more than satisfying the "reasonable expectation" standard that does not even require a probability of future injury.[3]

Finally, there is a strong public interest in application of the "capable of repetition yet evading review" doctrine here. *See Los Angeles Cty. v. Davis*, 440 U.S. 625, 643 (1979); *Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v. Dunkle*, 829 F.2d 933, 939 (9th Cir. 1987). If Los Angeles is correct that DOJ is making grant determinations in an unconstitutional and unauthorized manner, the public has a profound interest in ensuring that this overreach of DOJ authority be stopped for future grant cycles. But Defendants would require judicial review to be confined to the narrow window of time between the agency's grant solicitation and announcement of awards. Los Angeles attempted just that; there was no possibility of fully litigating the case during the window, and the City was persuaded to withdraw its request for a preliminary injunction by what turned out to be misrepresentations by DOJ. *See infra* I.B.2. The dubious manner in which Defendants induced the City to abandon its request for emergency relief for the FY 2017 cycle only underscores the importance of resolving the legality of Defendants' actions going forward.

---

[3] Although it is sufficiently likely that Los Angeles will apply for a COPS grant in FY 2018, Defendants are wrong to focus on whether the City's future injury will recur in the coming year. *See Wolfson v. Brammer*, 616 F.3d 1045, 1054-55 (9th Cir. 2010) (election law challenge by former candidate not moot where the candidate intended to run again in the future, but *not* "in the next election"). Even if the City's historical record of applying for the COPS grant 39% of the time were assumed to be predictive, that would almost certainly mean that the City will apply for a COPS grant again during the present Administration.

### 2. Defendants Are Not Entitled To Summary Judgment On The Question Of Whether Los Angeles Would Have Received A FY 2017 Award.

For the reasons explained above, the City plainly has a basis to seek prospective relief; whether or not Los Angeles actually lost funding in the 2017 grant cycle due to use of the illegal immigration factors is irrelevant. But if that question *were* relevant, it could not be resolved against the City on summary judgment.

When the City moved for a preliminary injunction, a DOJ official claimed under penalty of perjury that no applicant that selected "Illegal Immigration" as a focus area scored high enough to receive further consideration. Decl. of Andrew Dorr ¶ 24 (ECF 33-1), Opp. to Pl.'s Mot. for Preliminary Injunction. Defendants evidently considered this "fact" relevant to their ultimate point: that Los Angeles allegedly would not receive an award regardless of the use of immigration-related factors, which persuaded the City to withdraw its application. But Defendants' representation, which it has now been revealed was made before the scoring process was complete, turns out to have been false, as Defendants now admit. Defs.' Br. 8 n.3; Dorr Decl. ¶ 35 n.5 (ECF 53-1). The same declarant, having retracted part of his earlier statement, still maintains that Los Angeles did not lose an award on account of the Challenged Considerations. Dorr Decl. ¶ 27 (ECF 53-1). Perhaps so, but Defendants cannot reasonably expect the claims of an admittedly unreliable declarant to carry the day on summary judgment without any discovery, especially when the COPS Office's scoring data show that $8.5 million in FY 2017 funding was awarded to jurisdictions that scored lower than Los Angeles but for bonuses resulting from the Challenged Considerations. Dorr Decl. Ex. C & D (ECF 53-1) (specifically those large population agencies identified as "999," "Laredo, City of," "650," "1029," "889," and "929"). Before judgment could be granted in favor of Defendants, the City would need the opportunity for discovery on, among other things, how the COPS Office calculated its scores and the factors affecting Los Angeles' ability to receive a COPS grant. To be clear, no discovery is necessary for the Court to grant the

*City's* motion for summary judgment for the reasons explained above, but Defendants are not entitled to summary judgment in their favor based on what they claim happened during the 2017 grant process on the current state of the record.

## II. Plaintiff Is Entitled To Judgment As A Matter of Law.

This Court should grant Los Angeles' motion for partial summary judgment, and deny Defendants' motion, because the Challenged Considerations are *ultra vires*, violate the Spending Clause, and are arbitrary and capricious under the Administrative Procedure Act ("APA").

### A. The Challenged Considerations Are *Ultra Vires.*

In enacting the COPS program, Congress delegated authority to DOJ for a specific purpose: to fund states and localities in the hiring and rehiring of law enforcement officers for "deployment in community-oriented policing." 34 U.S.C. § 10381(b)(1), (2). Defendants acknowledge this statutory purpose. Defs.' Br. 4. And although they ignore it, they do not contest the basic principle that "[w]hen Congress limits the purpose for which a grant can be made, it can be presumed that it intends that the dispersing agency makes its allocations based on factors *solely* related to the goal of implementing the stated statutory purposes in a reasonable fashion, rather than taking irrelevant or impermissible factors into account." *Robbins v. Reagan*, 780 F.2d 37, 48 (D.C. Cir. 1985) (emphasis added); *see* Pl.'s Br. 1-12.

DOJ refuses to recognize that this inherent limit on Congress's delegation binds the agency, instead insisting on its prerogative to make award determinations based on impermissible factors untethered to the statutory purpose. *First*, DOJ is providing preferential treatment to states and localities that certify "partnership" with federal civil immigration authorities, in the form of particular laws, regulations, or policies the jurisdiction has in place (the "Notice and Access requirements")—despite the fact that such partnership is unrelated to the need for, or use of, COPS funds. *Second*, DOJ is awarding bonus points to, and authorizing COPS funds to be used by, state and local law

enforcement agencies that are willing to use grant money to focus on "Illegal Immigration," diverting COPS funds to federal immigration enforcement and away from their statutorily authorized purpose of state and local community policing.

DOJ thus has structured the COPS grant process to incentivize states and local communities to change their laws and regulations to fit DOJ policy preferences, and to "focus" grant funds on matters having nothing to do with the statutory purpose of the grant program created by Congress. Strikingly, when confronted with the extraordinary implications of their position, *see* Pl.'s Br. 15-16, Defendants do not deny them. DOJ admits by its silence that it could use the COPS grant program to pressure states to abolish (or impose) capital punishment, to crack down on (or legalize) marijuana, to restrict (or expand) gun rights, and more. Indeed, if Defendants prevail here, a later Administration could decide to punish COPS applicants from states that have non-preempted anti-immigration laws. *Cf. Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582 (2011).

Rather than explain how Congress could have meant to delegate so much authority *sub silentio*, Defendants attack a straw man. If DOJ does not have *complete* discretion to make grant decisions based on *any* factor, they assert, the agency would be reduced to "choos[ing] the winning applicants via random lottery." Defs.' Br. 15. That is plainly not what the City is suggesting. Congress delegated ample discretion for DOJ to make grant decisions based on its evaluation of the applicants' need for, and proposed use of, grant funds, viewed in light of the significant guidance Congress provided on the purpose of the grant it authorized and what an applicant should include in its application. It does not follow that DOJ may hijack the COPS program to promote the Attorney General's own unrelated policy agenda. The agency's attempt to do so here is *ultra vire*s.

1.    **DOJ Lacks Statutory Authority To Use The COPS Program To Pressure States And Local Communities To Change Laws, Regulations, And Policies Unrelated To The Program As Created By Congress.**

Defendants do not seriously dispute that the Notice and Access requirements are unrelated to a state's or locality's need for, or use of, COPS funds. *See* Pl.'s Br. 12-13. This concession establishes that the agency lacks authority to structure the grant program to disfavor communities that are unwilling or unable to certify to these forms of "partnership" with federal civil immigration authorities. *See Robbins*, 780 F.2d at 48.

The text and structure of the statute confirm that using the grant process to promote changes to unrelated local laws and policies was not authorized by Congress. Rather, Congress authorized DOJ to use COPS funds to encourage states and localities to change their laws unrelated to the need for, or use of, COPS funds in only one area: laws on human trafficking victims. *See* 34 U.S.C. § 10381(c)(2)-(3). Specifically, the statute provides that DOJ "may" give "preferential consideration" to COPS applicants from states that adopt certain laws granting leniency to victims of human trafficking. *Id.* But in Defendants' view, DOJ has inherent authority to give preferential consideration to state and local governments that adopt *any* law or regulation the agency wishes to promote. If DOJ has this broad power, there would have been no reason for Congress to authorize one narrow use of such authority. Defendants do not even attempt to deny that their reading of the statute would make subsection (c) superfluous.

Instead, Defendants note that the subsection (c) considerations are "not mandatory." Defs.' Br. 16. That does not help Defendants—it proves the City's point. If the statutory baseline were that DOJ is *permitted* to favor COPS applicants based on any unrelated laws and regulations, it would not have been superfluous for Congress to *require* the agency to favor applicants with respect to one such area, *i.e.*, laws that protect victims of human trafficking. But that is not what subsection (c) does, as DOJ recognizes. By enacting that provision as "discretionary," Defs.' Br. 16, Congress

recognized that without it, DOJ *lacked* the discretion to favor or disfavor applicants based on their laws and regulations.

Defendants next insist that if subsection (c) means what it says, DOJ would be able to consider only whether an applicant has the preferred laws against human trafficking in place, and otherwise would have to draw lots to make grant awards. *See* Defs.' Br. 16 & n.6. This is a straw man. DOJ has ample discretion to weigh an applicant's need for COPS funds, and its proposed use of such funds. *See infra* II.A.3. Recognizing that DOJ cannot generally give preferential treatment based on applicants' unrelated laws and policies hardly turns grant determinations into a lottery.

Without any express statutory authority allowing them to use COPS grants to promote their preferred state and local laws and policies concerning federal civil immigration enforcement, Defendants invert separation of powers principles. They insist that they must have authority to use the federal grant program to induce state and local policy changes, because "nothing in the governing statutes or case law *prohibits* DOJ from" doing so. Defs.' Br. 19 (emphasis added). That is backwards: it is fundamental that courts will not "presume a delegation of power absent an express withholding of such power," or else "agencies would enjoy virtually limitless hegemony." *Ry. Labor Execs. Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 671 (D.C. Cir. 1994) (en banc) (as amended).

Even more brazenly, Defendants distort the Supreme Court's seminal Spending Clause decision in *South Dakota v. Dole*, 483 U.S. 203 (1987), describing it as follows: "the Supreme Court has made clear that a *federal agency* can use grant conditions as a 'relatively mild encouragement' for States and localities to change their laws and policies." Defs.' Br. 19 (quoting *Dole*, 483 U.S. at 211) (emphasis added). What *Dole* actually says is that *Congress* can use federal grants to encourage states to change their laws and policies. *See Dole*, 483 U.S. at 208 (addressing a "condition imposed by Congress"). It is revealing that Defendants conflate the authority of Congress and that of a federal agency.

1    Indeed, the difference between what Congress may do and what an agency may do

2    is critical here, where federalism concerns are paramount.  When federalism is at stake,

3    Congress—not an agency—must supply a clear statement of its intentions to encroach on

4    traditional state and local prerogatives.  *See Gregory v. Ashcroft*, 501 U.S. 452, 461

5    (1991).  The *en banc* Fourth Circuit held that the *Gregory* "clear statement rule" applies

6    when an agency attempts to use the terms of a grant to pressure states and localities to

7    change their laws and policies.  *See Com. Va., Dep't of Educ. v. Riley*, 106 F.3d 559, 566-

8    67 (4th Cir. 1997) (en banc) (adopting the dissenting panel opinion of Luttig, J.),

9    *superseded by statute*; Pl.'s Br. 14.  Although Defendants assert that *Gregory* "does not

10   apply" in such circumstances, Defs.' Br. 19, they do not mention the *en banc* court of

11   appeals decision that disagrees with their view.  Congress itself provided a clear

12   statement to authorize DOJ to give preference to applicants based on their state and local

13   laws against human trafficking, *see* 34 U.S.C. § 10381(c)(2), (3); there is no such clear

14   statement authorizing DOJ to do the same with respect to civil immigration enforcement.

15   The broader statutory scheme makes it even clearer that Congress did not intend

16   for DOJ to use COPS funds to extract unrelated policy concessions from states and

17   localities related to their state and local law enforcement operations.  Section 10228

18   prohibits federal agencies from "exercis[ing] *any* direction, supervision, or control over

19   *any* police force or *any* other criminal justice agency of *any* State or *any* political

20   subdivision thereof."  *See* Pl.'s Br. 14-15 (emphasis added).  Congress enacted section

21   10228 to prevent exactly what DOJ seeks to do here—exercise "control over . . .  'vital

22   matters pertaining to the day-to-day operations of local law enforcement.'"  *Ely v. Velde*,

23   451 F.2d 1130, 1136 (4th Cir. 1971) (quoting S. Rep. No. 90-1097 at 222 (1968))

24   (discussing 42 U.S.C. § 3766(a), an earlier version of section 10228(a)).  Congress was

25   not just worried about literal mandates, but the use of "federal assistance to state and

26   local law enforcement" as a "vehicle for the imposition of federal guidelines" on such

27   agencies.  S. Rep. No. 90-1097, 1968 U.S.C.C.A.N. 2112, 2276 (1968) (views of

28   Senators Dirksen, Hruska, Scott, and Thurmond).  And the Department of Justice,

13

supporting an earlier proposed version of section 10228(a), agreed that it would violate both "the mandate and spirit" of the provision to withhold funds because police departments were not run "the way the Attorney General says they must" be run.[4]

Defendants brush the text and purpose of section 10228(a) aside by claiming that they are only "encouraging cooperation with federal authorities," Defs.' Br. 18, but this "cooperation" is functionally a direction for how local law enforcement ought to function.  Specifically, DOJ uses its control over valuable federal funds to "encourage" state and local governments to certify that they have specific laws or policies in place governing who may enter their detention facilities and what their state and local law enforcement personnel must do.  *See* Pl.'s Br. 7.  If Defendants mean to suggest that this is not "direction, supervision, or control" because DOJ is only pressuring, not mandating, states and localities to make these certifications, that is entirely at odds with the congressional purpose of preventing federal grants from being a vehicle to change state and local law enforcement operations.  It also would make section 10228 the second statutory provision Defendants would make a nullity, doing nothing but reiterating the Tenth Amendment anti-commandeering rule.[5]

"If Congress has not unequivocally conditioned receipt of federal funds in the manner claimed by the [agency], . . . then [the] inquiry is at an end." *Riley*, 106 F.3d at 566.  Here, not only is there no such clear statement, but every indication on the face of

---

[4] *Controlling Crime Through More Effective Law Enforcement: Hearings Before the Subcomm. on Criminal Laws and Procedure of the S. Comm. on the Judiciary*, 90th Cong. at 100, 384, 497 (1967).

[5] Defendants stray even further afield with a reference to 34 U.S.C. § 10122(c)(2)(F), which they claim reflects an interest in promoting "cooperation among the Federal Government, States, and units of local government."  Defs.' Br. 18 (quoting a portion of § 10122(c)(2)(F)).  Defendants neglect to quote the text that immediately follows, which makes clear that the statute is concerned with promoting cooperation to address "white-collar crime and public corruption."  34 U.S.C. § 10122(c)(2)(F).  That statute could not have less relevance here.

the statute points in the opposite direction.  Congress did not intend to authorize DOJ to disfavor COPS grant applicants if they were not willing to adopt unrelated laws or policies.  DOJ's preferential treatment for COPS applicants that are willing to certify to their immigration "partnership" is therefore unlawful.

### 2. DOJ Cannot Divert Funds That Congress Designated For Community Policing To Federal Civil Immigration Enforcement.

DOJ is also awarding "bonus points" to applicants who promise to focus their use of grant funds on "Illegal Immigration" by "propos[ing] ways to contribute to combatting illegal immigration," Defs.' Br. 1.  Congress, however, authorized DOJ to provide funds to states and localities under the COPS program for the hiring, or rehiring, of state and local law enforcement officers for "deployment in community-oriented policing."  34 U.S.C. § 10381(b)(1), (2).  Nowhere in their brief do Defendants explain how Congress's objective of funding the hiring of state and local officers to engage in "community-oriented policing" has anything to do with such officers partnering with federal officials to enforce federal civil immigration law.  That is a tacit admission by Defendants that they are acting *ultra vires*.

DOJ's attempt to funnel COPS funds to an area that is "unquestionably exclusively a federal power," *DeCanas v. Bica*, 424 U.S. 351, 354 (1976), does not advance "community-oriented policing."  Community policing, the COPS Office itself explains, "begins with a commitment to building trust and mutual respect between police and communities."  RJN Ex. A, "About."  The types of activities funded through the "Illegal Immigration" focus area do not involve the local community at all; they require partnership between local law enforcement *and federal immigration authorities.  See* RJN Ex. F, DOJ FY 2018 COPS Office Congressional Justification at 31 (characterizing the "Illegal Immigration" focus area as "[p]artnering with federal law enforcement"); Defs.' Br. 18 (observing that, apart from a formal agreement with the federal government, state and local officers can assist in federal immigration enforcement by "providing [federal authorities] access to aliens they have detained or informing federal authorities of the

15

CITY OF LOS ANGELES' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT

1
2
3
4

impending release of such persons").  Congress was not seeking to "build[] trust"
between local police and federal immigration officials; its intent, as DOJ recognizes
outside the context of this litigation, was to improve relationships between local police
and the communities they serve.

5
6
7
8
9
10
11

The closest Defendants come to a defense of this scoring factor is to insist that "the
intersection of illegal immigration and crime is a serious public safety issue that can
helpfully be addressed through 'cooperative efforts' among federal, state, and local law
enforcement."  Defs.' Br. 23.  This premise is unsupported, but it is also irrelevant: the
fact that something is a "public safety issue" does not mean it is a "*community-oriented
policing* issue."  All policing has to do with public safety, but Congress did not authorize
COPS funds to hire officers for "deployment in policing" generally.

12
13
14
15
16
17
18

Defendants also twist the words of the statute to suggest that Congress intended to
promote cooperation between federal and local law enforcement.  Defs.' Br. 23 (citing
Pub. L. No. 103-322).  The "cooperation" Congress intended to promote is quite clearly
"cooperative efforts between law enforcement agencies *and* members of the community."
Pub. L. No. 103-322 (emphasis added).  Cooperation among federal, state, and local law
enforcement is not cooperation "between law enforcement agencies and members of the
community."

19
20
21
22
23
24
25
26
27
28

In fact, the types of "cooperation" that DOJ encourages would likely *damage* the
cooperation between local law enforcement and the community that Congress intended to
support.  Through the COPS grant, DOJ has offered to sponsor 287(g) partnerships, in
which state and local law enforcement officers act as federal immigration officers.  *See* 8
U.S.C. § 1357(g).  As Los Angeles explained, and Defendants do not dispute, local law
enforcement officers "[c]arrying out civil immigration raids in support of federal
enforcement efforts bears no logical connection" to community policing.  Pl.'s Br. 17.
DOJ's preference for applicants that will use grant funds to honor federal detainer
requests for certain immigrants, *see* Dorr Decl. ¶ 24, is likewise unrelated to community
policing.  In fact, this practice has led to municipality liability due to Fourth Amendment

16

violations—hardly the type of police-community relationship that Congress intended. *See* Pl.'s Br. 17 (collecting cases).

DOJ's interpretation of its authority disregards not only the COPS statute, but also federal immigration law.  As Los Angeles previously explained, Pl.'s Br. 18, DOJ's funding of local officers to serve as federal immigration officers in 287(g) partnerships violates Congress's directive that such partnerships be undertaken "at the expense of the State or political subdivision."  8 U.S.C. § 1357(g)(1).  Defendants' sole response is that "any funds awarded under a CHP grant would have to be used to hire or rehire officers pursuant to the requirements of the Program, not for any state or local expenses of a 287(g) agreement."  Defs.' Br. 18 n.8.  But they do not deny that DOJ will be funding the hiring of state and local officers to engage in immigration enforcement under 287(g) agreements.  And the Department of Homeland Security has made clear that "expenses" under such an agreement *include* the "salaries" of personnel.[6]  Thus, it is clear that DOJ is using COPS funds to pay the salaries of state and local officers in 287(g) partnerships, and in doing so, violating Congress's prohibition against federal funding of those partnerships.

By favoring applicants that adopt "Illegal Immigration" as a focus area, DOJ is acting without statutory authority, diverting COPS funds from their authorized statutory purpose, and punishing applicants that seek COPS funds for programs that are actually related to community-oriented policing.

### 3.    The Choice Before The Court Is Not Unfettered Agency Power Or Grant Awards Chosen By Lottery.

Unable to explain how Congress authorized the immigration-related factors that DOJ has made the centerpiece of the COPS program, Defendants resort to hyperbole.  In

---

[6] *See* Memorandum of Understanding, *available at* https://www.ice.gov/doclib/detention-reform/pdf/287g_moa.pdf (emphasis added).

their telling, if DOJ lacks the expansive authority they claim, COPS awards would have to be allocated randomly. *See* Defs.' Br. 15. That is nonsense.

It is of course permissible for DOJ to consider a community's crime-fighting needs in determining which applicants should receive funds to hire officers to engage in community-oriented policing. Congress specifically required COPS applicants to "demonstrate a specific public safety need" related to community policing, 34 U.S.C. § 10382(c)(2); s*ee also id.* § 10382(c)(10) (applicant must "explain how the grant will be utilized to reorient the affected law enforcement agency's mission toward community-oriented policing or enhance its involvement in or commitment to community-oriented policing"). This necessarily means Congress expected DOJ to consider those public safety needs. And having been delegated authority to evaluate applications in part on the basis of public safety needs, DOJ can reasonably "prioritiz[e] different areas of public safety from year to year," so long as they can be addressed by community policing. Defs.' Br. 16. Likewise, since Congress provided DOJ the authority to issue grants for use in community-oriented policing, and required applicants to explain how any grant funds they receive will do so, *see* 34 U.S.C. § 10382(c)(10), the agency can plainly make discretionary judgments about which grant proposals best serve that purpose. These factors alone leave DOJ with substantial discretion; the fact that this discretion is not limitless does not mean that the agency must conduct a lottery.

Defendants also note various considerations DOJ has used in the past to award bonus points, asserting that every one of them would fail under the City's approach. Those considerations are not before the Court and there is no need for the Court to opine on them; if an applicant is aggrieved by a particular scoring factor and believes it is unlawful, that applicant is free to bring its own challenge. But the past considerations DOJ has identified are consistent with the COPS authorizing statute—unlike its novel immigration-related considerations.

For example, Defendants suggest that if the City prevails, DOJ could not award additional consideration to jurisdictions "that have recently experienced a catastrophic

event." Defs.' Br. 16.  But as Defendants' own declarant explains, the purpose of this

consideration is to favor applicants that have experienced "tragedies or disasters

*impacting law enforcement*."  Dorr Decl. ¶ 18 (emphasis added).  It is consistent with the

statutory text and intent of Congress for DOJ to consider an event that negatively impacts

law enforcement resources for community policing as part of the applicant's public safety

need and its "inability to address the need without Federal assistance," 34 U.S.C.

§ 10382(c)(3).  Jurisdictions suffering from a catastrophic event can be expected to divert

resources to respond to the tragedy and away from community policing, so ensuring that

COPS funds are available to help make up the difference is eminently reasonable.  Other

considerations Defendants note—for flexibility in shift assignments and an "early

intervention system" for officers showing signs of stress, *see* Defs.' Br. 19—have

everything to do with the statutory purpose of hiring officers for community-oriented

policing.  Indeed, the consequences to police-community relations of not timely

identifying officers under stress are all too real.[7]

Even if, for the sake of argument, DOJ had pushed the boundaries of its delegated

authority in the past, there is no risk that a ruling for Los Angeles would broadly

undermine the way DOJ has historically administered the COPS program.  DOJ's

immigration-related considerations, which have no mooring in the statutory purpose of

the grant and are contradicted by the direction Congress provided, are a new and

unlawful invention by the Attorney General.

---

[7] Defendants also observe that DOJ gave additional consideration for the hiring of
military veterans before Congress authorized the agency to "prioritiz[e] the hiring and
training of veterans," 34 U.S.C. § 10381(b)(2).  Defs.' Br. 7.  This consideration had to
do with the hiring of officers, which is at the core of the statutory grant authorization.
Moreover, if any inference is to be drawn from Congress's codification of this factor, it is
that Congress was concerned that DOJ did *not* have sufficient authorization for it without
a more specific enactment.  *Cf. Schism v. United States*, 316 F.3d 1259, 1289 (Fed. Cir.
2002) (noting that Congress may act to ratify action that was "*unauthorized* when taken"
(emphasis added)).

**B.    The Challenged Considerations Violate The Spending Clause Because Defendants Cannot Identify Any Reasonable Relationship They Bear To The Community Policing Purpose Of The COPS Program.**

A state's or locality's willingness to certify compliance with the Notice and Access requirements, or to use COPS funds to participate in civil immigration enforcement, made a significant difference in the applicant's ability to compete for federal funds.  *See* Dorr Decl. ¶ 35.  In fact, in some cases, these were the dispositive factors in whether a jurisdiction received a grant.  *Id.*; *see also id.* (stating that 19 out of 30 successful large jurisdictions and 124 out of 149 successful small jurisdictions complied with the Notice and Access requirements).  When DOJ announced the 2017 awards, it even boasted about how effective these inducements were.  RJN Ex. H, Nov. Press Release.  The Challenged Considerations thus operate as terms or conditions on the receipt of COPS funds, and so must comply with constitutional restrictions on funding conditions.

The Supreme Court has clearly established that congressional conditions on the receipt of federal funds "must . . . bear some relationship to the purpose of the federal spending."  *New York v. United States*, 505 U.S. 144, 167 (1992).  As discussed above, Congress did not delegate DOJ authority to impose conditions related to immigration enforcement on COPS grants.  But even if DOJ had authority to use the Challenged Considerations, they violate the Spending Clause's requirement that conditions be "reasonably related" to the purposes of the grant program, *Nevada v. Skinner*, 884 F.2d 445, 447 (9th Cir. 1989), because enforcement of federal civil immigration laws is unrelated to the COPS grant's purpose of promoting community-oriented policing.  Defendants offer no serious argument to the contrary.

Community-oriented policing, in DOJ's own words, entails "developing partnerships between law enforcement agencies *and the communities they serve*."  RJN Ex. F, DOJ FY 2018 COPS Office Congressional Justification at 4 (emphasis added); *see also* RJN Ex. A, "About," ("Community policing begins with a commitment to building trust and mutual respect between police and communities.").  It is not, as DOJ contends

20

CITY OF LOS ANGELES' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

for the first time here, about developing partnerships between state and local law

enforcement *and the federal government*.  Defs.' Br. 23.  DOJ attempts to argue that

enforcement of federal civil immigration law is reasonably related to state and local *law*

*enforcement* by asserting that enforcement of federal immigration law "makes

communities safer."  *Id.*  This argument is itself unsupportable, *see Philadelphia v.*

*Sessions*, 2017 WL 5489476 at *48 (E.D. Pa. Nov. 15, 2017) ("Immigration law has

nothing to do with the enforcement of local criminal laws."), *appeal filed* (3d Cir. Jan. 18,

2018), but more importantly, DOJ makes no argument as to how mandating state and

local enforcement of federal immigration law is related to *community policing*.  DOJ's

only way to show its considerations relate to the statutory purpose is to read the

words "community-oriented" out of the statute, and treat the purpose of the grant as

anything related to "policing."  *See supra* II.A.2.  But federal agencies are bound by the

statutes that Congress enacts.  Because the Challenged Considerations have no

relationship to "*community-oriented* policing," they cannot pass muster under the

Spending Clause.

> The unrelated provisions of the Immigration and Nationality Act which DOJ cites
as evidence of congressional intent to involve states and localities in enforcement of
federal civil immigration laws, Defs.' Br. 23, provide no better support for their
contention that federal civil immigration enforcement is related to community policing.
Rather, they show that when Congress intended to include state and local governments in
federal immigration enforcement, it authorized such participation explicitly—belying the
contention that immigration enforcement should be generally considered related to state
and local policing.  Because the Challenged Considerations are unrelated to—and if
anything may actively undermine—the goals of community policing, they violate the
relatedness prong of the Spending Clause.

### C.    The Challenged Considerations Are Arbitrary And Capricious.

> DOJ's adoption of the Challenged Considerations was arbitrary and capricious in
violation of the APA, 5 U.S.C. § 706(2)(A), because the agency failed to

contemporaneously articulate a "reasonable basis . . . for the decision." *Alaska Oil & Gas Ass'n v. Jewell*, 815 F.3d 544, 554 (9th Cir. 2016).

Even if it were possible for conditions requiring state and local enforcement of federal civil immigration laws to be related to community policing, DOJ at no point explains how the Challenged Considerations are related to the goals of the COPS statute as enacted by Congress. It thus entirely failed to "articulate[] a rational connection between the facts found and the choice made." *Az. Cattle Growers' Ass'n v. U.S. Fish & Wildlife, Bureau of Land Mgmt.*, 273 F.3d 1229, 1236 (9th Cir. 2001). In its brief, Defendants do not point to any instance on the record in which DOJ or Attorney General Sessions explained the connection between the immigration factors and community policing, instead stating that, "[n]othing in the statutes governing CHP suggests DOJ should *not* consider the extent to which a jurisdiction cooperates in the enforcement of immigration law . . . ." Defs.' Br. 24-25 (emphasis added). As the City argues above, the immigration conditions are in fact inconsistent with the COPS statute. But even if they were not, the APA demands more than that agency action not be clearly inconsistent with the text of a statute; it requires that the agency contemporaneously explain the basis for its decisions. *See Pacific Coast Fed'n of Fishermen's Ass'ns v. U.S. Bureau of Reclamation*, 426 F.3d 1082, 1091 (9th Cir. 2005) ("It is a basic principle of administrative law that the agency must articulate the reason or reasons for its decision."). DOJ failed to do so, and Defendants' brief does not argue otherwise.

DOJ also misunderstands the City's reliance on studies showing either no relationship, or an inverse relationship between so-called "sanctuary" policies and violent crime. *See* Pl.'s Br. 22. The point is not that the City has identified studies supporting a "difference in view" from DOJ. Defs.' Br. 25. It is that *the Attorney General* identified these studies as supporting his actions, but misread them—*according to their authors*. *See* Pl.'s Br. 22. (citing ECF 49-3, Ex. C). When an agency acts on the basis of evidence that means the opposite of what it says, that is arbitrary and capricious. *Cf. Defenders of Wildlife v. Jewell*, 176 F. Supp. 3d 975, 1004 (D. Mont. 2016) (holding that an agency

1
2
3
4

decision relying on "an implausible misinterpretation [of a study] that runs counter to
[its] intent" was "arbitrary and capricious").  Los Angeles is not challenging a policy
disagreement, but an agency decision that is not supported by the very evidence it cites,
and so lacks a rational basis.

5
6

### III.    An Injunction Barring Defendants From Using The Invalid Considerations Is Appropriate.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

This Court may issue what Defendants term a "nationwide" injunction, meaning an
injunction that prevents Defendants from continuing to act unlawfully with respect to
everyone but the Plaintiff here.  *See, e.g.*, *Califano v. Yamasaki*, 442 U.S. 682, 702
(1979) ("nationwide" injunction appropriate where "necessary to provide complete relief
to the plaintiffs").  Indeed, both the Ninth and Fifth Circuits recently affirmed a broad
injunction against an Executive Branch action in all its applications, including as to
affected individuals not party to the case.  *Washington v. Trump*, 847 F.3d 1151, 1166-67
(9th Cir. 2017); *see also Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), aff'd by an
equally divided court, 136 S. Ct. 2271 (2016) (affirming a broad injunction against a
federal immigration policy in all its applications and not limited to the plaintiffs before
the court).  An injunction that prevents DOJ from applying its unlawful policy is
particularly necessary here because DOJ's preferential treatment of COPS applicants who
adopt DOJ's preferred immigration policies over those, like Los Angeles, who do not, is
invalid on its face.  *See, e.g.*, *Decker v. O'Donnell*, 661 F.2d 598, 617-18 (7th Cir. 1980)
(affirming nationwide injunction in case of facial challenge to legality of agency
regulation); *Santa Clara v. Trump*, 2017 WL 5569835, at *17 (N.D. Cal. Nov. 20, 2017),
*appeal filed* (9th Cir. Dec. 14, 2017).

24
25
26
27
28

Defendants suggest in one sentence in a footnote that "any injunction should be
limited to the plaintiff rather than applying to all CHP applicants."  Defs.' Br. 11 n.4.
Apart from the absence of any actual argument supporting their position, Defendants fail
to explain how an injunction could be tailored only to Los Angeles when the issue is
DOJ's preferential treatment of *other* applicants.  *See Washington*, 847 F.3d at 1167

(nationwide relief appropriate where government had not proposed a workable alternative form that would remedy the violation).  The City is not injured because it loses points itself, but because its competitors are unlawfully given extra points.  Los Angeles' request for an even playing field for COPS applicants necessarily requires across-the-board relief.  *Cf. Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501-02 (9th Cir. 1996) ("[A]n injunction is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in the lawsuit—even if it is not a class action—if such breadth is necessary to give prevailing parties the relief to which they are entitled." (citation and emphasis omitted)); *Bresgal v. Brock*, 843 F.2d 1163, 1171 (9th Cir. 1987) (affirming nationwide relief where "the district court could hardly require enforcement of the [statute] on anything other than a nationwide basis").  Accordingly, this Court should issue an injunction prohibiting DOJ from using the Challenged Considerations in making COPS grant determinations in future grant cycles.

## CONCLUSION

For the foregoing reasons, the Court should grant partial summary judgment to the City of Los Angeles as to each of its claims concerning the COPS grant program (Counts Four, Five, and Six), deny Defendants' motion for partial summary judgment, and enter final judgment pursuant to Rule 54(b) on those claims.  The Court should declare that the Challenged Considerations are (1) *ultra vires* and a violation of the Separation of Powers, (2) in violation of the Spending Clause, and (3) an arbitrary and capricious agency action in violation of the APA.  The Court should further enjoin Defendants from using the Challenged Considerations in making COPS grant determinations in future grant cycles.

Dated: January 29, 2018

Respectfully Submitted,

By: *[signature: Mike Feuer]*

MICHAEL N. FEUER
City Attorney

MITCHELL A. KAMIN
MÓNICA RAMÍREZ ALMADANI
NEEMA T. SAHNI
Covington & Burling LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, California 90067-4643

DAVID M. ZIONTS, admitted *pro hac vice*
IVANO M. VENTRESCA, admitted *pro hac vice*
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001

JAMES P. CLARK
Chief Deputy City Attorney
LEELA A. KAPUR
Executive Assistant City Attorney
VALERIE L. FLORES
Managing Senior Assistant City Attorney
MICHAEL DUNDAS
Deputy City Attorney
200 North Main Street, City Hall East Room 700
Los Angeles, California 90012
Telephone: (213) 978-8344
Facsimile: (213) 978-8312

*Attorneys for Plaintiff*
*City of Los Angeles*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of January, 2018, the within document and its attachments were electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), pursuant to Local Rule 5-3.2.


/s/   *Mitchell A. Kamin*

Mitchell A. Kamin