NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF LOS ANGELES, | ) CASE NO. CV 17-7215-R |
| Plaintiff, | ) ORDER GRANTING PLAINTIFF'S |
| | ) MOTION FOR PARTIAL SUMMARY |
| v. | ) JUDGMENT AND DENYING |
| | ) DEFENDANTS' MOTION FOR PARTIAL |
| JEFFERSON B. SESSIONS III; et al., | ) SUMMARY JUDGMENT |
| Defendants. | ) |

Before the Court is Plaintiff's Motion for Partial Summary Judgment as to Counts Four, Five, and Six of Plaintiff's Complaint, filed on November 21, 2017, and Defendants' Motion for Partial Summary Judgment as to Counts Four, Five, and Six of Plaintiff's Complaint, filed on January 12, 2018. (Dkts. 49, 53). Having considered briefing by the parties, briefing by amici curiae, and oral argument of counsel, this Court issues the following order.

Congress created a grant program to support local governments in hiring officers for deployment in community-oriented policing ("COPS"). The Department of Justice ("DOJ"), headed by Defendant Jefferson B. Sessions III ("Attorney General"), administers this grant program through the "COPS Office." The COPS Office administers the COPS Hiring Program ("CHP") grant, which "provides funding directly to law enforcement agencies to hire and/or rehire career law enforcement officers in an effort to increase their community policing capacity and

crime prevention efforts."

Each fiscal year, the COPS Office issues applications for the CHP grant and selects local governments to receive funding. Because funds are limited, the COPS Office created this scoring system to best allocate the funds: Community Policing (50% of score), Crime (30% of score), and Fiscal Health (20% of score). The COPS Office also awards "additional consideration" bonus points but does not disclose their relative weight.

In the fiscal year ("FY") 2017 application cycle for CHP grants, the COPS Office added a "focus area" called "Illegal Immigration." The COPS Office explained that additional consideration may be given to applicants that partner with federal law enforcement to address illegal immigration. On September 12, 2017, the COPS Office sent an e-mail with an attached "Certification of Illegal Immigration Cooperation" form that each applicant could sign to qualify for the additional consideration points. The form required applicants to certify implementation of "rules, regulations, policies, and/or practices" granting federal immigration authorities (1) access to detention facilities to ask aliens and suspected aliens about their immigration status and (2) at least 48 hours' notice of their expected release from custody ("Challenged Considerations").

Los Angeles has applied for a CHP grant in 39% of all cycles since inception. It received CHP grants in 2012 and 2016, the last two times it applied. It also applied for a FY 2017 grant.

On September 29, 2017, Los Angeles filed its Complaint and an application seeking to preliminarily enjoin Defendants from imposing the Challenged Considerations. On October 12, 2017, Defendants declared they had already selected grant awardees and Los Angeles was not among them. They also declared that Los Angeles would not have received a grant even if it had qualified for the additional bonus points. On October 16, 2017, Los Angeles withdrew its preliminary injunction application citing Defendants' declaration and explaining that it could not secure timely relief in advance of the CHP award decisions. Los Angeles now seeks to enjoin Defendants from imposing the Challenged Considerations in future grant cycles. To that end, both Los Angeles and Defendants move for summary judgment on Counts 4, 5, and 6 of the Complaint.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v.*

1  *Catrett*, 477 U.S. 317, 330 (1986). Partial summary judgment may be granted on particular
2  claims. Fed. R. Civ. P. 56(a).
3  **Justiciability**
4      Article III of the Constitution allows federal courts to adjudicate only live cases and
5  controversies. Under this requirement, a plaintiff must have "standing" to sue for relief. The
6  elements of standing are (1) injury in fact, (2) causation, and (3) redressability. *Lujan v.*
7  *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). To establish standing to seek equitable relief,
8  the plaintiff must also show a likelihood of future injury. *City of L.A. v. Lyons*, 461 U.S. 95, 105
9  (1983). "The existence of standing turns on the facts as they existed at the time the plaintiff filed
10 the complaint." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007).
11     A grant competitor may suffer "competitive injury" for purposes of standing. "[W]hen
12 challenged agency conduct allegedly renders a [competitor] unable to fairly compete for some
13 benefit, that [competitor] has suffered a sufficient 'injury in fact' and has standing." *Preston v.*
14 *Heckler*, 734 F.2d 1359, 1365 (9th Cir. 1984); *see also Int'l Bhd. of Teamsters v. U.S. Dep't of*
15 *Transp.*, 861 F.3d 944, 950 (9th Cir. 2017) ("[E]conomic actors suffer an injury in fact when
16 agencies lift regulatory restrictions on their competitors or otherwise allow increased competition
17 against them…. This doctrine of 'competitor standing' is grounded in the basic law of economics
18 that increased competition leads to actual injury."). The grant competitor is not required to show
19 that it would have received the grant but for the disadvantage it faced. Rather, "the 'injury in fact'
20 is the inability to compete on an equal footing in the bidding process…." *Ne. Fla. Chapter of*
21 *Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666 (1993).
22     Los Angeles has standing to bring suit based on competitive injury. Los Angeles filed its
23 Complaint promptly upon notification that Defendants would award bonus points based on
24 compliance with the Challenged Considerations and before funds were distributed. As Los
25 Angeles did not certify compliance with these conditions, it could not fairly compete with those
26 competitors that did. Therefore, Los Angeles suffered ongoing competitive injury at the time it
27 filed suit and properly sought to enjoin Defendants from creating an uneven playing field.
28 Defendants do not challenge application of the remaining standing elements.

Defendants instead argue the case is now moot because the COPS Office has since awarded all FY 2017 grants.  "Mootness [is] the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 556 (9th Cir. 2010).  But there is an exception to the mootness doctrine where the plaintiff's harm is "capable of repetition yet evading review." *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016).  Under this exception, (1) the challenged action must be too short in duration to fully litigate before the claim expires, and (2) there must be a "reasonable expectation" that the plaintiff will again be subject to the challenged action.  *Id.*

This case is not moot because Los Angeles' harm is capable of repetition in a manner that evades judicial review.  First, Los Angeles could not fully litigate this case before completion of the FY 2017 grant process.  Exactly one month passed between the date Defendants announced imposition of the Challenged Considerations and selected successful applicants.  Therefore, Los Angeles had no more than one month to meaningfully challenge the selection process.  The Ninth Circuit has explained that even "actions lasting only one or two years evade review." *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1018 (9th Cir. 2012).  Additionally, disputes over government grant awards are common examples of challenges too short in duration to be fully litigated before funds are distributed.  *See* Wright & Miller, Fed. Prac. & Proc. § 3533.8 (3d ed. 2017).  Therefore, Los Angeles satisfies the first prong.

Second, there is at least a "reasonable expectation" that Los Angeles will suffer similar injury in FY 2018.  The Attorney General has touted immigration enforcement as a cornerstone of the DOJ's agenda, meaning competitors can reasonably expect similar conditions to apply in FY 2018.[1]  Further, it is reasonably likely Los Angeles will seek a FY 2018 CHP award because it has applied for a grant in 39% of all cycles since inception.  Although 39% does not represent a statistical probability, it is more than sufficient to satisfy the "reasonable expectation" standard.

---

[1] *See, e.g.*, DOJ, Off. of Public Affairs, *Attorney General Jeff Sessions Delivers Remarks on Sanctuary Jurisdictions*, https://www.justice.gov/opa/speech/attorney-general-jeffsessions-delivers-remarks-sanctuary-jurisdictions; DOJ, Off. of Public Affairs, *Attorney General Sessions Announces $98 Million To Hire Community Policing Officers*, https://www.justice.gov/opa/pr/attorney-general-sessions-announces-98-million-hirecommunity-policing-officers. Defendants do not object to admission of either piece of evidence, and both are publicly-available pages, the accuracy of which "cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).

4

1  *See Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988) (explaining that "reasonable expectation" is a much lower bar than "demonstrably probable").  A high-ranking officer also declared under oath that Los Angeles will apply for a FY 2018 grant.  Therefore, Los Angeles satisfies the second prong, and this action is justiciable.[2]

**Count 4**

Los Angeles alleges in Count 4 that imposition of the Challenged Considerations is ultra vires.

An agency "has no power to act…unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986).  When agencies "act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires." *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013).  While "Congress may attach conditions on the receipt of federal funds," a federal agency may not do so without Congress' permission.  *South Dakota v. Dole*, 483 U.S. 203, 206 (1987); *see also City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 940 (N.D. Ill. 2017) ("Whether the new conditions on the…grant are proper depends on whether Congress conferred authority on the Attorney General to impose them.").

"If Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute." *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991).  Although *Gregory* did not address this constitutional balance in the grant context, the Court explained that this clear statement rule "applie[s] in other contexts," including any "traditionally sensitive areas, such as legislation affecting the federal balance." *Id.* at 461.  The Fourth Circuit, citing Supreme Court precedent, extended the clear statement rule specifically to federal grants. *Com. of Va., Dep't of Educ. v. Riley*, 106 F.3d 559, 566 (4th Cir. 1997) (en banc).  The *Riley* Court emphasized the importance of such a rule where the grant condition required the surrender of a critical power reserved to the states by the Tenth Amendment. *Id.*  The Supreme Court has emphasized that the police power is one such critical state function. *See, e.g.*, *Gonzales v. Oregon*, 546 U.S. 243, 270 (2006) (states

---

[2] In a footnote, Defendants argue this matter is incapable of repetition because the FY 2017 cycle cannot be repeated. Defendants' attempt to break each fiscal cycle into distinct programs would render any challenge impossible.  Each year, grant competitors may only have one month to challenge that cycle's scoring factors, only to be told upon withdrawal of the challenge that the following cycle cannot be repeated.

5

have "great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons").

The Challenged Considerations upset the constitutional balance between state and federal power by requiring state and local law enforcement to partner with federal authorities. These conditions infringe upon the state police power. The Challenged Considerations also upset the constitutional balance by requiring state and local participation in a historically federal function—immigration enforcement. *See, e.g.*, *Arizona v. United States*, 567 U.S. 387, 394 (2012) ("The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens."). Accordingly, the dispositive question before this Court is whether Congress has "unmistakably" authorized the Attorney General to impose the Challenged Considerations.

CHP grants are awarded under the COPS statute, which authorizes the Attorney General to issue grants to state and local governments to rehire law enforcement officers for deployment in community policing. 34 U.S.C. § 10381(a), (b)(1)-(2). Subsection (c) says "the Attorney General may give preferential consideration" to CHP grant applicants in only three circumstances, none of which apply to federal immigration.[3] This subsection is the only place in the statute that allows the Attorney General to look beyond an applicant's need and use for CHP grant money.

Defendants argue that subsection (c) does not limit the universe of applications the Attorney General may preferentially consider. According to Defendants, because "the Attorney General *may* give preferential treatment" in the three circumstances listed in subsection (c), the Attorney General *may also* develop additional factors to consider.

In the Court's view, subsection (c) does not plainly or even arguably authorize the Attorney General to give preferential treatment to competitors based on compliance with the Challenged Considerations. Defendants' reading effectively renders subsection (c) superfluous. *See Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 966 (9th Cir. 2013) ("It is a well-established rule of statutory construction that courts should not interpret statutes in a way that renders a provision superfluous."). Contrary to Defendants' claim, the enumeration of

---

[3] This section authorizes the Attorney General to give preferential consideration for the following: (1) an application "for hiring and rehiring additional career law enforcement officers that involves a non-Federal contribution exceeding the 25 percent minimum" contribution; (2) the applicant is in a state with laws that treat minors engaged in commercial sex as victims; or (3) the applicant is in a state with laws allowing the vacatur of arrests or convictions for non-violent crimes committed by human trafficking victims directly related to their human trafficking.

6

discretionary factors in this context must be read to exclude others. *See United States v. Vonn*, 535 U.S. 55, 65 (2002) (absent contrary indications, "expressing one item of [an] associated group or series excludes another left unmentioned"); *see also Gonzales*, 546 U.S. at 274 ("Congress is unlikely to alter a statute's obvious scope…through muffled hints…."). If the Attorney General has complete discretion to favor certain applicants, Congress' subsection (c) directives are meaningless. Congress knew how to confer the broad power the Attorney General seeks and chose not to here. *See, e.g.*, 42 U.S.C. § 3796gg-l(e)(3) (Attorney General can "impose reasonable conditions" on grant awards); 42 U.S.C. § 10305(a)(2) (Secretary can impose conditions he "considers to be in the best interest of the Nation"); *United States v. Dang*, 488 F.3d 1135, 1140 (9th Cir. 2007) (inclusion of catch-all provision indicates gap for agency to fill). Subsection (c) does not permit Defendants to favor applicants compliant with the Challenged Considerations.

This conclusion does not mean, as Defendants contend, that the Attorney General is relegated to either developing an arbitrary method of ranking applicants or choosing the winning applicants by random lottery. The Attorney General may select applicants with programs that best embody the statutory purpose of the CHP grant. *See* 34 U.S.C. § 10382(c)(10) (applicants must "explain how the grant will be utilized to reorient the [applicant's] mission toward community-oriented policing or enhance its involvement in or commitment to community-oriented policing").

"Community policing begins with a commitment to building trust and mutual respect between police and communities," which is "critical to public safety."[4] Los Angeles argues that community policing must foster trust between police and communities, and the Challenged Considerations do the opposite. Defendants, citing a House Report and the Los Angeles Police Department's website, argue at some length that community policing is concerned broadly with crime prevention and public safety, which the Challenged Considerations address.[5]

There is no dispute between the parties that community policing ultimately aims to prevent crime and keep the public safe. But all policing is fundamentally aimed at these end goals.

---

[4] COPS Office, *"About,"* https://cops.usdoj.gov/about. Defendants do not object to Los Angeles' request for judicial notice of this publicly-available page, the accuracy of which "cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

[5] H.R. Rep. No. 103-324 at 8-9 (1993); *see Community Policing Unit*, http://www.lapdonline.org/support_lapd/content_basic_view/731. The accuracy of this publicly-available page "cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

7

1  Community policing is distinct from other types of policing because of the means used to achieve
2  these end goals, namely partnerships between police *and communities*.  Pub. L. No. 103-322, Title
3  I, § 10003(a), 108 Stat. 1796 (1994) (Congress established COPS statute "to increase police
4  presence, to expand and improve cooperative efforts between law enforcement agencies and
5  *members of the community* to address crime and disorder problems, and otherwise to enhance
6  public safety") (emphasis added); *see* Brief of Amici Curiae Prosecutors and Law Enforcement
7  Leaders, No. 17-cv-7215-R-JCx, pp. 3-4, (community policing "requires police to interact with
8  neighborhood residents in a manner that will build trust and improve the level of cooperation with
9  the police department").  Defendants' attempt to use these funds to encourage partnerships
10 between local police and federal immigration authorities encroaches on territory Congress did not
11 contemplate.  Congress mandated that CHP grants must be used for *community* policing, not
12 policing generally.
13      Further, Defendants' broad interpretation of their authority carries extraordinary
14 implications.  If the Attorney General can favor applicants based on any factors relevant to public
15 safety, he enjoys nearly limitless discretion to select grant awardees in ways not even tangentially
16 related to community policing.  For example, he may favor CHP applicants that agree to
17 implement or abolish capital punishment in the name of public safety.  In the absence of clear
18 statutory guidance, this Court cannot conclude that Congress intended to stretch Defendants'
19 authority so broadly.  *See Robbins v. Reagan*, 780 F.2d 37, 48 (D.C. Cir. 1985) ("When Congress
20 limits the purpose for which a grant can be made, it can be presumed that it intends that the
21 dispersing agency makes its allocations based on factors *solely* related to the goal of implementing
22 the stated statutory purposes in a reasonable fashion, rather than taking irrelevant or impermissible
23 factors into account.").
24      Accordingly, Defendants' imposition of the Challenged Considerations is ultra vires as a
25 matter of law.  The Court does not reach Los Angeles' "direction, supervision, or control"
26 argument.  *See Riley*, 106 F.3d at 566 ("If Congress has not unequivocally conditioned receipt of
27 federal funds in the manner claimed by the [agency],…then [the] inquiry is at an end.").
28      Los Angeles is entitled to summary judgment on Count 4.

8

**Count 5**

Los Angeles alleges in Count 5 that the Challenged Considerations violate the Spending Clause.

Under the Spending Clause, "if Congress desires to condition the [participant's] receipt of federal funds, it must do so unambiguously, enabling the [participant] to exercise [its] choice knowingly, cognizant of the consequences of [its] participation." *Dole*, 483 U.S. at 207. Further, an exercise of Spending Clause authority must be "reasonably related" to the articulated goal of the grant program. *Nevada v. Skinner*, 884 F.2d 445, 447 (9th Cir. 1989); *Mayweathers v. Newland*, 314 F.3d 1062, 1066 (9th Cir. 2002).

As a preliminary matter, the Court rejects Defendants' argument that the Challenged Considerations are not "conditions" because compliance is not required to receive a CHP grant award. First, Defendants offer no supporting precedent. Second, compliance with these considerations is required in order for applicants to compete on a level playing field. Not coincidentally, 80% of successful applicants complied with the Challenged Considerations.[6] Third, because applicants who do not comply are less likely to receive a CHP grant, the Challenged Considerations will be dispositive in at least some cases. Finally, if Defendants are correct, it would be simple for federal agencies to avert Spending Clause requirements by labelling all considerations "plus factors." This Court cannot agree.

Next, the Challenged Considerations violate the Spending Clause because, as discussed above, Congress did not unambiguously condition receipt of a CHP grant on local compliance with federal authorities. Defendants' argument that the COPS Office unambiguously instructed applicants how to qualify for bonus points misses the point. *Dole* counsels that *Congress* must be clear in its directives. 483 U.S. at 207. It is irrelevant whether the COPS Office is transparent where Congress does not authorize it to act.

Although the analysis may conclude here, the Court briefly notes that the Challenged Considerations are not "reasonably related" to the articulated goal of the COPS program. As explained above, community policing is about developing partnerships between local authorities and the community. Whether local police cooperation with federal authorities allows for more

---

[6] *See supra* note 1

9

effective enforcement is not the relevant inquiry. In short, there is no relationship between local police partnerships with federal authorities and *community* policing. Therefore, the Challenged Considerations violate the Spending Clause as a matter of law.

Accordingly, Los Angeles is entitled to summary judgment on Count 5.

**Count 6**

Los Angeles alleges in Count 6 that the Challenged Considerations are arbitrary and capricious in violation of the Administrative Procedure Act ("APA").

Under the APA, agency actions must be set aside if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In the Ninth Circuit, courts "must not rubber-stamp administrative decisions." *Alaska Oil & Gas Ass'n v. Jewell*, 815 F.3d 544, 554 (9th Cir. 2016). "Instead, the [agency] action is presumed valid and is upheld if a reasonable basis exists for the decision." *Id.* "[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Alaska Oil*, 815 F.3d at 554.

The Challenged Considerations are arbitrary and capricious as a matter of law. Only after CHP grant applications were due, Defendants explained that "[c]ities and states that cooperate with federal law enforcement make all of us safer by helping remove dangerous criminals from our communities," including by ending "violent crime stemming from illegal immigration."[7] But there is no evidence of record, and Defendants do not argue, that Defendants based this conclusion on any findings or data. Therefore, the Court cannot conclude that Defendants had a "reasonable basis" for imposing the Challenged Considerations.

Defendants' explanation that "[n]othing in the statutes governing CHP suggests DOJ should not consider the extent to which a jurisdiction cooperates in the enforcement of immigration law" is not an articulated justification for imposing the Challenged Considerations. Defendants must affirmatively explain the basis for their decision. *See Pac. Coast Fed'n of*

---

[7] DOJ, Off. of Public Affairs, *Department of Justice Announces Priority Consideration Criteria for COPS Office Grants*, https://www.justice.gov/opa/pr/department-justice-announces-priority-consideration-criteria-cops-office-grants. Defendants do not object to Los Angeles' request for judicial notice of this publicly-available page, the accuracy of which "cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

10

1  *Fishermen's Ass'ns v. U.S. Bureau of Reclamation*, 426 F.3d 1082, 1091 (9th Cir. 2005) ("It is a basic principle of administrative law that the agency must articulate the reason or reasons for its decision.").

Finally, as concluded above, Defendants do not have authority to impose the Challenged Considerations. *See Michigan v. EPA*, 135 S. Ct. 2699, 2706 (2015) ("[A]n agency's decreed result [must] be within the scope of its lawful authority….").

Accordingly, the Challenged Considerations are arbitrary and capricious as a matter of law, and Los Angeles is entitled to summary judgment on Count 6.

**Permanent injunction**

Los Angeles seeks to prospectively enjoin Defendants from imposing the Challenged Considerations. To obtain a permanent injunction, the moving party must show (1) irreparable injury, (2) that monetary damages are inadequate, (3) that the balance of hardships weighs in its favor, and (4) that an injunction serves the public. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010). As Defendants do not challenge application of these factors, the Court will be brief in its analysis.

First, Los Angeles will suffer irreparable competitive harm if Defendants are not enjoined from imposing the Challenged Considerations in future cycles. *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 411 (9th Cir. 2015) ("A rule putting plaintiffs at a competitive disadvantage constitutes irreparable harm."). Second, monetary damages cannot ensure that Los Angeles will compete on a level playing field in future grant cycles. Third, Los Angeles has a strong interest in competing fairly for federal resources. Although Defendants have an interest in determining allocation of CHP funds, they have no legitimate interest in distributing these funds unconstitutionally. Finally, it is "always in the public interest" to issue an injunction in order to prevent the violation of constitutional rights. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). Therefore, a permanent injunction is appropriate.

The parties dispute the proper scope of the injunction. Los Angeles requests that the injunction apply to all CHP competitors nationwide. Defendants argue that a nationwide injunction exceeds the scope of relief necessary to make Los Angeles whole.

11

A district court may issue a nationwide injunction only where "necessary to provide complete relief to the plaintiff[]." *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see also Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501-02 (9th Cir. 1996) ("[A]n injunction is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in the lawsuit—even if it is not a class action—if such breadth is necessary to give prevailing parties the relief to which they are entitled."). This Court cannot reasonably provide complete relief to Los Angeles without enjoining Defendants from imposing the Challenged Considerations as to all competitors. Los Angeles is harmed not only because it cannot qualify for bonus points, but because other jurisdictions can. An injunction that bars Defendants from applying the Challenged Considerations only as to Los Angeles does little to ensure an even playing field.[8] *Gregory v. Litton Sys., Inc.*, 472 F.2d 631, 633-34 (9th Cir. 1972) ("[I]njunctive relief [may] be necessary to give a plaintiff or a group of plaintiffs the relief to which they are entitled. Such relief, of course, may incidentally benefit many persons not before the court.").

The Ninth Circuit has also held that where an agency violates the APA, the district court is compelled to issue a nationwide injunction. *Earth Island Inst. v. Ruthenbeck*, 490 F.3d 687, 699 (9th Cir. 2007), (rev'd in part on other grounds), ("The nationwide injunction, as applied to our decision to affirm the district court's invalidation of 36 C.F.R. §§ 215.12(f) and 215.4(a), is compelled by the text of the Administrative Procedure Act…"); Zayn Siddique, *Nationwide Injunctions*, 117 Colum. L. Rev. 2095, 2123 (2017). This Court follows the Ninth Circuit's directives. Accordingly, the injunction applies nationwide.[9]

---

[8] Defendants propose alternatives, including that this Court automatically credit Los Angeles with additional consideration points as though it complied with the Challenged Considerations. The Court declines to issue such a creative proposal with potential unforeseen consequences. Furthermore, there is "no reason to think that the legal issues present in this case are restricted to [Los Angeles] or that the statutory authority given to the Attorney General would differ in another jurisdiction." *See Chicago*, 264 F. Supp. 3d at 951 (imposing nationwide relief against Attorney General based on similar access and notice conditions in Byrne JAG grant context).

[9] Defendants submit an amicus brief from a different case where Los Angeles argues against a nationwide injunction. This Court cannot determine its relevance other than to paint Los Angeles as a walking contradiction. Regardless, Los Angeles argued there that a nationwide injunction could cost it over $1.5 billion and directly impose on local police. The injunction here only incidentally impacts competitors to the extent they cannot receive bonus points for compliance with the Challenged Considerations. Nothing in this injunction prevents competitors from voluntary cooperation with federal enforcement or otherwise directly imposes on them.

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment is GRANTED.  (Dkt. 49).

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is DENIED.  (Dkt. 53).

**IT IS FURTHER ORDERED** that Defendants are permanently enjoined from imposing the Challenged Considerations in future CHP grant cycles.

Dated: April 11, 2018.

_____

MANUEL L. REAL
UNITED STATES DISTRICT JUDGE