CHAD A. READLER
Acting Assistant Attorney General
NICOLA T. HANNA
United States Attorney
JOHN R. TYLER
Assistant Director
W. SCOTT SIMPSON (Va. Bar #27487)
Senior Trial Counsel
Department of Justice, Civil Division
318 South Sixth Street, Room 244
Springfield, Illinois 62701
Telephone:  (202) 514-3495
Facsimile:  (217) 492-4888
E-mail:      scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CITY OF LOS ANGELES, <br><br> Plaintiff, <br><br> v. <br><br> JEFFERSON B. SESSIONS, III, *et al.*, <br><br> Defendants. | Case No. 2:17-cv-07215-R-JCx <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL DISMISSAL; OPPOSITION TO PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION** <br><br> Date:       September 4, 2018 <br> Time:       10:00 a.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

NOTICE OF MOTION AND MOTION FOR PARTIAL DISMISSAL .................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

INTRODUCTION ..................................................................................................... 1

STATUTORY AND ADMINISTRATIVE BACKGROUND ................................. 4

    I.      The Immigration and Nationality Act ....................................................... 4

    II.    USDOJ Office of Justice Programs and the Byrne JAG Program ....... 5

ARGUMENT ............................................................................................................. 9

    I.      Los Angeles Is Unlikely to Succeed on the Merits ............................. 10

           A.      Plaintiff Lacks Standing to Challenge the Byrne JAG
                 Conditions, and Its Challenge Is Constitutionally Unripe ........ 10

           B.      The Challenged Conditions Are Authorized by Statute
                 and Do Not Violate the Separation of Powers ......................... 12

           C.      The Challenged Conditions Are Consistent with
                 the Spending Clause ................................................................. 15

                 1.      The Challenged Conditions are Unambiguous .............. 16

                 2.      The Challenged Conditions Are Related to the
                     Purposes of the Byrne JAG Program ........................... 17

           D.      Plaintiff's APA Claim Must Be Dismissed .............................. 20

                 1.      Plaintiff's APA Claim Does Not Challenge
                   Final Agency Action ..................................................... 20

2. The Challenged Conditions Are Not Arbitrary or Capricious ................................................... 21

II. Plaintiff Fails to Establish Irreparable Harm Absent Preliminary Relief ................................................................. 23

III. The Public Interest and the Balance of Equities Militate Against the Entry of a Preliminary Injunction .................................. 24

CONCLUSION .................................................................................... 25

1

# TABLE OF AUTHORITIES

2

3 **CONSTITUTION**

4
5

U.S. Const. art. III, § 2, cl. 1 ...................................................................10

6

**CASES**

7

8

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) ........................................11

9 *Abbs v. Sullivan*, 963 F.2d 918 (7th Cir. 1992) .......................................21

10
11 *Acosta v. Idaho Falls Sch. Dist. No. 91*, 291 F. Supp. 3d 1162
   (D. Idaho 2017) ....................................................................................25

12
13 *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009) ..........10

14 *Arc of Cal. v. Douglas*, 757 F.3d 975 (9th Cir. 2014) ..............................23

15 *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057 (N.D. Cal. 2015) ..............23

16
17 *Arizona v. United States*, 567 U.S. 387 (2012) ................................................passim

18 *Barbour v. Wash. Metro. Area Transit Auth.*, 374 F.3d 1161 (D.C. Cir. 2004) ......18

19 *Bennett v. Spear*, 520 U.S. 154 (1997) .........................................................20

20
21 *Benning v. Georgia*, 391 F.3d 1299 (11th Cir. 2004) ...............................17

22 *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011 (9th Cir. 2016).............................23

23 *California Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847 (9th Cir. 2009) ......24

24
25 *Campbell v. Feld Entm't Inc.*, No. 12-CV-4233-LHK,
   2013 WL 4510629 (N.D. Cal. Aug. 22, 2013) ....................................10

26
27 *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668 (9th Cir. 1988)..............23

28 *Charles v. Verhagen*, 348 F.3d 601 (7th Cir. 2003)................................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Citizens Alert Regarding Env't v. EPA*, 102 F. App'x 167 (D.C. Cir. 2004)...........20

*Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068 (7th Cir. 2016).......21

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971).................21

*Clinton v. City of New York*, 524 U.S. 417 (1998) ....................................................12

*Conservation Force v. Salazar*, 646 F.3d 1240 (9th Cir. 2011).................................9

*Coons v. Lew*, 762 F.3d 891 (9th Cir. 2014) ............................................................11

*DKT Mem'l Fund Ltd. v. AID*,  887 F.2d 275 (D.C. Cir. 1989)....................3, 12, 13

*Duvall v. Att'y Gen. of U.S.*, 436 F.3d 382 (3d Cir. 2006)........................................19

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009)...........................3, 22, 23

*Fullilove v. Klutznick*, 448 U.S. 448 (1980) .............................................................25

*Gregory v. Ashcroft*, 501 U.S. 452 (1991) ...............................................................14

*Haw. Cty. Green Party v. Clinton*, 14 F. Supp. 2d 1198 (D. Haw. 1998)...............11

*Inland Empire-Immigrant Youth Collective v. Nielsen*, No. EDCV172048
    PSGSHKX, 2018 WL 1061408 (C.D. Cal. Feb. 26, 2018) ................................25

*J&G Sales Ltd. v. Truscott*, 473 F.3d 1043 (9th Cir. 2007) ....................................21

*Jackson v. City & Cty. of San Francisco*, 829 F. Supp. 2d 867 (N.D. Cal. 2011) .....9

*Karst Envtl. Educ. & Prot., Inc. v. EPA*, 403 F. Supp. 2d 74 (D.D.C. 2005),
    *aff'd*, 475 F.3d 1291 (D.C. Cir. 2007) ..............................................................20

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) .........................................9

*Lopez v. Brewer*, 680 F.3d 1068 (9th Cir. 2012)........................................................9

*Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002) ..................................3, 18

*Navarro v. Block,* 250 F.3d 729 (9th Cir. 2001)..........................................................9

*New York v. United States*, 505 U.S. 144 (1992) ......................................................18

*Nken v. Holder*, 556 U.S. 418 (2009) ........................................................................24

*Or. Bureau of Labor & Indus. ex rel. Richardson v. U.S. W. Commc'ns, Inc.*,
   288 F.3d 414 (9th Cir. 2002) ..............................................................................11

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977 (9th Cir. 2006)...............20

*Padilla v. Kentucky*, 559 U.S. 356 (2010) ................................................................19

*Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co.*,
   685 F. Supp. 2d 1123 (D. Haw. 2010)................................................................24

*Pollara v. Radiant Logistics Inc.*, 2012 WL 12887095
   (C.D. Cal. Sept. 13, 2012)...................................................................................11

*Providence Yakima Med. Ctr. v. Sebelius*, 611 F.3d 1181 (9th Cir. 2010).............21

*Rattlesnake Coal. v. EPA*, 509 F.3d 1095 (9th Cir. 2007) .......................................20

*Ret. Sys. v. Wynn*, 829 F.3d 1048 (9th Cir. 2016) .....................................................9

*S. Dakota v. Dole*, 483 U.S. 203 (1987) ...............................................3, 10, 16, 17

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ...................................11

*Stone v. INS*, 514 U.S. 386 (1995)............................................................................14

*Texas v. United States*, 523 U.S. 296 (1998)............................................................11

*U.S. Bank, N.A. v. SFR Invs. Pool 1, LLC*, 124 F. Supp. 3d 1063
   (D. Nev. 2015) .....................................................................................................10

*United States v. E. Baton Rouge Parish Sch. Bd.*, 594 F.2d 56
   (5th Cir. 1979)......................................................................................................25

*Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008)...................passim

**STATUTES**

5 U.S.C. § 553(a)(2) ................................................................................22

8 U.S.C. § 1226(c)(1) ..............................................................................23

8 U.S.C. § 1227(a)(2) ..............................................................................19

8 U.S.C. § 1231(a)(1) ................................................................................1

8 U.S.C. § 1231(i) ...................................................................................25

8 U.S.C. § 1357(a)(1) ................................................................................4

8 U.S.C. § 1357(g) ..................................................................................19

8 U.S.C. § 1373 .......................................................................................24

8 U.S.C. § 1373(a) .............................................................................2, 4, 5

8 U.S.C. § 1226(d) ..................................................................................23

28 U.S.C. § 530C(a)(4) ...........................................................................12

34 U.S.C. § 10102(a)(1) ..........................................................................18

34 U.S.C. § 10102(a)(2) ...........................................................3, 6, 13, 23

34 U.S.C. § 10102(a)(6) ...........................................................3, 6, 13, 14

34 U.S.C. § 10110 ...................................................................................12

34 U.S.C. § 10122(c)(2)(F) .....................................................................15

34 U.S.C. § 10152(a)(1) ..........................................................................18

34 U.S.C. § 10154 ...................................................................................12

34 U.S.C. § 10228 ...................................................................................15

34 U.S.C. § 10444(7) ..................................................................................... 14

34 U.S.C. § 10202(c)(1)(B) ....................................................................... 7, 14

41 U.S.C. § 4712 ........................................................................................... 17

Pub. L. No. 90-351 ......................................................................................... 6

Pub. L. No. 96-157 ....................................................................................... 15

Pub. L. No. 98-473 ....................................................................................... 13

Pub. L. No. 109-162 ..................................................................................... 13

**REGULATIONS**

28 C.F.R. Part 18 .......................................................................................... 12

**OTHER AUTHORITIES**

Exec. Order No. 13,688, 80 Fed. Reg. 3451 (Jan. 16, 2015) ........................... 7, 8, 9

**NOTICE OF MOTION AND MOTION**

**FOR PARTIAL DISMISSAL**

PLEASE TAKE NOTICE that on Tuesday, September 4, 2018, at 10:00 a.m., or as soon thereafter as counsel may be heard, before The Honorable Manuel L. Real, in Courtroom 880 on the Eighth Floor of the Edward R. Roybal Federal Building and United States Courthouse, 255 East Temple Street, Los Angeles, the defendants will move, and hereby do move, for partial dismissal of this action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants move for dismissal of Counts One, Two, and Three in plaintiffs' Complaint, which challenge certain grant conditions used in the Edward Byrne Memorial Justice Assistance Grant Program administered by the Office of Justice Programs of the U.S. Department of Justice.

This motion is based on the following Memorandum of Points and Authorities, the evidence and records on file in this action, and any other written or oral evidence or argument that may be presented at or before the time this motion is heard by the Court.

Dated: July 27, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

NICOLA T. HANNA
United States Attorney

JOHN R. TYLER
Assistant Director

/s/ W. Scott Simpson

_____
W. SCOTT SIMPSON (Va. Bar #27487)
Senior Trial Counsel

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Department of Justice, Civil Division
318 South Sixth Street, Room 244
Springfield, Illinois 62701
Telephone: (202) 514-3495
Facsimile: (217) 492-4888
E-mail:      scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Every year, the U.S. Department of Justice ("USDOJ" or "Department") sends hundreds of millions of dollars in federal funds to state and local law enforcement. This case asks the Court to determine whether – as a condition of receiving some of those federal funds – the Department can require recipients to provide certain basic law enforcement cooperation and ensure that those jurisdictions are not frustrating federal immigration enforcement by unnecessarily releasing criminal aliens back into our communities. The Immigration of Nationality Act ("INA") contemplates cooperation among state and local officials and federal officials in the enforcement of immigration law. *Arizona v. United States*, 567 U.S. 387, 394, 411 (2012) ("Consultation between federal and state officials is an important feature of the immigration system."). For aliens who commit crimes and end up in state or local criminal custody, the expectation of cooperation is particularly evident. In deference to a state or local jurisdiction's significant interest in punishing its criminals, the INA usually permits those aliens to serve their entire sentence before being subject to federal detention for possible removal. The law provides that, except in limited circumstances, for an alien incarcerated by a State or local government, a 90-day "removal period" – during which the Department of Homeland Security "shall" detain and then "shall" remove the alien – "begins" no later than "the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1); *see id.* § 1226(c)(1) (federal immigration authorities "shall take into custody" certain criminal aliens "when the alien is released" from criminal custody).

In delaying removal of these individuals until state and local jurisdictions' criminal justice interests are served, Congress certainly did not intend that such criminal aliens would evade federal immigration authorities. *See id.* (requiring detention of "criminal aliens" pending removal proceedings). These provisions and others contemplate that federal immigration officials will have access to information

regarding the whereabouts, custody, and time of release of aliens in state and local custody.  Thus, the law specifically bars such governments from prohibiting or restricting the exchange of "information regarding the . . . citizenship or immigration status" of any individual with federal immigration authorities.  8 U.S.C. § 1373(a).

The Edward Byrne Memorial Justice Assistance Grant Program ("Byrne JAG Program") provides federal funds for state and local law enforcement.  These funds serve to aid both local and cooperative law enforcement priorities.  In furtherance of the INA and the statutes governing the Program, USDOJ requires grantees, as a condition of receiving law-enforcement funds, to give certain federal law-enforcement authorities access to correctional facilities to meet with aliens and to notify federal authorities "as early as practicable" before the scheduled release of an alien from custody when requested.  These are the "access" and "notice" conditions.

Plaintiff, the City of Los Angeles, alleges that it has applied for Byrne JAG funds for FY 2017, but that it will not comply with the notice and access conditions.  On that basis, plaintiff seeks to challenge the legality of these condi- tions in Counts One, Two, and Three of its Complaint and to secure a preliminary injunction against the conditions.  But the City does not, and could not, allege that USDOJ has denied its Byrne JAG application; the application remains pending, and plaintiff has not yet been required to comply with the conditions.  If the application is denied, Los Angeles can challenge that denial administratively and, if necessary, seek judicial review.  At this point, however, plaintiff's challenge is premature and should be dismissed as non-justiciable.

Assuming the Court were to reach the merits, the Court should dismiss these counts in the Complaint for failure to state a claim and should deny plaintiff's motion for preliminary injunction on that basis.  Los Angeles alleges that USDOJ lacks authority to impose the conditions, that they violate the Spending Clause, and that they are "arbitrary and capricious" under the Administrative Procedure Act ("APA").  All three claims are without merit.  Congress has expressly conferred

authority on the Assistant Attorney General ("AAG") for USDOJ's Office of Justice Programs ("OJP" or "Office") that allows her to impose the challenged conditions. In the very same enactment that created the Byrne JAG Program, Congress delegated to the AAG the authority to "plac[e] special conditions on all grants," and to "determin[e] priority purposes for formula grants." 34 U.S.C. § 10102(a)(6). USDOJ thus has ample authority to impose the challenged conditions, and their imposition does not violate the constitutional separation of powers. *See DKT Mem'l Fund Ltd. v. AID*, 887 F.2d 275, 280-81 (D.C. Cir. 1989) (upholding statutory delegation to the Executive to impose terms and conditions on federal spending programs).

In relation to plaintiff's Spending Clause claim, the challenged conditions bear much more than "some relationship" to the purposes of the Byrne JAG Program, and thus meet the relatedness element of the Spending Clause. *See Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002). OJP and the grant programs it administers are designed to strengthen law enforcement and to "maintain liaison" among the various branches of government "in matters relating to criminal justice." 34 U.S.C. § 10102(a)(2). The challenged conditions emanate from "the Department of Justice's top priority of reducing violent crime" and the "long-established cooperative principles among law enforcement agencies." *See* Defendants' Request for Judicial Notice ("RJN"), Ex. A. The conditions are also very clear and unambiguous. *See S. Dakota v. Dole*, 483 U.S. 203, 210 (1987).

Lastly, plaintiff cannot secure relief on its claim that the conditions are "arbitrary or capricious." First, there is no "final agency action" as necessary for an APA challenge, since plaintiff's Byrne JAG application remains pending. Second, "the agency's reasons for" imposing the challenged conditions "were entirely rational," *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 517 (2009), in light of the federal goal of increasing information-sharing between federal, state, and local law enforcement so that federal immigration authorities have the information

1    they need to enforce the INA.

2        Aside from the merits, the other standards for preliminary relief also militate

3    against plaintiff's motion.  Plaintiff cannot show that it will "likely" suffer

4    irreparable harm in absence of a preliminary injunction, *see Winter v. Natural*

5    *Resources Defense Council*, 555 U.S. 7, 20 (2008), especially because OJP is

6    retaining the unpaid FY 2017 Byrne JAG funds, which will thus be available for

7    payment once the Office resolves each jurisdiction's compliance with 8 U.S.C.

8    § 1373(a).  And finally, the public interest in relation to the conditions lies primar-

9    ily in the effective and efficient enforcement of the nation's immigration laws.

10       For these reasons, the Court should dismiss Counts One, Two, and Three in

11    Los Angeles's Complaint and deny plaintiff's motion for preliminary injunction.

12                **STATUTORY AND ADMINISTRATIVE BACKGROUND**

13 **I.**      **The Immigration and Nationality Act**

14       Enforcement of the immigration laws, including and especially the investiga-

15    tion and apprehension of criminal aliens, is quintessentially a law enforcement

16    function.  Through the INA, Congress granted the Executive Branch significant

17    authority to control the entry, movement, and other conduct of foreign nationals in

18    the United States.  These responsibilities are assigned to law enforcement agencies,

19    as the INA authorizes the Department of Homeland Security ("DHS"), USDOJ, and

20    other Executive agencies to administer and enforce the immigration laws.  The INA

21    permits the Executive Branch to exercise considerable discretion to direct enforce-

22    ment pursuant to federal policy objectives.  *See Arizona*, 567 U.S. at 396.

23       The INA includes several provisions that protect the ability of federal officials

24    to investigate the status of aliens in the United States and otherwise enforce the

25    immigration laws.  For example, the statute provides that a federal immigration

26    officer "shall have power without warrant . . .  to interrogate any alien or person

27    believed to be an alien as to his right to be or to remain in the United States."  8

28    U.S.C. § 1357(a)(1).  Separately, pursuant to Section 1373, "a Federal, State, or local

government entity or official may not prohibit, or in any way restrict, any govern-ment entity or official from sending to, or receiving from, [federal immigration authorities] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." *Id.* § 1373(a).  The INA provides that certain classes of aliens shall be removed from the United States upon order of the Attorney General or Secretary of Homeland Security.  *See*, *e.g*., *id.* §§ 1227(a), 1228.

Nevertheless, the INA expressly contemplates cooperation among state and local officials and federal officials, and carrying out the Federal Government's responsibilities under the INA necessarily requires access to information regarding persons in the custody of state and local governments.  For example, the statute authorizes state and local officers to arrest certain felons who have unlawfully returned to the United States and persons suspected of violating the INA's prohibi-tions against smuggling, transporting, or harboring aliens.  *Id*. §§ 1252c, 1324(c). The INA also authorizes formal cooperative agreements under which trained and qualified state and local officers may perform specified functions of a federal immigration officer in relation to the investigation, apprehension, or detention of aliens.  *Id*. § 1357(g).  Further, the statute mandates that aliens who have committed certain criminal offenses be taken into federal custody pending removal proceedings, but only "when the alien is released" from state or local custody.  *Id*. § 1226(c)(1).  The "removal period" for an incarcerated alien subject to a final removal order begins upon the date of the alien's release from state or local custody.  *Id*. § 1231(a)(1)(B).  In furtherance of the Federal Government's responsibility to remove an alien "when the alien is released" from state or local custody, federal immigration authorities need to be able to interview aliens *during* their criminal custody to determine whether they should be taken into custody for removal proceedings upon the conclusion of that custody.

**II.     USDOJ Office of Justice Programs and the Byrne JAG Program**

Title I of the Omnibus Crime Control and Safe Streets Act established the

Office of Justice Programs, and provides for OJP to be headed by an Assistant
Attorney General.  *See* Pub. L. No. 90-351, 82 Stat. 197 (1968).  Congress gave the
AAG certain "[s]pecific, general and delegated powers," including the power to
"*maintain liaison with* . . . State governments in matters relating to criminal justice."
34 U.S.C. § 10102(a)(2) (emphasis added).  Notably, the statute also authorizes the
AAG to "exercise such other powers and functions as may be vested in [him]
pursuant to this chapter or by delegation of the Attorney General, *including placing
special conditions on all grants, and determining priority purposes for formula
grants*."  *Id.* § 10102(a)(6) (emphasis added).

The same title of the Omnibus Crime Control and Safe Streets Act also
established the Byrne JAG Program.  Under this program, OJP is authorized to
"make grants to States and units of local government . . . to provide additional
personnel, equipment . . . and information systems for criminal justice, including for
any one or more of [certain enumerated] programs."  *Id.* § 10152(a)(1).  In the same
title, "criminal justice" is defined broadly to include various activities of the police,
the courts, and "related agencies."  *Id.* § 10251(a)(1).

The Byrne JAG Program provides "formula grants" – that is, grants that, when
awarded, must follow a statutory formula based on population, the rate of violent
crime, and other factors.  *Id.* §§ 10152(a)(1), 10156.  By statute, in order to request a
Byrne JAG grant, the chief executive officer of a State or local government must
submit an application "in such form as the Attorney General may require," *id*.
§ 10153(a); and the application must include, among other things, "[a] certification,
made in a form acceptable to the Attorney General . . . that . . . the applicant will
comply with . . . all . . . applicable Federal laws," *id.* § 10153(a)(5)(D).  The applica-
tion must also contain several assurances, including "[a]n assurance that, for each
fiscal year covered by an application, the applicant shall maintain and report such
data, records, and information (programmatic and financial) as the Attorney General
may reasonably require."  *Id*. § 10153(a)(4).

OJP has historically included a variety of conditions in Byrne JAG award documents.  For example, the Office has imposed, without objection, conditions related to information-sharing and privacy protection, RJN, Ex. B (Los Angeles Byrne JAG 2016) ¶ 23, research using human subjects, *see id.* ¶ 26, and training, *see id.* ¶¶ 29-30.  Other special conditions historically imposed have been inspired by Executive Branch prerogatives, and in some instances resulted in *subsequent* congressional codification.  One such condition, which prohibits use of Byrne JAG funds to purchase military style equipment, relates in part to an Executive Order issued by President Obama in 2015.  *See id.* ¶ 47; Exec. Order No. 13,688, 80 Fed. Reg. 3451 (Jan. 16, 2015).  Since 2012, other conditions have required that recipients (1) comply with specific national standards when purchasing body armor and (2) institute a "mandatory wear" policy for any purchased armor.  RJN, Ex. B ¶¶ 36-37.  While those specific conditions have now been codified by Congress, *see* 34 U.S.C. §§ 10202(c)(1)(B), (C), they originated as exercises of USDOJ's authority to impose special conditions.  And the AAG has imposed an "American-made" requirement for body armor purchases, something Congress did not choose to codify last year.  RJN, Ex. B ¶ 36.  The conditions attached to Byrne JAG grants have varied over time, depending on national law enforcement necessities and USDOJ priorities.

OJP issued its FY 2017 Byrne JAG solicitation for local jurisdictions on August 3, 2017.  Compl., Ex. 3, Dkt. No. 1-3.  The solicitation generally described the Byrne JAG Program and invited applications, but did not delineate the actual conditions that would be included in the award documents for successful applicants.  The solicitation encouraged potential applicants to "review information on post-award legal requirements generally applicable to FY 2017 OJP awards and common OJP award conditions prior to submitting an application," including Web pages describing "award conditions that apply to many (or in some cases, all) OJP grants and cooperative agreements awarded in FY 2017."  *Id.* at 30.  The solicitation alerted

potential applicants that the FY 2017 award documents would include two conditions "designed to ensure" that grantees (1) would permit immigration authorities to access any detention facility operated by the grantee to meet with any alien to "inquire as to his or her right to be or remain in the United States," and (2) would "provide at least 48 hours' advance notice to [immigration authorities] regarding the scheduled release date and time of an alien in the jurisdiction's custody [when requested] in order to take custody of the alien" (*id.*).

On August 23, 2017, OJP issued FY 2017 Byrne JAG awards to Greenville County, South Carolina, and Binghamton, New York.   RJN, Exs. C, D.  Those award documents set forth the actual notice and access conditions generally projected in the solicitation.  Specifically, the grantees were required to have an ordinance or policy designed (1) to ensure "that agents of the United States acting under color of federal law in fact are given access a local-government . . . correctional facility for the purpose of permitting such agents to meet with individuals who are (or are believed by such agents to be) aliens and to inquire as to such individuals' right to be or remain in the United States" and (2) to ensure "that, when a local-government . . . correctional facility receives from [federal immigration authorities] a formal written request authorized by the [INA] that seeks advance notice of the scheduled release date and time for a particular alien in such facility, then such facility will honor such request and – as early as practicable (see "Rules of Construction" . . . ) – provide the requested notice."  RJN, Ex. C ¶ 55.  OJP has issued FY 2017 Byrne JAG awards to additional jurisdictions containing the same conditions, including awards to Alaska and the City of Charleston.  RJN, Exs. E, F.

The "Rules of Construction" in the award documents stated that nothing in the conditions required grantees to detain "any individual in custody beyond the date and time the individual would have been released in the absence of this condition."  RJN, Ex. C ¶ 56.  The documents also made clear that the conditions imposed no requirements in relation to any requests by federal authorities to detain

aliens, and that the notice condition required "only as much advance notice as practicable" before the release of an alien.  *Id.*  Finally, the conditions applied only to the "program or activity" to be funded under the award, and they allowed grant funds to be used for costs incurred in implementing the conditions.  *Id.*[1]

## ARGUMENT

Defendants move for dismissal of this action under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  A motion under Rule 12(b)(1) challenges the subject matter jurisdiction of the court to reach a claim.  "Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss."  *Jackson v. City & Cty. of San Francisco*, 829 F. Supp. 2d 867, 870 (N.D. Cal. 2011).  A motion under Rule 12(b)(6) "tests the legal sufficiency of a claim."  *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal under this rule is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal citation omitted).  Under both 12(b)(1) and 12(b)(6), the court "may take judicial notice of matters of public record."  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citation omitted); *see Louisiana Mun. Police Emps.' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016).

Meanwhile, the plaintiff has moved for a preliminary injunction.  A preliminary injunction is "an extraordinary and drastic remedy" that should not be granted "unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).  The Supreme Court has clarified the requirements for a preliminary injunction in *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008).  Under *Winter*, "[a] plaintiff seeking a preliminary

---

[1] This Court has previously ruled in plaintiff's favor regarding certain immigration-related scoring factors in a different USDOJ program, but that program was governed by different statutes (Dkt. No. 75).

9

injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (emphasis added).  Critically, this is "a four-part conjunctive test, not . . . a four-factor balancing test"; thus, *Winter* "reject[ed] the sliding-scale test as to the irreparable-injury prong" previously used by some courts.  *U.S. Bank, N.A. v. SFR Invs. Pool 1, LLC*, 124 F. Supp. 3d 1063, 1070 (D. Nev. 2015); *see Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) ("To the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable.") (footnote omitted).  Further, "[t]he party seeking the injunction bears the burden of proving these elements."  *Campbell v. Feld Entm't Inc.*, No. 12-CV-4233-LHK, 2013 WL 4510629, at *4 (N.D. Cal. Aug. 22, 2013).

Under these standards, this Court should deny plaintiff's motion for a preliminary injunction and dismiss Counts One, Two, and Three of the Complaint. The notice and access conditions have not affected Los Angeles, such that the City lacks standing to challenge the conditions and its claims are constitutionally unripe. Assuming the Court were to address the merits, it should find that imposition of these conditions is fully consistent with the Attorney General's authority under the governing statutes; that enforcing federal immigration law against criminal aliens is closely related to promoting law enforcement in general and the language of the conditions allows Los Angeles to "knowingly" exercise its choice to accept federal funds, *see S. Dakota v. Dole*, 483 U.S. 203, 207 (1987); and that the conditions are thoroughly reasonable under the Administrative Procedure Act.

## I.  Los Angeles Is Unlikely to Succeed on the Merits

### A.  Plaintiff Lacks Standing to Challenge the Byrne JAG Conditions, and Its Challenge Is Constitutionally Unripe

Under Article III of the Constitution, the jurisdiction of the federal courts extends only to "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  Matters

outside this rubric are "nonjusticiable." *Or. Bureau of Labor & Indus. ex rel. Richardson v. U.S. W. Commc'ns, Inc.*, 288 F.3d 414, 416 (9th Cir. 2002).  Two principles of justiciability are involved here:  standing and ripeness.  "While standing is concerned with *who* is a proper party to litigate a particular matter, the doctrines of mootness and ripeness determine *when* that litigation may occur." *Haw. Cty. Green Party v. Clinton*, 14 F. Supp. 2d 1198, 1201 (D. Haw. 1998).  Where a plaintiff lacks standing or its claims are unripe, the court lacks jurisdiction, and where jurisdiction is lacking, the plaintiff necessarily cannot show a likelihood of success for purposes of a preliminary injunction.  *See Pollara v. Radiant Logistics Inc.*, 2012 WL 12887095, at *5 (C.D. Cal. Sept. 13, 2012) (noting that "standing to bring a claim . . . is a necessary predicate to demonstrate a likelihood of success on the merits").

To satisfy the "irreducible constitutional minimum" of standing, a plaintiff must demonstrate an "injury in fact," a "fairly traceable" causal connection between the injury and defendant's conduct, and redressability.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998).  Constitutional justiciability also requires that a dispute be ripe for judicial consideration.  In a challenge to governmental action, that means the challenged action must have been "formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967).  In other words, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted).[2]

Los Angeles does not allege, and could not allege, that the notice and access conditions have had any effect on the City.  Although plaintiff has applied for a Byrne JAG grant, OJP has not acted on that application, and the City has not yet been

---

[2] These considerations do not involve merely "prudential ripeness," which asks, in contrast, about the "fitness" of the issues presented for judicial review and whether withholding review would subject the parties to "hardship." *See Coons v. Lew*, 762 F.3d 891, 900 (9th Cir. 2014).

asked to certify compliance with the challenged conditions in connection with any program or activity receiving federal funds under the award.  Moreover, if OJP denies plaintiff's application, the City would have an opportunity to challenge that denial administratively, *see* 34 U.S.C. § 10154; *see generally* 28 C.F.R. Part 18, followed, if necessary, by judicial review.  As the situation currently stands, however, plaintiff's challenge to the conditions is premature.  Los Angeles has not suffered any "concrete" injury as a result of the conditions, and plaintiff's challenge "rests upon contingent future events."  Therefore, Counts One, Two, and Three of plaintiff's Complaint should be dismissed for lack of standing and ripeness, and plaintiff necessarily cannot show a likelihood of success on the merits.

> **B.    The Challenged Conditions Are Authorized by Statute and Do Not Violate the Separation of Powers**

In Count One of its Complaint, Los Angeles alleges that the notice and access conditions are *ultra vires* and violate the Constitution's separation of powers (Dkt. No. 1 ¶¶ 86-101).  Both theories rest fundamentally on plaintiff's incorrect view that Congress has not authorized USDOJ to impose these conditions.

As a threshold matter, there is no serious dispute that Congress may delegate to the Executive Branch the authority to attach conditions on funding.  *See, e.g.*, *Clinton v. City of New York*, 524 U.S. 417, 488 (1998) ("Congress has frequently delegated the President the authority to spend, or not to spend, particular sums of money."); *DKT Mem'l Fund Ltd.*, 887 F.2d at 280-81 (upholding statutory delegation to the Executive to impose terms and conditions on federal spending programs).  Further, and as relevant here, the Attorney General has "final authority over all functions, including any grants" made by OJP, which administers the Byrne JAG Program.  34 U.S.C. § 10110.  Under the Attorney General's authority, an Assistant Attorney General heads OJP.  *See id.* § 10101; 28 U.S.C. § 530C(a)(4).  In setting forth the duties and functions of the AAG, Congress stated that the AAG is to "exercise such other powers and functions as may be vested in the Assistant

Attorney General pursuant to this chapter or by delegation of the Attorney General, including placing special conditions on all grants, and determining priority purposes for formula grants."  34 U.S.C. § 10102(a)(6).

Thus, a plain reading of the statutory text indicates that the AAG's power includes, *at a minimum*, the power to "plac[e] special conditions on all grants" administered by OJP.  *Id*.  The breadth of the AAG's statutory power is reinforced by the authority to "determin[e] priority purposes for formula grants."  *Id.*  Confirming the statute's plain text, a report accompanying the enactment of this language stated that the provision "allows the Assistant Attorney General to place special conditions on all grants and to determine priority purposes for formula grants."  H.R. Rep. No. 109-233, at 101 (2005).  Conferring this authority on the Attorney General and the AAG makes sense, given that the Attorney General is the nation's chief law enforcement officer and that the AAG for OJP is expressly charged with "maintain[ing] liaison" among the various levels of government "in matters relating to criminal justice."  34 U.S.C. § 10102(a)(2).  Here, these officials have determined that the enforcement of immigration law against criminal aliens is a "priority purpose" for Byrne JAG grants.

Indeed, the particular statutory language at issue– the authority for "placing special conditions on all grants, and determining priority purposes for formula grants" – was added *as part of the very same legislation that created the Byrne JAG Program.  See* DOJ Reauthorization Act of 2005, Pub. L. No. 109-162, § 1152(b), 119 Stat. 2960 (2006) (adding language to subsection (a)(6)); *id*. § 1111 (creating Byrne JAG Program).  Before that enactment, the provision stated only that the AAG for OJP "exercise[s] such other powers and functions as may be vested in the Assistant Attorney General pursuant to this title or by delegation of the Attorney General."  Joint Resolution Making Continuing Appropriations for FY 1985, Pub. L. No. 98-473, § 603, 98 Stat. 1837 (1984).  Also, by contrast, the organic statute for the head of a separate USDOJ grant-making component, enacted in 2002,

1  continues to contain substantially the same, more limited language as Section

2  10102 earlier contained, without the additional "special conditions" and "priority

3  purposes" powers that Congress elected to bestow with respect to OJP.  *See* 34

4  U.S.C. § 10444(7) (providing only that Director of Violence Against Women

5  Office "[e]xercis[es] such other powers and functions as may be vested in the

6  Director pursuant to this subchapter or by delegation of the Attorney General").

7  This context confirms that Congress intended the "special conditions" and "priority

8  purposes" language to confer distinctive and meaningful power.  "When Congress

9  acts to amend a statute, [courts] presume it intends its amendment to have real and

10  substantial effect."  *Stone v. INS*, 514 U.S. 386, 397 (1995).[3]

11      Plaintiff's denial of this authority – or the attempt to limit it to mere

12  "technical" matters or problem grantees (Dkt. No. 83-1 at 16-17) – would render

13  illegal numerous substantive conditions that OJP has imposed on Byrne JAG grants

14  without objection.  For example, as mentioned earlier, the Office has imposed

15  special conditions regarding information-sharing and privacy protection, RJN, Ex.

16  B ¶ 23, research using human subjects, *id.* ¶ 26, and training, *id.* ¶¶ 29-30.  Other

17  substantive conditions were initially imposed under 34 U.S.C. § 10102(a)(6) but

18  were later codified by Congress, including the use of national standards for the

19  purchase of body armor.  RJN, Ex. D ¶¶ 36-37; *see* 34 U.S.C. §§ 10202(c)(1)(B),

20  (C).  Indeed, many conditions in the Byrne JAG Program relate to the sharing of

21  information, including compliance with USDOJ's Global Justice Information

22  Sharing Initiative, RJN, Ex., B ¶ 23, and uploading the results of DNA testing to an

23  FBI database, RJN, Ex. C ¶ 57.

24      [3] Plaintiff argues, citing *Gregory v. Ashcroft*, 501 U.S. 452 (1991), that the

25  challenged conditions "threaten" federalism, such that only a "clear statement" by
Congress could authorize the conditions (Dkt. No. 83-1 at 14-15).  But the issue in

26  *Gregory* was whether a federal statute could override a state constitutional provi-

27  sion regarding state judges – far different from whether the Federal Government
can require modest cooperation with federal law enforcement as a condition of

28  receiving federal law enforcement funds.

14

Also contrary to plaintiff's argument, the challenged conditions do not impermissibly exercise "direction, supervision, or control over any police force or any other criminal justice agency" in violation of 34 U.S.C. § 10228 (*contra* Dkt. No. 83-1 at 13).  Requiring modest cooperation with federal law enforcement in exchange for federal law enforcement funds does not exercise "direction, supervision, or control."  Indeed, concurrent with the enactment of 34 U.S.C. § 10228, Congress created the National Institute of Justice (a component of OJP), *see* Pub. L. No. 96-157, §§ 202, 815, 93 Stat. 1167 (1979), which has as one of its express statutory purposes "to develop programs and projects . . . to improve and expand cooperation among the Federal Government, States, and units of local government . . . ."  34 U.S.C. § 10122(c)(2)(F).

Thus, the notice and access conditions – which merely promote intergovern-mental law enforcement cooperation through a law enforcement grant, so that grantee policies do not impair federal law enforcement policies – come comfortably within the fonts of delegated power in Section 10102(a)(6).  Pursuant to this authority, the AAG may prioritize formula grants, like the Byrne JAG Program, for jurisdictions that cooperate with federal authorities in achieving federal law enforcement priorities, including removal of criminal aliens under immigration law.

### C.   The Challenged Conditions Are Consistent with the Spending Clause

Next, in Count Two of its Complaint, plaintiff alleges that the conditions violate the Spending Clause by imposing grant conditions that are purportedly ambiguous and "not sufficiently related" to the purposes of the Byrne JAG Program, thus violating the Spending Clause and the Tenth Amendment (Dkt. No. 1 ¶¶ 102-108).[4]  As the Supreme Court has held, "Congress may attach conditions on

---

[4] Other than asserting that a grant condition that exceeds the limitations on the Spending Clause necessarily constitutes a violation of the Tenth Amendment (Dkt. No. 1 ¶ 104), plaintiff does not seem to allege that the Byrne JAG conditions violate the Tenth Amendment.

the receipt of federal funds, and has repeatedly employed the power to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives." *Dole*, 483 U.S. at 206 (internal quotation marks omitted).

The Supreme Court in *South Dakota v. Dole* described certain limitations or potential limitations on the spending power. Most basically, conditions on the receipt of federal funds must be stated "unambiguously" so that recipients can "exercise their choice knowingly, cognizant of the consequences of their participation." *Id*. Additionally, the Court observed in *Dole*, "our cases have suggested (without significant elaboration) that conditions on federal grants might be illegitimate if they are unrelated to the federal interest in particular national projects or programs." *Id*. at 207-08. The challenged conditions are consistent with both of these principles.

### 1.    The Challenged Conditions are Unambiguous

First, these conditions clearly state what conduct is required, so that grantees can "exercise their choice knowingly, cognizant of the consequences of their participation." *Id*. at 207 (citation omitted). The notice and access conditions require grantees (1) to give "agents of the United States acting under color of federal law" access to correctional facilities "to meet with individuals who are (or are believed by such agents to be) aliens and to inquire as to such individuals' right to be or remain in the United States," and (2) to notify DHS, upon "formal written request" and "as early as practicable," before "the scheduled release date and time for a particular alien in such facility." RJN, Ex. C ¶¶ 53, 55, 56. The award documents also specify that nothing in these conditions requires a grantee to detain "any individual in custody beyond the date and time the individual would have been released in the absence of this condition"; that the conditions impose no requirements regarding any requests by federal immigration authorities to detain aliens; and that the notice condition requires "only as much advance notice as

1   practicable." *Id.*  Moreover, to the extent any uncertainty might remain, the FY

2   2017 Byrne JAG solicitation invited any prospective grantee with a question about

3   "any . . . requirement of this solicitation" to contact OJP's Response Center

4   (customer service center) by telephone, email, or Internet chat (Dkt. No. 1, Ex. 3 at

5   2).  A prospective grantee could also contact the appropriate "Grant Manager" –

6   that is, a specific, named OJP employee assigned to work with jurisdictions within

7   a specified geographical area.  *Id.*; BJA Programs Office Contact Information,

8   *available at* https://www.bja.gov/ About/ Contacts/ ProgramsOffice.html (last

9   visited July 27, 2018).[5]

10      Further, to the extent there is any uncertainty at the margins of the challenged

11   conditions, such a penumbra would not render them unconstitutionally ambiguous.

12   Indeed, "the exact nature of [grant] conditions may be largely indeterminate,

13   provided that the existence of the conditions is clear, such that States have notice

14   that compliance with the conditions is required."  *Charles v. Verhagen*, 348 F.3d

15   601, 607 (7th Cir. 2003) (citation omitted); *see, e.g.*, *Benning v. Georgia*, 391 F.3d

16   1299, 1306 (11th Cir. 2004) ("Once Congress clearly signals its intent to attach

17   federal conditions to Spending Clause legislation, it need not specifically identify

18   and proscribe in advance every conceivable state action that would be improper.")

19   (citation omitted).  Moreover, plaintiff does not complain about the clarity of any

20   *other* Byrne JAG conditions, such as those requiring compliance with restrictions

21   on lobbying, RJN, Ex. B ¶ 14; compliance with "federal appropriations statutes"

22   generally, *id.* ¶ 15; reporting of evidence of violations of the False Claims Act, *id.*

23   ¶ 16; and compliance with prohibitions on reprisal under 41 U.S.C. § 4712, *id.* ¶ 18.

24   ### 2.     The Challenged Conditions Are Related to the
25   ### Purposes of the Byrne JAG Program

26   Second, plaintiff alleges that the Byrne JAG conditions are "not sufficiently

27   _____

28      [5] "BJA" refers to the Bureau of Justice Assistance, the OJP component that
administers the Byrne JAG Program.

related – or related at all – to the purpose of the Byrne JAG Program" (Dkt. No. 1 ¶ 108).  As the Court of Appeals has observed, however, this aspect of *Dole* suggests only a "possible ground" for invalidating an enactment, and does not impose an "exacting standard":

> The Supreme Court has suggested that federal grants conditioned on compliance with federal directives *might* be illegitimate if the conditions share no relationship to the federal interest in particular national projects or programs.  This possible ground for invalidating a Spending Clause statute, which only suggests that the legislation *might* be illegitimate without demonstrating a nexus between the conditions and a specified national interest, is a far cry from imposing an exacting standard for relatedness.

*Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002).  Thus, conditions on federal funding must only "bear some relationship to the purpose of the federal spending."  *Id.* at 1067 (quoting *New York v. United States*, 505 U.S. 144, 167 (1992)); *see Barbour v. Wash. Metro. Area Transit Auth.*, 374 F.3d 1161, 1168 (D.C. Cir. 2004) (noting that Supreme Court has never "overturned Spending Clause legislation on relatedness grounds").

The challenged conditions easily meet this standard.  The Byrne JAG Program's organic statute specifies that grant funds are designed to provide resources "for criminal justice," to support programs including law enforcement, prosecution, crime prevention, and corrections.  34 U.S.C. § 10152(a)(1).  These goals are also reflected in the responsibilities of the AAG, which involve "disseminat[ing] information" and "*maintain[ing] liaison with* . . . State governments" in matters relating to "criminal justice."  34 U.S.C. § 10102(a)(1), (2) (emphasis added).  As relates to these statutes, the term "criminal justice" is defined broadly to include various activities of the police, the courts, and "related agencies."  *Id.* § 10251(a)(1).  Further, immigration enforcement against criminal aliens, which the conditions promote, undoubtedly intersects with the Byrne JAG Program's criminal justice purposes, at a minimum for the simple reason that a conviction for any of a

wide array of criminal offenses renders an alien removable from this country.  *See* 8 U.S.C. § 1227(a)(2).  Indeed, "[a] primary goal of several recent overhauls of the INA has been to ensure and expedite the removal of aliens convicted of serious crimes."  *Duvall v. Att'y Gen. of U.S.*, 436 F.3d 382, 391 (3d Cir. 2006); *see Padilla v. Kentucky*, 559 U.S. 356, 360 (2010) (observing that "deportation or removal is now virtually inevitable for a vast number of noncitizens convicted of crimes") (citation omitted).  Once removed, a criminal alien who has committed a removable offense – for example, an aggravated felony, domestic violence, child abuse, or certain firearm offenses – is no longer present in this country with the potential to re-offend.

The INA also repeatedly contemplates cooperation among state and local officers and federal officials on immigration enforcement.  *See, e.g.*, 8 U.S.C. § 1357(g) (authorizing formal cooperative agreements under which trained and qualified state and local officers may perform specified functions of a federal immigration officer in relation to the investigation, apprehension, or detention of aliens); *id*. § 1324(c) (authorizing state and local officers to make arrests for violations of the INA's prohibition against smuggling, transporting, or harboring aliens); *id*. § 1252c (authorizing state and local officers to arrest certain felons who have unlawfully returned to the United States).  Under authorities such as these, "state officers may perform the functions of an immigration officer."  *Arizona*, 567 U.S. at 408.  Furthermore, given that the INA contemplates the federal detention of certain aliens upon their release from state or local custody, as discussed above, the conditions can be understood as seeking to ensure that a state or local grantee's law enforcement activities not impair the law enforcement activities of the federal government.  It is crucial to this cooperative law enforcement framework that states and localities give federal agents access to detainees in their custody and avoid restricting the communication of information regarding immigration status to DHS.

### D.   Plaintiff's APA Claim Must Be Dismissed

Finally, Count Three of plaintiff's Complaint alleges that the notice and access conditions are arbitrary or capricious in violation of the Administrative Procedure Act (Dkt. No. 1 ¶¶ 109-112).  Aside from the merits, this claim must be dismissed because plaintiff does not challenge "final agency action" as necessary under the APA.  In any event, if the Court were to reach the merits of this claim, it should conclude that the notice and access conditions are reasonable.

### 1.   Plaintiff's APA Claim Does Not Challenge Final Agency Action

"To obtain judicial review under the APA, [a plaintiff] must challenge a final agency action." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (citing 5 U.S.C. § 704).  "[F]inality is . . . a jurisdictional requirement," *id.* (internal citation omitted), which is satisfied only when the challenged action (1) "mark[s] the consummation of the agency's decisionmaking process," and (2) is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted).

Notwithstanding this black-letter requirement, Los Angeles's APA claim fails to identify any qualifying final agency action.  As plaintiff concedes, OJP has not yet acted on the City's application for a Byrne JAG award; the administrative process has not yet run its course.  In these circumstances, no final, judicially reviewable agency action will exist until OJP has thoroughly "reviewed [the] grant application *and decided [whether] to disburse the funds*." *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1103-04 (9th Cir. 2007) (emphasis added); *see*, *e.g.*, *Citizens Alert Regarding Env't v. EPA*, 102 F. App'x 167, 168 (D.C. Cir. 2004) ("Until EPA completes its review and reaches a decision [as to whether to award a proposed grant], there has been no final agency action . . . and the matter is not ripe for judicial review."); *Karst Envtl. Educ. & Prot., Inc. v. EPA*, 403 F. Supp. 2d 74,

81 (D.D.C. 2005) (no final agency action where agency had taken "some action with respect to the grant application, but "had not yet decided whether to award the grant"), *aff'd*, 475 F.3d 1291 (D.C. Cir. 2007).

Thus, as concerns Los Angeles's challenge to the conditions, the consummation of OJP's decision-making process has not yet occurred, plaintiff's "rights or obligations" have not been determined, and no "legal consequences" have arisen. *Cf. Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1079 (7th Cir. 2016) (affirming dismissal because "a challenge to agency conduct is ripe only if it is filed after the final agency action"; the challenge otherwise "rests upon contingent future events that may not occur as anticipated, or that may not occur at all"); *Abbs v. Sullivan*, 963 F.2d 918, 927 (7th Cir. 1992) ("A challenge to administrative action . . . falls outside the grant of jurisdiction in . . . the Administrative Procedure Act when the only harm the challenger seeks to avert is the inconvenience of having to go through the administrative process before obtaining a definitive declaration of his legal rights."). This Court should, accordingly, dismiss Los Angeles's APA claim on this threshold jurisdictional ground alone.

### 2. The Challenged Conditions Are Not Arbitrary or Capricious

As an initial matter, if the challenged conditions are statutorily authorized and comport with the Spending Clause – which they do, as shown above – it is unclear how "arbitrary or capricious" scrutiny could otherwise limit USDOJ's broad discretion. In any event, when the courts review an agency's action under the "arbitrary or capricious" standard, it is "required to be 'highly deferential,'" and to "presum[e] the agency action to be valid" as long as it is supported by a rational basis. *Providence Yakima Med. Ctr. v. Sebelius*, 611 F.3d 1181, 1190 (9th Cir. 2010) (quoting *J&G Sales Ltd. v. Truscott*, 473 F.3d 1043, 1051 (9th Cir. 2007)). This standard of review is "narrow," and does not authorize a district court "to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park,*

*Inc. v. Volpe*, 401 U.S. 402, 416 (1971); *cf.* 5 U.S.C. § 553(a)(2) (exempting grants from notice and comment rulemaking procedures of the APA).

Here, plaintiff's claim fails because "the agency's reasons for" imposing the challenged conditions "were entirely rational." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 517 (2009). The imposition of the challenged conditions is understandable as a result of a May 2016 report by the USDOJ Office of Inspector General ("OIG") finding deteriorating local cooperation with "efforts to remove undocumented criminal aliens from the United States." RJN, Ex. G at 1-2 n.1. The 2016 OIG report advised that "the information we have learned to date during our recent work about the present matter differs significantly from what OIG personnel found nearly 10 years ago" in a 2007 audit, in which federal immigration authorities had "commented favorably to the OIG with respect to cooperation and information flow they received from the seven selected jurisdictions" that were examined. *Id.*

In the FY 2016 grant cycle, USDOJ under the prior Administration instituted a requirement for grantees to certify compliance with Section 1373. For the FY 2017 cycle, the Department maintained that condition and added the notice and access conditions, publicly offering a sound explanation for all three conditions. The Department's "Backgrounder on Grant Requirements" of July 25, 2017 (Dkt. No. 1, Ex. 2) stated that the conditions have a "goal of increasing information sharing between federal, state, and local law enforcement" so that "federal immigration authorities have the information they need to enforce the law and keep our communities safe." *Id.* The Backgrounder also noted that some jurisdictions had "refus[ed] to cooperate with federal immigration authorities in information sharing about illegal aliens who commit crimes," and stated that the conditions will "prevent the counterproductive use of federal funds for policies that frustrate federal immigration enforcement." *Id.* Thus, the three conditions are "common-

sense measures," *id.*, and "even in the absence of evidence, the agency's predictive judgment (which merits deference) makes entire sense" as "an exercise in logic rather than clairvoyance." *Fox Television*, 556 U.S. at 521.

Finally, as discussed above in relation to the Spending Clause, law enforcement (in the immigration context, particularly as to incarcerated aliens) undoubtedly relates to criminal justice. Numerous federal statutes expressly connect these two subjects. *See supra* text at 17-19. The challenged conditions thus rationally promote interests in "maintain[ing] liaison" among tiers of government "in matters relating to criminal justice," 34 U.S.C. § 10102(a)(2), and comport with the intergovernmental cooperation that Congress contemplates in immigration enforcement. *See, e.g.*, 8 U.S.C. §§ 1226(d), 1357(g), 1373; *Arizona*, 567 U.S. at 411-12 ("Consultation between federal and state officials is an important feature of the immigration system" and Congress "has encouraged the sharing of information about possible immigration violations."). Additionally, the access condition protects the ability of federal authorities to interview aliens during their state or local criminal custody, which is needed to determine whether an alien must be removed "when the alien is released" from state or local custody. 8 U.S.C. § 1226(c)(1).

## II.     Plaintiff Fails to Establish Irreparable Harm Absent Preliminary Relief

"[P]laintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction," not merely that it is possible. *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014) (quoting *Winter*, 555 U.S. at 22). Further, "[t]he threat of irreparable harm must . . . be 'immediate.'" *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1071 (N.D. Cal. 2015) (quoting *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988)). "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022

(9th Cir. 2016) (citation omitted).  Further, where the plaintiff "has failed to establish a likelihood of irreparable harm," a court need not even consider the other requirements.  *Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co.*, 685 F. Supp. 2d 1123, 1139 (D. Haw. 2010).

Los Angeles cannot satisfy these requirements.  First, the gist of plaintiff's alleged harm is an inability to secure federal grant funds.  But monetary harm does not usually qualify as irreparable harm.  *See California Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851 (9th Cir. 2009), *vacated & remanded on other grounds sub nom. Douglas v. Indep. Living Ctr. of S. California, Inc.*, 565 U.S. 606 (2012).

Second, in any event, plaintiff is incorrect that the funds for which it claims to be eligible "may be allocated to other jurisdictions, with no ability for Los Angeles to reclaim those funds" (Dkt. No. 83-1 at 23).  In truth, although OJP has not (yet) issued  FY 2017 Byrne JAG award documents to applicants whose compliance with 8 U.S.C. § 1373 is under review, the Office is holding those funds, which will be available to fund any such awards, as appropriate, once the issue of compliance with that statute is resolved.  *See* Declaration of Marilynn B. Atsatt ¶ 3 (Attachment 2 hereto).  Plaintiff thus does not meet its burden to demonstrate it will suffer irreparable harm absent preliminary relief.

**III.   The Public Interest and the Balance of Equities Militate Against the Entry of a Preliminary Injunction**

Lastly, a party seeking a preliminary injunction must "establish . . . that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.  These factors merge in a suit against the Federal Government.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Here, the public interest weighs heavily against plaintiff's attempt to enjoin statutorily authorized Executive Branch policies that are designed to promote the enforcement of federal immigration law in jurisdictions that receive federal law enforcement funds.  Courts have

routinely held that "the United States has an interest in enforcing federal law . . . ." *Acosta v. Idaho Falls Sch. Dist. No. 91*, 291 F. Supp. 3d 1162, 1168 (D. Idaho 2017) (*quoting United States v. E. Baton Rouge Parish Sch. Bd.*, 594 F.2d 56, 58 (5th Cir. 1979). Plaintiff's requested relief threatens, in particular, the "strong interest . . . in the effective and efficient enforcement of the nation's immigration laws, *Inland Empire-Immigrant Youth Collective v. Nielsen*, No. EDCV172048PSGSHKX, 2018 WL 1061408, at *21 (C.D. Cal. Feb. 26, 2018), as well as the Federal Government's interest in seeing that federal funds are used "to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives." *Fullilove v. Klutznick*, 448 U.S. 448, 474 (1980).

The challenged notice and access conditions promote these interests by promoting operational efficiency by conserving the resources needed by DHS to execute its mission; supporting the federal ability to remove criminal aliens from the country; and helping reduce federal expenditures on the State Criminal Alien Assistance Program, *see* 8 U.S.C. § 1231(i), under which the Federal Government compensates states and localities for their incarceration of certain criminal aliens. At bottom, encouraging cooperation among local governments and federal immigration authorities promotes the public interest in executing federal laws that require removal of criminal aliens. These concrete interests tip the equities in this case sharply toward denying an injunction.

## CONCLUSION

Accordingly, Counts One, Two, and Three in plaintiff's Complaint should be dismissed with prejudice, and plaintiff's motion for preliminary injunction should be denied.

Dated: July 27, 2018

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

NICOLA T. HANNA
United States Attorney

JOHN R. TYLER
Assistant Director

/s/ W. Scott Simpson

_____

W. SCOTT SIMPSON (Va. Bar #27487)
Senior Trial Counsel

Department of Justice, Civil Division
318 South Sixth Street, Room 244
Springfield, Illinois 62701
Telephone:   (202) 514-3495
Facsimile:    (217) 492-4888
E-mail:        scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS