MICHAEL N. FEUER, SBN 111529
City Attorney
JAMES P. CLARK, SBN 64780
Chief Deputy City Attorney
LEELA A. KAPUR, SBN 125548
Executive Assistant City Attorney
VALERIE L. FLORES, SBN 138572
Managing Senior Assistant City Attorney
MICHAEL DUNDAS, SBN 226930
Deputy City Attorney
200 North Main Street, City Hall East
Suite 800
Los Angeles, California 90012
mike.dundas@lacity.org
Telephone: (213) 978-8130
Facsimile: (213) 978-8312

MITCHELL A. KAMIN, SBN 202788
MÓNICA RAMÍREZ ALMADANI, SBN 234893
NEEMA T. SAHNI, SBN 274240
Covington & Burling LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, California 90067-4643
mkamin@cov.com
Telephone:  (424) 332-4800
Facsimile:  (424) 332-4749

DAVID M. ZIONTS, *pro hac vice*
IVANO M. VENTRESCA, *pro hac vice*
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
dzionts@cov.com
Telephone: (202) 662-6000
Facsimile:  (202) 662-5987

*Attorneys for Plaintiff City of Los Angeles*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF LOS ANGELES,<br><br>    Plaintiff,<br><br>    v.<br><br>JEFFERSON B. SESSIONS, III, in his official capacity as Attorney General of the United States; ALAN HANSON, in his official capacity as Acting Assistant Attorney General of the Office of Justice | Case No.: 2:17-cv-07215-R-JCx<br><br>**CITY OF LOS ANGELES' REPLY IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION AND OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL DISMISSAL**<br><br>Judge: The Honorable Manuel L. Real<br>Date: September 4, 2018<br>Time: 10:00 am |

Programs; UNITED STATES
DEPARTMENT OF JUSTICE.

      Defendants.

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................ 1

II.   ARGUMENT ............................................................................... 3

    A.   Los Angeles Has Stated A Claim And Is Likely To Succeed On The Merits........................................................................................ 3

        1.   Los Angeles Has Standing And Its Claims Are Ripe. ............... 3

        2.   DOJ's Notice And Access Conditions Are *Ultra Vires*............ 7

        3.   DOJ's Conditions Violate The Spending Clause..................... 15

        4.   The Conditions Violate The Administrative Procedure Act ... 17

    B.   Los Angeles Will Suffer Irreparable Injury Absent An Injunction ... 20

    C.   The Balance Of Equities And The Public Interest Weigh Heavily In Favor Of The Requested Injunction ................................................... 22

III.  CONCLUSION............................................................................ 23

i

CITY OF LOS ANGELES' REPLY IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION AND OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL DISMISSAL

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles,*
   559 F.3d 1046 (9th Cir. 2009) ................................................................... 20

*Arizona v. United States,*
   567 U.S. 387 (2012) ................................................................................. 16

*Az. State Bd. for Charter Sch. v. U.S. Dep't of Educ.,*
   464 F.3d 1003 (9th Cir. 2006) ................................................................. 12

*State ex rel. Becerra v. Sessions,*
   284 F. Supp. 3d 1015 (N.D. Cal. 2018) ..................................... 3, 5, 17, 18

*Bennett v. Spear,*
   520 U.S. 154 (1997) ................................................................................. 17

*City & Cty. of San Francisco v. Trump,*
   2018 WL 3637911 (9th Cir. Aug. 1, 2018) ....................................... 3, 5, 9, 10

*City of Chicago v. Sessions,*
   264 F. Supp. 3d 933 (N.D. Ill. 2017) ..................................................... 5, 21

*City of Chicago v. Sessions,*
   2018 WL 3608564 (N.D. Ill. July 27, 2018) ..................................... *passim*

*City of Chicago v. Sessions,*
   888 F.3d 272 (7th Cir. 2018) ................................................................. *passim*

*City of Los Angeles v. McLaughlin,*
   865 F.2d 1084 (9th Cir. 1989) ................................................................. 9, 13

*City of Los Angeles v. Sessions,*
   293 F. Supp. 3d 1087 (C.D. Cal. 2018) ................................................. *passim*

*City of Philadelphia v. Sessions,*
   280 F. Supp. 3d 579 (E.D. Pa. 2017) ..................................................... *passim*

*City of Philadelphia v. Sessions,*
   309 F. Supp. 3d 271 (E.D. Pa. 2018) ..................................... 3, 6, 7, 17, 19

*Cty. of Santa Clara v. Trump,*
    250 F. Supp. 3d 497 (N.D. Cal. 2017) ........................................................................21

*DKT Mem'l Fund, Ltd. v. Agency for Int'l Dev.,*
    810 F.2d 1236 (D.C. Cir. 1987) ..................................................................................6

*DKT Mem'l Fund Ltd. v. Agency for Int'l Dev.,*
    887 F.2d 275 (D.C. Cir. 1989) ....................................................................................8

*Ely v. Velde,*
    451 F.2d 1130 (4th Cir. 1971) ..................................................................................11

*Encino Motorcars, LLC v. Navarro,*
    136 S. Ct. 2117 (2016) ..............................................................................................18

*Forest Grove Sch. Dist. v. T.A.,*
    557 U.S. 230 (2009) ..................................................................................................14

*Gregory v. Ashcroft,*
    501 U.S. 452 (1991) ..................................................................................................11

*Havasupai Tribe v. Provencio,*
    876 F.3d 1242 (9th Cir. 2017) ..................................................................................17

*Jarkesy v. SEC,*
    803 F.3d 9 (D.C. Cir. 2015) ........................................................................................6

*Kansas v. United States,*
    249 F.3d 1213 (10th Cir. 2001) ................................................................................21

*Melendres v. Arpaio,*
    695 F.3d 990 (9th Cir. 2012) ..............................................................................21, 22

*Murphy v. NCAA,*
    138 S. Ct. 1461 (2018) ..............................................................................................16

*Nevada v. Skinner,*
    884 F.2d 445 (9th Cir. 1989) ....................................................................................15

*New York v. United States,*
    505 U.S. 144 (1992) ..................................................................................................15

*Organized Vill. of Kake v. U.S. Dep't of Agric.,*
    795 F.3d 956 (9th Cir. 2015) (en banc) ....................................................................19

iii

*P. C. Pfeiffer Co. v. Ford*,
    444 U.S. 69 (1979) ........................................................................................ 12

*Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't Health*,
    699 F.3d 962 (7th Cir. 2012) ...................................................................... 21

*Rattlesnake Coalition v. EPA*,
    509 F.3d 1095 (9th Cir. 2007) .................................................................... 18

*Schism v. United States*,
    316 F.3d 1259 (Fed. Cir. 2002) ................................................................. 14

*Sever v. NLRB*,
    231 F.3d 1156 (9th Cir. 2000) .................................................................... 18

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
    709 F.3d 1281 (9th Cir. 2013) ...................................................................... 5

*Sturgeon v. Bratton*,
    174 Cal. App. 4th 1407 (Cal. Ct. App. 2009) ........................................... 7

*Susan B. Anthony List v. Driehaus*,
    134 S. Ct. 2334 (2014) ............................................................................. 3, 6

*United States v. California*,
    2018 WL 3301414 (E.D. Cal. July 5, 2018) .......................................... 7, 16

*Util. Air Regulatory Grp. v. EPA*,
    134 S. Ct. 2427 (2014) ............................................................................... 13

*Whitman v. Am. Trucking Ass'n*,
    531 U.S. 457 (2001) .................................................................................... 12

*Winter v. Natural Resources Defense Council*,
    555 U.S. 7 (2008) ................................................................................... 20, 22

**Statutes**

5 U.S.C. § 706(2)(A) ......................................................................................... 17

8 U.S.C. § 1357(g) ............................................................................................... 9

8 U.S.C. § 1373 ........................................................................................ *passim*

34 U.S.C. § 10102(a)(6) ................................................................. 12, 13, 14, 15

iv

34 U.S.C. § 10122(c)(2)(F) ...................................................................................... 11

34 U.S.C. § 10152 .............................................................................................. 9, 15

34 U.S.C. § 10153 .................................................................................................. 8

34 U.S.C. § 10156 ................................................................................................ 13

34 U.S.C. § 10228 ................................................................................................ 11

34 U.S.C. § 10446 .................................................................................................. 8

34 U.S.C. § 20927 ................................................................................................ 13

42 U.S.C. § 3766 .................................................................................................. 11

**Other Authorities**

Enforce the Law for Sanctuary Cities Act, H.R. 3009, 114th Cong. § 3(b)
(2015) ............................................................................................................... 10

Stop Sanctuary Cities Act, S. 1814, 114th Cong. § 2(b)(2) (2015) ................................... 10

H.R. Rep. No. 109-233 .......................................................................................... 15

CITY OF LOS ANGELES' REPLY IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION AND OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL DISMISSAL

# I.    **INTRODUCTION**

The Justice Department's ("DOJ") position before this Court seeks nothing less than to arrogate to itself Congress' legislative powers.  Admitting no limits on its authority to restructure the Edward Byrne Memorial Justice Assistance Grant ("Byrne JAG") program as it wishes, rather than as Congress enacted it, the Justice Department proffers an interpretation that would permit it to condition Byrne JAG grants—awarded pursuant to Congress' carefully tailored formula—on agreement with an Administration's position on issues that could range from capital punishment to gun rights to marijuana legalization.  For fiscal year ("FY") 2017, the Byrne JAG grants are contingent on two conditions pressuring States and localities to participate in federal civil immigration enforcement: (1) giving advance notice to federal immigration officials, when requested, before releasing individuals from custody ("Notice Condition"); and (2) affording federal civil immigration officials access to local jails for federal civil immigration purposes ("Access Condition") (collectively, the "Conditions").

The Seventh Circuit and two federal district courts—in decisions completely ignored in the Department's brief—already have held that the Notice and Access Conditions exceed the authority Congress granted to the Justice Department.  In another decision barely acknowledged in the Department's brief, this Court held that virtually identical immigration-related considerations attached to a community-policing grant were unlawful.  These well-reasoned opinions show that the Justice Department has violated the separation of powers, the Spending Clause, and the Administrative Procedure Act in attaching the Conditions to the Byrne JAG grant.

Rather than confront, or even acknowledge, that precedent, the Justice Department repeats arguments that have been uniformly dismissed by every court to consider them.  It offers no new understanding of its authority, ignores the plethora of provisions its interpretation would render superfluous, and sticks to the position that Congress intended to undo the entire statutory formula for Byrne JAG grants through an obscure clause in a list of ministerial powers delegated to the Assistant Attorney General.  The Seventh

Circuit put it succinctly: "it is inconceivable that Congress would have anticipated that the Assistant Attorney General could abrogate the entire distribution scheme and deny all funds to states and localities that would qualify under the Byrne JAG statutory provisions, based on the Assistant Attorney General's decision to impose his or her own conditions." *City of Chicago v. Sessions*, 888 F.3d 272, 286 (7th Cir. 2018). Despite that holding, and this Court's similar ruling concerning the Community Oriented Policing Services ("COPS") grant, Defendants continue to advance their rejected arguments.

Recognizing the overwhelming precedent against the Conditions, the Justice Department attempts to shield its unlawful actions from this Court's review, by contending that the City's claim is not ripe, or the City lacks standing, because it is somehow unclear whether the Notice and Access Conditions will be attached to Los Angeles' statutorily-authorized FY 2017 Byrne JAG Award. But the Attorney General has proclaimed that *only* jurisdictions that comply with the Notice and Access Conditions will receive Byrne JAG awards; the then-Acting Assistant Attorney General submitted a sworn declaration that the Conditions will be attached to *every* FY 2017 Byrne JAG award; and the Department has awarded FY 2017 grants to over 800 jurisdictions, but has not offered a single example of an award made without the Conditions. The Department nonetheless seeks to avoid judicial scrutiny of the Conditions simply by refusing, potentially in perpetuity, to decide whether to approve the City's application at all.

Because there is no dispute that Los Angeles will otherwise qualify for Byrne JAG funds, there can be no serious doubt that the City will be required to certify to the Conditions in the imminent future. Certification would require Los Angeles to compromise its sovereign rights and would threaten public safety. The choice between either receiving law enforcement assistance funds or maintaining public safety is a constitutional injury, as is the likely loss of Byrne JAG funds stemming from the Justice Department's broad interpretation of its Conditions. In fact, the Ninth Circuit rejected the agency's similar standing and ripeness arguments in a challenge to the President's Executive Order seeking to withhold all grant funds from jurisdictions based on their

immigration policies.  Accordingly, Los Angeles easily satisfies Article III's standing and ripeness requirements.

Those harms also demonstrate that Los Angeles will suffer irreparable injury absent preliminary relief.  This Court should therefore grant immediate relief, deny the government's partial motion to dismiss, and prohibit the Justice Department from attaching the Notice and Access Conditions to Los Angeles' FY 2017 Byrne JAG award.

## II.    ARGUMENT

### A.    Los Angeles Has Stated A Claim And Is Likely To Succeed On The Merits.

#### 1.    Los Angeles Has Standing And Its Claims Are Ripe.

There can be no serious dispute that Los Angeles has standing to challenge the Notice and Access Conditions and that its challenge is ripe.  The Ninth Circuit has recently rejected the Justice Department's similar standing and ripeness arguments as applied to the President's threatened withdrawal of all grant funds from "sanctuary" jurisdictions.  *See City & Cty. of San Francisco v. Trump*, 2018 WL 3637911 (9th Cir. Aug. 1, 2018).  And *every* court to consider the agency's related justiciability arguments in the Byrne JAG context has rejected them.  *See City of Philadelphia v. Sessions*, 309 F. Supp. 3d 271, 280 (E.D. Pa. 2018), *appeal pending*; *City of Chicago v. Sessions*, 2018 WL 3608564, at *5 (N.D. Ill. July 27, 2018); *State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1026-31 (N.D. Cal. 2018).

To satisfy constitutional standing, Los Angeles must suffer an injury that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'"  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014).  An injury is "imminent" where "the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'"  *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147, 1150 n.5 (2013)).  Because ripeness and standing "originate from the same Article III limitation," "the Article III standing and ripeness issues in this case boil down to the same question."  *Id.* at 2341 n.5.

Los Angeles' injury is both certainly impending and substantially likely to occur. Under the FY 2017 Byrne JAG formula grant, Los Angeles is due to receive $1.9 million in funds, with $1.5 million allocated directly to the City and the remainder allocated to the County of Los Angeles as a sub-grantee. Dkt. 83-4, Ex. H. The City will use the Byrne JAG funds to combat violent crime and gangs through its Community Law Enforcement and Recovery ("CLEAR") program. Decl. of Jeff Gorrell ¶¶ 10-18 (Dkt. 83-3). To accept those funds absent preliminary relief, Los Angeles will be required to certify to the Notice and Access Conditions. Indeed, the Attorney General has stated that "the Department will *only* provide Byrne JAG grants to cities and states that . . . allow federal immigration access to detention facilities, and provide 48 hours notice before they release an illegal alien wanted by federal authorities." Dkt. 83-4, Ex. A (emphasis added). The then-acting Assistant Attorney General for the Office of Justice Programs declared, under penalty of perjury, that the Notice and Access Conditions as described in the Greenville Award, Dkt. 1-4 (Compl. Ex. 4), "are being included in *each* award document being generated within OJP for awards under the FY 2017 Byrne JAG - Local Solicitation." *City of Chicago v. Sessions*, No. 17-2991, Doc. 40, App. at 42-43 ¶ 6 (Decl. of Alan Hanson) (filed 7th Cir. Nov. 28, 2017) (emphasis added). He further declared that such conditions "*will apply* to the FY 2017 Byrne JAG award, if the prospective recipient chooses to accept the award." *Id.* ¶ 5 (emphasis added). Consistent with those representations, the Justice Department, after awarding over 800 2017 Byrne JAG grants, has not offered one example of an award that does not include the Notice and Access Conditions. Defendants' suggestion before this Court that Los Angeles may not have to certify to the Conditions is thus disingenuous and in direct conflict with their own public admissions.

Los Angeles' imminent certification requirement establishes its standing. *Cf. City of Los Angeles v. Sessions*, 293 F. Supp. 3d 1087, 1094 (C.D. Cal. 2018), *appeal pending* (holding that Los Angeles had standing to challenge grant award considerations because it "filed its Complaint promptly upon notification that Defendants would award bonus

points based on compliance with the Challenged Considerations and before funds were distributed"). Los Angeles could not certify to the Conditions without changing its law enforcement operations. LA Br. 8; Decl. of Arif Alikhan ¶ 20 (Dkt. 83-2). Moreover, certifying compliance with the Conditions would have "a negative impact on the LAPD's relationship with the immigrant communities it polices, causing those communities to be less willing to report crimes and cooperate with criminal investigations, thus threatening the public safety of all who live and work in Los Angeles." Alikhan Decl. ¶ 16. Los Angeles thus must either give up congressionally authorized federal funds or comply with conditions that encroach on the City's sovereignty, damage community trust, and harm public safety. That "choice itself demonstrates irreparable harm," *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579, 657 (E.D. Pa. 2017); *City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 950 (N.D. Ill. 2017), *see infra* 20-22, which necessarily demonstrates injury-in-fact, *see Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1286-87 (9th Cir. 2013). And, injury-in-fact is also demonstrated where, as here, "the federal government seeks to compel [a jurisdiction] to change its policies in violation of the Tenth Amendment." *Becerra*, 284 F. Supp. 3d at 1029.

Furthermore, the Ninth Circuit recently reaffirmed that a "likely 'loss of funds promised under federal law'" satisfies Article III's standing requirement. *San Francisco*, 2018 WL 3637911, at *6 (quoting *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 965 (9th Cir. 2015) (en banc)). The Justice Department does not dispute that it broadly interprets the Access Condition as mandating "access [to local jails] . . . even if the inmate might decline to answer questions." LA Br. 8 (citation omitted). Los Angeles does not permit such access. Accordingly, it is at least "likely" that Los Angles would not receive Byrne JAG funds absent relief here. *See Becerra*, 284 F. Supp. 3d at 1029 (holding that federal government's threat to withhold Byrne JAG funds based on Section

1373 compliance "meets Article III's standing requirements"). For those same reasons, this dispute is ripe. *See Susan B. Anthony List*, 134 S. Ct. at 2341 n.5.[1]

Courts have found similar challenges to the Conditions justiciable. The *Chicago* district court held that it was "far from 'tentative'" that the Department would impose the Notice and Access Conditions because the declaration from the then-Acting Assistant Attorney General showed that "every FY 2017 award . . . will include conditions identical to those attendant to the grant awards already handed out to Binghamton and Greenville." 2018 WL 3608564, at *5. Likewise, the *Philadelphia* district court concluded that "the Attorney General's decision to impose the conditions 'represents the agency's definitive position on the question,' such that it is now 'final' and ripe for this Court's review." 309 F. Supp. 3d at 280.

That the Office of Justice Programs ("OJP") "has not acted on [Los Angeles'] application," DOJ Br. 11, is irrelevant. It is well-established that courts have jurisdiction even over *non-applicants*' challenges to grant conditions, *see DKT Mem'l Fund, Ltd. v. Agency for Int'l Dev.*, 810 F.2d 1236, 1238 (D.C. Cir. 1987), and that a "grant competitor is not required to show that it would have received the grant but for the disadvantage it faced," *Los Angeles*, 293 F. Supp. 3d at 1094. Here, where: (1) Los Angeles *has* applied for a grant; (2) it indisputably qualifies for that grant; (3) a high-ranking Justice

---

[1] The Department's passing reference to section 10154 misses the mark. DOJ Br. 12. That provision states that "[t]he Attorney General shall not finally disapprove any application . . . submitted under this part without first affording the applicant reasonable notice of any deficiencies in the application and opportunity for correction and reconsideration." This language provides a process for error correction, not for review of challenges to the authority of the Attorney General to impose conditions. Notably, the Department does not argue that this "review" scheme is exclusive. *Cf. Jarkesy v. SEC*, 803 F.3d 9, 17 (D.C. Cir. 2015) ("'Given the painstaking detail with which' Congress set forth the rules governing the court of appeals' review of Commission action, 'it is fairly discernible that Congress intended to deny [aggrieved respondents] an additional avenue of review in district court.'" (quoting *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2134 (2012))).

Department official has declared under penalty of perjury that the agency will attach the Conditions to all Byrne JAG grants; and (4) the Justice Department has in fact attached those Conditions to at least four—and likely over 800—grants, standing and ripeness are clear.

Moreover, the only reason that OJP says it has not "acted" on the City's application is due to a purported "review" of its compliance with 8 U.S.C. § 1373. DOJ Br. 24; Decl. of Marilynn B. Atsatt ¶¶ 3-4 (Dkt. 85-3). Yet, as Los Angeles explained in its opening brief, Section 1373 is unconstitutional. *See* LA Br. 24; *Philadelphia*, 309 F. Supp. 3d at 329; *Chicago*, 2018 WL 3608564, at *5-11. And even if Section 1373 *were* constitutional, courts have correctly recognized that both Los Angeles policy and applicable California law (such as the recently enacted California Values Act) are consistent with that statute. *See Sturgeon v. Bratton*, 174 Cal. App. 4th 1407, 1421 (Cal. Ct. App. 2009); *United States v. California*, 2018 WL 3301414, at *12-23 (E.D. Cal. July 5, 2018). Defendants' brief does not defend the constitutionality of Section 1373, or offer any evidentiary basis for even questioning the consistency of the City's policies with that provision. It thus remains unclear why OJP has needed <u>nearly a year</u> to assess compliance with Section 1373, but that delay does not change the fact that Los Angeles has clearly demonstrated that this case is ripe for adjudication.

### 2.   DOJ's Notice And Access Conditions Are *Ultra Vires*.

On the merits, DOJ's brief rehashes arguments that have been uniformly rejected by the Seventh Circuit and two federal district courts. Rather than discussing—much less distinguishing—those cases or this Court's decision in *Los Angeles*, DOJ almost entirely ignores them, effectively conceding that it has no rebuttal to those well-reasoned opinions. For the reasons already articulated by the courts in *City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018), and *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579 (E.D. Pa. 2017), and similar reasons adopted by this Court with respect to the COPS program, the Notice and Access Conditions are *ultra vires*.

### (a) The Byrne JAG Statute Does Not Authorize The Conditions.

The Attorney General's authority to administer the Byrne JAG program is located in 34 U.S.C. §§ 10152-10158. It is undisputed that "[n]one of those provisions grant the Attorney General the authority to impose conditions that require states or local governments to assist in immigration enforcement, nor to deny funds to states or local governments for the failure to comply with those conditions." *Chicago*, 888 F.3d at 283-84. In its opening brief, Los Angeles further explained how the Conditions violate the statutory framework of the Byrne JAG grant, including the specific certifications and assurances Congress required to be imposed on applicants. *See* 34 U.S.C. § 10153(a)(1)-(5); LA Br. 12-14. As a result, the Notice and Access Conditions are *ultra vires* and violate the Constitution's separation of powers.

This Court's decision in *Los Angeles* confirms that the Justice Department has acted *ultra vires*. As in *Los Angeles*, "Congress knew how to confer the broad power the Attorney General seeks and chose not to here." 293 F. Supp. 3d at 1097 (collecting citations); *cf.* 34 U.S.C. § 10446(e)(3) ("In disbursing grants under this subchapter, the Attorney General may impose reasonable conditions on grant awards to ensure that the States meet statutory, regulatory, and other program requirements."). It is revealing that the one case the agency cites in support of its expansive interpretation involved a broad delegation that is noticeably missing here (and did not concern grants to States and localities, with the federalism concerns that entails). *See DKT Mem'l Fund Ltd. v. Agency for Int'l Dev.*, 887 F.2d 275, 280 (D.C. Cir. 1989) (delegating to the President authority "to furnish assistance, *on such terms and conditions as he may determine*" for foreign aid funds (emphasis added)).

To be sure, the COPS grant program in *Los Angeles* comprises a different statutory scheme, because it involves a discretionary grant. But that only underscores the problems here. The fact that the Department exceeded its statutory authority by attaching immigration-related considerations to a discretionary grant makes it even clearer that it acted *ultra vires* in attaching nearly identical conditions to the narrowly-circumscribed

8

Byrne JAG formula grant.  *See City of Los Angeles v. McLaughlin*, 865 F.2d 1084, 1088 (9th Cir. 1989) ("In the formula grant program the authorizing *Act of Congress* determines who the recipients are and how much money each shall receive." (emphasis added) (citation omitted)).

The Conditions also violate the purpose of Byrne JAG grants: to fund grants "for use by the State or unit of local government to provide additional personnel, equipment, supplies, contractual support, training, technical assistance, and information systems for criminal justice."  34 U.S.C. § 10152(a)(1).  In specifying eight types of programs for which States and localities could use the funds, Congress did not include civil immigration enforcement.  Yet, the Department admits that Byrne JAG funds will be "used for costs incurred in implementing the [C]onditions."  DOJ Br. 9.  Nowhere has the agency explained where Congress authorized it to not only condition Byrne JAG funding on state and local participation in federal immigration enforcement, but to use those funds to *subsidize* such participation.  *Cf.* 8 U.S.C. § 1357(g) (mandating that federal-state immigration agreements be undertaken "at the expense of the State or political subdivision").

The need for congressional authorization is especially critical where the Executive seeks to make law through fiat in areas of significant national concern—such as the federal government's attempted conscription of States and localities into federal civil immigration enforcement.  The Ninth Circuit has explained that the "sheer amount of failed legislation on th[e] issue" of tying federal funds to state and local participation in federal civil immigration enforcement "demonstrates the importance and divisiveness of the policies in play, reinforcing the Constitution's 'unmistakable expression of a determination that legislation by the national Congress be a step-by-step, deliberate and deliberative process.'"  *San Francisco*, 2018 WL 3637911, at *4 (quoting *I.N.S. v. Chadha*, 462 U.S. 919 (1983)).

The Conditions here implicate "important and divisive" policies of the type at issue in *San Francisco*.  Under our constitutional structure, it is Congress, acting through its

9

"step-by-step, deliberate and deliberative process," that must decide whether to use federal funds to pressure States and localities to participate in federal civil immigration enforcement. *Id.* Congress did not do so here, and has in fact rejected proposed legislation conditioning Byrne JAG funds on state and local participation in federal civil immigration enforcement. *See, e.g.*, Stop Sanctuary Cities Act, S. 1814, 114th Cong. § 2(b)(2) (2015); Enforce the Law for Sanctuary Cities Act, H.R. 3009, 114th Cong. § 3(b) (2015). By attaching the Notice and Access Conditions, the Justice Department has not only "claimed for itself Congress' exclusive spending power, it has also attempted to coopt Congress' power to legislate." *San Francisco*, 2018 WL 3637911, at *4.

Finally, the Justice Department has studiously avoided offering a limit on its powers under the Byrne JAG grants. The agency thus apparently agrees with Los Angeles that, if the Court accepts the agency's view, subsequent years' statutorily authorized Byrne JAG funds could be conditioned on divisive and politically charged issues like capital punishment, marijuana legalization, and gun rights. Congress did not "intend[] to stretch Defendants' authority so broadly." *Los Angeles*, 293 F. Supp. 3d at 1098.

### (b) No Clear Statement From Congress Authorizes The Conditions.

Applying settled precedent, this Court held in *Los Angeles* that a clear statement from Congress is required before the Justice Department may impose grant conditions that "upset the constitutional balance." 293 F. Supp. 3d at 1096. Like their counterpart considerations in *Los Angeles*, the Notice and Access Conditions do exactly that "by requiring state and local law enforcement to partner with federal authorities" and "participat[e] in a historically federal function—immigration enforcement." *Id.*; *see also Chicago*, 888 F.3d at 282. As in *Los Angeles*, no clear statement authorizes the Notice and Access Conditions—and the Justice Department does not argue otherwise. Nor could it, as Los Angeles explained in its application for a preliminary injunction. LA Br.

14-15.  Therefore, this Court's "inquiry is at an end."  *Los Angeles*, 293 F. Supp. 3d at
1098.

Ignoring this Court's recent decision, the Justice Department strains to limit, in a
footnote, the clear-statement rule to the specific facts of *Gregory v. Ashcroft*, 501 U.S.
452 (1991).  DOJ Br. 14 n.3.  But this Court observed that *Gregory* itself explained that
the "clear statement rule 'applie[s] in other contexts,' including any 'traditionally
sensitive areas, such as legislation affecting the federal balance.'"  *Los Angeles*, 293 F.
Supp. 3d at 1096 (quoting *Gregory*, 501 U.S. at 461).  Consistent with *Gregory*, the en
banc Fourth Circuit has also "extended the clear statement rule specifically to federal
grants."  *Id.* (citing *Va. Dep't of Educ. v. Riley*, 106 F.3d 559, 566 (4th Cir. 1997) (en
banc)).  The Justice Department has no answer.

Congress was aware of the temptation for executive agencies to use grants to
intrude on state and local sovereignty.  To avoid such unconstitutional actions, 34 U.S.C.
§ 10228 prohibits federal agencies from "exercis[ing] *any* direction, supervision, or
control over any police force or any other criminal justice agency of any State or any
political subdivision thereof."  (emphasis added).  Congress enacted section 10228 to
prevent exactly what DOJ seeks to do here—exercise "control over . . . 'vital matters
pertaining to the day-to-day operations of local law enforcement.'"  *Ely v. Velde*, 451
F.2d 1130, 1136 (4th Cir. 1971) (quoting S. Rep. No. 90-1097 at 222 (1968)) (discussing
42 U.S.C. § 3766(a), an earlier version of section 10228(a)).  In response, the Justice
Department musters a citation to an entirely unrelated statute, 34 U.S.C.
§ 10122(c)(2)(F), which applies to "white-collar crime and public corruption."

Seemingly conceding the absence of authority here, the Justice Department asks
the Court to sanction the Conditions because they "merely promote intergovernmental
law enforcement cooperation."  DOJ Br. 15; *see id.* at 14 n.3.  The Seventh Circuit rightly
saw this argument for what it is:  a "disturbing disregard for the separation of powers."
*Chicago*, 888 F.3d at 283.  Like the COPS immigration considerations, the Conditions
"infringe upon the state police power," no matter how the Justice Department

11

characterizes them.  *Los Angeles*, 293 F. Supp. 3d at 1096.  Only a clear statement from Congress could authorize the Conditions, and the absence of such a statement shows the Justice Department has acted *ultra vires*.

### (c) Section 10102(a)(6) Does Not Authorize The Conditions.

The Justice Department, as it has in every other case challenging its unilateral Byrne JAG conditions, seeks refuge in 34 U.S.C. § 10102(a)(6).  That provision directs the Assistant Attorney General to "exercise such other powers and functions as may be vested in the Assistant Attorney General pursuant to this chapter or by delegation of the Attorney General, including placing special conditions on all grants, and determining priority purposes for formula grants."  Specifically, the Justice Department relies on the clause "including placing special conditions on all grants."  That "including" clause is found in the last paragraph of a list of ministerial powers delegated to the Assistant Attorney General, *see, e.g.*, *id.* § 10102(a)(1) ("publish and disseminate information on the conditions and progress of the criminal justice systems"), located in a subchapter that does not encompass the Byrne JAG grants.  In that "mousehole," the Justice Department insists that Congress has hidden an "elephant"-sized power, *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001): unbounded authority for the Justice Department to condition a formula grant on compliance with any federal policy the Justice Department contends is related, however tangentially, to crime.

As courts have unanimously held, the "Attorney General's position is untenable" because his "interpretation is so obviously belied by the plain meaning of the word 'including.'"  *Chicago*, 888 F.3d at 285.  "Including" in section 10102(a)(6) "connotes simply an illustrative application of" the authority already vested in the Assistant Attorney General or the Attorney General.  *See Az. State Bd. for Charter Sch. v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1008 (9th Cir. 2006) (citation omitted); *see also P. C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 77 n.7 (1979) (rejecting argument that "the word 'including' means 'and' or 'as well as'").  The Justice Department does not contest the

plain meaning of "including," which is fatal to its argument.  Because no other provision
gives either the Assistant Attorney General or the Attorney General power to condition
Byrne JAG funds on the Notice and Access Conditions, section 10102(a)(6) cannot
authorize those Conditions.  *See Chicago*, 888 F.3d at 285; *Philadelphia*, 280 F. Supp. 3d
at 617.

Not only is the Justice Department's interpretation foreclosed by the plain text, it
also runs counter to the Byrne JAG statutory scheme.  The Byrne JAG grant is a formula
grant, which means that funds "are not awarded at the discretion of a state or federal
agency, but are awarded pursuant to a statutory formula."  *McLaughlin*, 865 F.2d at 1088.
Instead of adhering to Congress' mandate—which ties funding to population and rates of
violent crime while guaranteeing awards to jurisdictions that meet the statute's criteria,
34 U.S.C. § 10156(a)—the Justice Department would use section 10102(a)(6) to
transform this formula grant into a grant doled out in the Department's purported "broad
discretion," DOJ Br. 21.  That executive overreach is foreclosed by the statutory
framework itself.  *See Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2442 (2014)
("[A]n agency interpretation that is inconsistent with the design and structure of the
statute as a whole . . . does not merit deference." (citation omitted)); *Chicago*, 888 F.3d at
286.

The incompatibility of the Justice Department's interpretation with the Byrne JAG
statute is evident from the multitude of statutory provisions that its interpretation would
make superfluous.  First, the Department's construction would reduce to surplusage
Congress' limited delegation of authority to administer Byrne JAG grants.  For instance,
provisions where Congress authorized the Department to condition the amount of Byrne
JAG funds on a jurisdiction's compliance with federal policy objectives would be
meaningless, *see, e.g.*, 34 U.S.C. § 20927(a); *id.* § 60105(c)(2), as would the provision
permitting the Attorney General to "reserve" five percent of Byrne JAG funds to combat
"precipitous or extraordinary increases in crime" or prevent "significant programmatic
harm," *id.* § 10157(b).  Second, the Department's interpretation of section 10102(a)(6)

13

would "render superfluous the explicit statutory authority Congress gave to the Director of [Bureau of Justice Assistance ('BJA')] on other BJA grants." *Philadelphia*, 280 F. Supp. 3d at 616 (citing 34 U.S.C. § 10142(B)).

These myriad deficiencies cannot be overcome by the point that the Byrne JAG program was created in the same omnibus legislation as section 10102(a)(6). DOJ Br. 13-14. If anything can be gleaned from that fact, it is that Congress did not intend to provide the Justice Department with the unbounded authority it seeks here. As the Seventh Circuit recognized, even though the Byrne JAG program and section 10102(a)(6) were part of the same legislation, "nothing in the Byrne JAG statute cross-references that alleged authority or even hints that the tightly-circumscribed structure of the Byrne JAG grants can be upended by some unbounded authority in § 10102 of the Assistant Attorney General to impose new conditions." *Chicago*, 888 F.3d at 286.[2]

The Justice Department also argues that it must have unbounded authority under section 10102(a)(6) because otherwise a selection of so-called "special conditions" might be unlawful.[3] Those conditions are not at issue here, and the Court need not opine on them. Moreover, Congress codified several of those conditions, which suggests it was concerned that the agency lacked authority absent a more specific enactment. *Cf. Schism v. United States*, 316 F.3d 1259, 1289 (Fed. Cir. 2002) (noting that Congress may act to ratify action that was "*unauthorized* when taken" (emphasis added)). In any event, none

---

[2] Limiting DOJ's authority to the statutory text still gives meaning to the "including" clause in section 10102(a)(6). "[E]lucidative" statutory language "'perform[s] a significant function simply by clarifying' a provision's meaning." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 242 (2009) (quoting *United States v. Atl. Research Corp.*, 551 U.S. 128, 137 (2007)).

[3] The Justice Department does not disagree that "special conditions" had a particular meaning when Congress enacted the Byrne JAG statute that would not authorize the Conditions. *See Philadelphia*, 280 F. Supp. 3d at 617 ("[T]he term 'special conditions' referred to in the subsection . . . is a term of art for conditions intended for 'high-risk grantees' with difficulty adhering to existing grant requirements.").

of those conditions bears any resemblance to the Justice Department's use of Byrne JAG funds to pressure States and localities to compromise their sovereignty and participate in federal civil immigration enforcement.

Accordingly, and as every court considering the issue has held, section 10102(a)(6) does not authorize the Notice and Access Conditions.

### 3.    DOJ's Conditions Violate The Spending Clause.

The Supreme Court has clearly established that congressional conditions on the receipt of federal funds "must . . . bear some relationship to the purpose of the federal spending." *New York v. United States*, 505 U.S. 144, 167 (1992).  The Notice and Access Conditions violate that requirement because they are not "reasonably related" to the Byrne JAG statute's "articulated goal," *Nevada v. Skinner*, 884 F.2d 445, 447 (9th Cir. 1989).

As the Justice Department itself acknowledges, DOJ Br. 18, the purpose of the Byrne JAG program is to support programs "for criminal justice," 34 U.S.C. § 10152(a)(1).  In specifying the types of programs it was funding, Congress excluded civil immigration enforcement, which makes sense because "the Byrne JAG statute is clearly designed for the purpose of enhancing *local* criminal justice." *Philadelphia*, 280 F. Supp. 3d at 642.  Because the Conditions do not relate to Congress' aim to provide States and localities with "more flexibility to spend money for programs that work for them rather than to impose a 'one size fits all' solution," H.R. Rep. No. 109-233, at 89, the Justice Department's "argument that enforcement of federal immigration laws is related to th[e] objective [of enhancing local criminal justice] is unsustainable," *Philadelphia*, 280 F. Supp. 3d at 642.

Recognizing that Congress did not intend for Byrne JAG grants to fund civil immigration enforcement, the Justice Department attempts to portray the Notice and Access Conditions as "intersect[ing]" with criminal law enforcement.  DOJ Br. 18.  But that does not answer the question of whether the Conditions are reasonably related to the purposes of the grant program to which they are attached.  *Philadelphia*, 280 F. Supp. 3d

15

CITY OF LOS ANGELES' REPLY IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION AND OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL DISMISSAL

at 642 ("The important question is whether the conditions at issue relate to the federal interest in the particular program they are attached to.").  Indeed, "the fact that immigration enforcement depends on and is deeply impacted by criminal law enforcement does not mean that the pursuit of criminal justice in any way relies on the enforcement of immigration law."  *Id.*  And the Justice Department's proffered "intersecting" standard has no limiting principle, because any number of policy areas— health care, education, urban planning, and even environmental policy—can be said to "intersect" with criminal justice.

For similar reasons, the Justice Department is off-base in relying on the Immigration and Nationality Act ("INA"), a statute that neither references, nor is referenced in, the Byrne JAG statute.  The Justice Department fails to recognize that "Congress indicated awareness that state law might be in tension with federal objectives and decided to tolerate those competing interests" in the INA.  *California*, 2018 WL 3301414, at \*18.  Consistent with that respect for state sovereignty, the INA provides for only "limited circumstances in which state officers may perform the functions of an immigration officer."  *Arizona v. United States*, 567 U.S. 387, 408 (2012).

The Justice Department, for its part, disregards state and local sovereignty in arguing that the Conditions ensure that jurisdictions do "not impair the law enforcement activities of the federal government."  DOJ Br. 19.  "Standing aside does not equate to standing in the way."  *California*, 2018 WL 3301414, at \*18.

Finally, because the Conditions lack any relationship to the Byrne JAG statute and do not comply with the Spending Clause, they are direct orders to State and local law enforcement officials that constitute impermissible federal commandeering.  *See Murphy v. NCAA*, 138 S. Ct. 1461, 1475-77 (2018).

### 4. The Conditions Violate The Administrative Procedure Act.

The imposition of the Conditions should also be set aside as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

### (a) The Conditions Are Final Agency Action.

The Justice Department's decision to impose the Notice and Access Conditions on FY 2017 Byrne JAG grants is final within the meaning of the APA, because (1) the imposition of the Conditions "mark[s] the consummation of the agency's decisionmaking process," and (2) the imposition of the Conditions is an act "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Every court to consider this issue has reached that same conclusion. *See Chicago*, 2018 WL 3608564, at *5; *Philadelphia*, 309 F. Supp. 3d at 279-80; *see also Becerra*, 284 F. Supp. 3d at 1031 (holding that conditioning Byrne JAG funds on compliance with 8 U.S.C. § 1373 is final agency action).

On the first prong, and as explained *supra*, section II.A.1, the Justice Department, as evidenced by statements from the Attorney General and a declaration from the then-Acting Assistant Attorney General, has determined that it will attach the Conditions to all Byrne JAG awards. And the Department has acknowledged attaching such Conditions to at least four awards, and has not offered one example—from over 800 awards—in which the Conditions were not attached. The agency's actions are thus not "merely tentative or interlocutory." *Havasupai Tribe v. Provencio*, 876 F.3d 1242, 1249 (9th Cir. 2017) (quoting *Bennett*, 520 U.S. at 177-78); *see Chicago*, 2018 WL 3608564, at *5 ("[T]he Attorney General's attachment of the Conditions is the end result of his decision-making process on this score.").

On the second factor, the "Conditions attached to the Byrne JAG funds trigger important legal and practical consequences." *Chicago*, 2018 WL 3608564, at *5. Los Angeles must "choose between accepting the award"—to which it is statutorily entitled— "with the Conditions or forgoing the award in favor of maintaining the City's policy

preferences." *Id.* Thus, "legal consequences clearly flow from the imposition of the" Conditions. *See Becerra*, 284 F. Supp. 3d at 1031-32 (discussing Section 1373 Condition).

Seeking to evade arbitrary-and-capricious review, the Justice Department tries to move the goalposts by arguing that "the administrative process has not yet run its course" and that the agency has not "decided [whether] to disburse the funds." DOJ Br. 20. But the challenged agency action is the agency's imposition of the Conditions, not the final award determination. As *Becerra*, *Chicago*, and *Philadelphia* have all held, the decision to attach conditions to Byrne JAG grants is final agency action because it "represents the agency's definitive position on the question, such that it is now final and ripe for this Court's review." *Philadelphia*, 280 F. Supp. 3d at 615 (internal quotation marks omitted). Moreover, given the formula nature of the grants, it is clear that but for the Conditions Los Angeles will receive an award, and the Justice Department has proffered nothing to cast any doubt on the inevitability of that outcome.[4]

> **(b) DOJ's Imposition Of The Notice and Access Conditions Is Arbitrary And Capricious.**

DOJ's imposition of the Notice and Access Conditions violates the APA's fundamental requirement of "reasoned decisionmaking." *Sever v. NLRB*, 231 F.3d 1156, 1164 (9th Cir. 2000). As the City has explained, the Justice Department has not only failed to "examine the relevant data and articulate . . . a rational connection between the facts found and the choice made," *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016) (citation omitted), it has also ignored substantial contrary evidence. *See* LA Br. 21-22.

---

[4] *Rattlesnake Coalition v. EPA*, 509 F.3d 1095, 1103-04 (9th Cir. 2007) has nothing to do with this dispute. The Ninth Circuit held there that a National Environmental Policy Act challenge to a project was not "final" because the agency had not yet disbursed funds for the project. *Id.* That case did not involve a challenge to an agency's definitive pronouncement to impose conditions on grants.

18

The Justice Department asserts that "in the absence of evidence" its own "predictive judgment" is entitled to deference.  DOJ Br. 22-23 (citing *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 517 (2009)).  Los Angeles agrees that there is an absence of evidence *supporting* the imposition of the Conditions.  There is, however, evidence that *undercuts* the agency's action here and, consequently, the agency's stated explanation runs counter to that evidence.  *Kake*, 795 F.3d at 966 ("Agency action is arbitrary and capricious if the agency has . . . offered an explanation for its decision that runs counter to the evidence before the agency.").  In fact, "not only are there no peer-reviewed studies supporting the AG's proposed correlation [between so-called 'sanctuary' policies and crime], the scholarship on the subject actually suggests that such policies do not affect, and might even lower, crime rates."  *Chicago*, 2018 WL 3608564, at *15; *see* LA Br. 5 n.3.

The Justice Department's reliance on an Office of Inspector General ("OIG") Report and the Department's "Backgrounder on Grant Requirements" is misplaced.  *See Philadelphia*, 309 F. Supp. 3d at 324 (holding that those documents "do not demonstrate any adequate basis for the attachment of the Challenged Conditions" (citation omitted)).  The OIG Report summarizes compliance with 8 U.S.C. § 1373, and does not discuss the need to impose the Notice and Access Conditions on Byrne JAG awards.  The "Backgrounder" is attributed to an unknown "DOJ official"—not the Attorney General or any other decisionmaker.  It repeats the unsubstantiated point that jurisdictions that do not engage in federal immigration enforcement "jeopardize the safety of their residents."  Dkt. 83-4 at 11.  Other parts of the document are nonsensical.  The Backgrounder states that the Conditions will "prevent the counterproductive use of federal funds for policies that frustrate federal immigration enforcement."  *Id.*  But that is not what the Conditions do.  They deprive funding for policies that, in Los Angeles, fight gangs and violent crime; in Philadelphia, treat opioid overdoses; in Chicago, provide life-saving technology for detecting gunshots.  None of those policies concern immigration enforcement, yet the Department will refuse to fund them because of unrelated immigration matters, which are

19

not funded by the Byrne JAG grant.  Even taken at face value, the Department's own
justifications fall apart.

For the reasons discussed above, *see supra* 16, the limited role that Congress
provided for States in immigration enforcement has no bearing here.  DOJ Br. 23.  The
Justice Department again fails to connect *these* Conditions to the statute at issue, in which
Congress established a formula grant to provide funding for local criminal justice
programs.  Accordingly, the Notice and Access Conditions are arbitrary and capricious.

## B.    Los Angeles Will Suffer Irreparable Injury Absent An Injunction.

As Los Angeles explained, allowing Defendants to impose the Conditions on FY
2017 Byrne JAG funding would likely cause the City immediate and irreparable harm.
LA Br. 22-24; *see also Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22
(2008) (plaintiff must show that it "is likely to suffer irreparable harm before a decision
on the merits can be rendered").  In response, the Justice Department claims that
"monetary harm does not usually qualify as irreparable harm" and that it is not currently
reallocating Los Angeles' Byrne JAG funds.  DOJ Br. 24.

The Justice Department ignores Los Angeles' significant, and imminent, non-
monetary irreparable harms.  Los Angeles suffers irreparable harm from being forced to
pick between two untenable choices: (1) certifying compliance with unlawful directives
that damage community trust, threaten public safety, and unconstitutionally impinge on
the City's sovereign interests; or (2) losing the Byrne JAG funding to which it is
statutorily entitled, and which Los Angeles uses to combat violent crime in its local
communities.  *See* Alikhan Decl. ¶ 16; LA Br. 23-24; *see Chicago*, 888 F.3d at 281
(holding that the Conditions put jurisdictions "in the unwinnable position of either losing
needed funding for law enforcement, or forgoing the relationships with the immigrant
communities that they deem necessary for efficient law enforcement").  It is well-settled
that such a choice is an irreparable harm—a point the Justice Department does not
dispute.  *See Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th
Cir. 2009) ("imminent harm" established where "a very real penalty attaches . . .

regardless of how [plaintiffs] proceed" (citing *Morales v. Trans World Airlines, Inc.*, 504
U.S. 374, 380-81 (1992))); *Chicago*, 264 F. Supp. 3d at 950 ("[A] 'Hobson's choice' can
establish irreparable harm."); *Philadelphia*, 280 F. Supp. 3d at 657 ("The choice itself
demonstrates irreparable harm.").  And, because the Conditions "place[] [Los Angeles']
sovereign interests and public policies at stake, . . . the harm the [City] stands to suffer
[i]s irreparable."  *See Kansas v. United States*, 249 F.3d 1213, 1227 (10th Cir. 2001).

    Nor does the Justice Department acknowledge that irreparable harm is established
by its constitutional violations here.  The Notice and Access Conditions flout the
separation of powers and the Spending Clause, *see supra* 7-16, and those constitutional
harms inflicted on Los Angeles "unquestionably constitute[] irreparable injury."
*Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted); *Cty. of Santa
Clara v. Trump*, 250 F. Supp. 3d 497, 537 (N.D. Cal. 2017) (separation of powers
violation "constitutes irreparable harm"); *Chicago*, 2018 WL 3608564, at *15.

    Accordingly, waiting until final judgment to obtain the Byrne JAG funds to which
Los Angeles is entitled by statute is insufficient to remedy those significant irreparable
harms.  The only purported basis on which the Justice Department is withholding Los
Angeles' FY 2017 Byrne JAG funds is to review the City's compliance with 8 U.S.C.
§ 1373—a statute that is unconstitutional and that, in any event, with which Los Angeles'
policies are plainly consistent.  *See supra* 7.  Therefore, Los Angeles will imminently
receive a Byrne JAG award and be required to certify to the Conditions, suffering
irreparable harm as described above.

    Furthermore, such delay in receiving FY 2017 Byrne JAG funds—on top of the
nearly one year Los Angeles has already waited—constitutes irreparable injury.  The
Deputy Mayor for Public Safety for Los Angeles explained that "a significant reduction,
elimination, or delay of JAG funds awarded to the City would most likely require the
termination of prosecutorial and probation officer positions devoted to the CLEAR
program," and may lead to the termination of the program.  Gorrell Decl. ¶ 17.  That
harm is clearly irreparable, and cannot be remedied by monetary damages.  *See Planned*

21

*Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 980 (7th Cir. 2012) ("loss of Medicaid funding would cause Planned Parenthood immediate irreparable harm").

Accordingly, Los Angeles has demonstrated that it will suffer irreparable harm without preliminary relief.

### C. The Balance Of Equities And The Public Interest Weigh Heavily In Favor Of The Requested Injunction.

As set forth in Los Angeles' application for preliminary injunction, the balance of equities and the public interest strongly favor the issuance of preliminary relief. *See* LA Br. 24-25. In balancing the "competing claims of injury," *Winter*, 555 U.S. at 24, this court should weigh heavily the imminent and significant harm faced by Los Angeles, which faces the choice of either acceding to the Justice Department's unlawful demands (thereby sacrificing the trust the City has built with the community), or being deprived of crucial resources needed for its local law enforcement efforts. "The public interest is better served if the City is not forced to choose between foregoing the JAG Grant funds and losing hard-fought goodwill amongst the immigrant community." *Philadelphia*, 280 F. Supp. 3d at 658.

To rebut this showing, the Justice Department merely asserts that the challenged Conditions "promot[e] operational efficiency" and that they are authorized by federal law. Not so. As explained *supra* 7-16, the unlawful Conditions imposed by DOJ are *ultra vires* and violate the Spending Clause. It is "always in the public interest" to issue an injunction to "prevent the violation of a party's constitutional rights," *Melendres*, 695 F.3d at 1002; *see also Los Angeles*, 293 F. Supp. 3d at 1100 ("Although Defendants have an interest in determining allocation of CHP funds, they have no legitimate interest in distributing these funds unconstitutionally."). At the same time, "enjoining the imposition of the Challenged Conditions with respect to [Los Angeles] would only cause the DOJ—at most—a minor hardship: paying funds that Congress had appropriated for disbursement consistent with the purposes of the Byrne JAG Program." *Philadelphia*,

22

280 F. Supp. 3d at 658; *Chicago*, 2018 WL 3608564, at \*16 ("the Attorney General experiences little hardship from the imposition of this injunction").  A preliminary injunction is therefore warranted.

**III.    CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' motion for partial dismissal and issue a preliminary injunction to prevent Defendants from conditioning Los Angeles' Byrne JAG award on the Notice and Access Conditions, and from withholding or delaying Los Angeles' Byrne JAG award on the basis that Los Angeles is not a "cooperating" jurisdiction.

1

Dated: August 15, 2018

2

3

Respectfully Submitted,

By:

4

MITCHELL A. KAMIN
MÓNICA RAMÍREZ ALMADANI

MICHAEL N. FEUER
City Attorney

5

NEEMA T. SAHNI

6

Covington & Burling LLP
1999 Avenue of the Stars, Suite 3500

JAMES P. CLARK
Chief Deputy City Attorney

7

Los Angeles, California 90067-4643

LEELA A. KAPUR
Executive Assistant City Attorney

8

9

DAVID M. ZIONTS, *pro hac vice*
IVANO M. VENTRESCA, *pro hac vice*

VALERIE L. FLORES
Managing Senior Assistant City

10

Covington & Burling LLP
One CityCenter

Attorney
MICHAEL DUNDAS

11

850 Tenth Street NW
Washington, DC 20001

Deputy City Attorney
200 North Main Street, City Hall

12

East Room 700

13

Los Angeles, California 90012
Telephone: (213) 978-8344

14

Facsimile: (213) 978-8312

15

16

17

*Attorneys for Plaintiff*
*City of Los Angeles*

18

19

20

21

22

23

24

25

26

27

28