CHAD A. READLER
Acting Assistant Attorney General
NICOLA T. HANNA
United States Attorney
JOHN R. TYLER
Assistant Director
W. SCOTT SIMPSON (Va. Bar #27487)
Senior Trial Counsel
Department of Justice, Civil Division
318 South Sixth Street, Room 244
Springfield, Illinois 62701
Telephone: (202) 514-3495
Facsimile: (217) 492-4888
E-mail: scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

CITY OF LOS ANGELES,

Plaintiff,

v.

JEFFERSON B. SESSIONS, III, *et al*.,

Defendants.

Case No. 2:17-cv-07215-R-JCx

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL DISMISSAL**

Date: September 4, 2018
Time: 10:00 a.m.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. Plaintiff Lacks Standing to Challenge the FY 2017 Byrne JAG Award Conditions, and Its Challenge Is Constitutionally Unripe ........ 2

II. The Challenged FY 2017 Award Conditions Are Authorized by Statute and Do Not Violate the Separation of Powers ........ 3

III. The Challenged FY 2017 Award Conditions Are Consistent with the Spending Clause ........ 6

IV. Plaintiff's APA Claim Must Be Dismissed ........ 8

A. Plaintiff's APA Claim Does Not Challenge Final Agency Action ........ 8

B. The FY 20176 Award Challenged Conditions Are Not Arbitrary or Capricious ........ 9

CONCLUSION ........ 11

# TABLE OF AUTHORITIES

## CASES

*Arizona v. United States*, 567 U.S. 387 (2012) .................................................6, 10

*California* ex rel. *State Water Res. Bd*. v. FERC, 877 F.2d 743 (9th Cir. 1989) ........................................................................5

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971)....................9

*City of Los Angeles v. Sessions*, 293 F. Supp. 3d 1087 (C.D. Cal. 2018) ..................6

*City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579 (E.D. Pa. 2017).....................8

*Dir., Office of Workers' Comp. Programs v. Mangifest*, 826 F.2d 1318 (3d Cir. 1987) .......................................................................5

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ................................9, 10

*Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002) ....................................7, 8

*Murphy v. National Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018).....................3

*Providence Yakima Med. Ctr. v. Sebelius*, 611 F.3d 1181 (9th Cir. 2010) ................9

*Reno v. Condon*, 528 U.S. 141 (2000).......................................................................3

*S. Dakota v. Dole*, 483 U.S. 203 (1987) ..................................................................4, 7

*Sorenson Commc'ns, LLC v. FCC*, 897 F.3d 214 (D.C. Cir. 2018).........................10

*Stone v. INS*, 514 U.S. 386 (1995)............................................................................5

*Texas v. United States*, 523 U.S. 296 (1998)..............................................................2

*W. Fuels-Illinois, Inc. v. ICC*, 878 F.2d 1025 (7th Cir. 1989) ................................10

*Whitmore v. Arkansas*, 495 U.S. 149 (1990)..............................................................2

**STATUTES**

5 U.S.C. § 553(a)(2) ........................................ 10

8 U.S.C. § 1226(c)(1) ........................................ 6

8 U.S.C. § 1226(d) ........................................ 10

8 U.S.C. § 1227(a)(2) ........................................ 9

8 U.S.C. § 1231(a) ........................................ 6

8 U.S.C. § 1357(a) ........................................ 7

8 U.S.C. § 1357(g) ........................................ 10

8 U.S.C. § 1373 ........................................ 2, 9, 10, 11

28 U.S.C. § 530C(a)(4) ........................................ 4

34 U.S.C. § 10102(a)(2) ........................................ 10

34 U.S.C. § 10102(a)(6) ........................................ 1, 4, 5

34 U.S.C. § 10152(a)(1) ........................................ 4, 5, 7

34 U.S.C. § 10153(a) ........................................ 1

34 U.S.C. § 10154 ........................................ 8

34 U.S.C. § 10251(a)(1) ........................................ 5, 9

Pub. L. No. 90-351, 82 Stat. 197 ........................................ 8

**REGULATIONS**

8 C.F.R. § 287.5(a) ........................................ 7

28 C.F.R. Part 18 ........................................ 8

**OTHER AUTHORITY**

H.R. Rep. No. 109-233 (2005) ........................................................................ 2, 5

## INTRODUCTION

Law enforcement in this country is a cooperative endeavor. Unlawful acts often implicate the jurisdiction of more than one agency, and local, state, tribal, and federal officials work together in a variety of ways to enforce the law and ensure public safety. Not surprisingly, then, federal law often contemplates, and is premised upon, coordination among those agencies, at all levels of government. This is true for the Immigration and Nationality Act ("INA"), and it is true for the statute that authorizes the Edward Byrne Memorial Justice Assistance Grant Program ("Byrne JAG Program"). Both statutes explicitly contemplate and encourage effective law enforcement by promoting coordination between the Federal Government and local, state, and tribal governments. Unfortunately, the City of Los Angeles has in recent years adopted policies of non-cooperation with respect to law enforcement involving aliens who have committed crimes. And, in this action, the City takes that policy to an extreme by claiming that the Federal Government cannot even condition its own law enforcement grants on such cooperation – even when the express statutory purpose of that funding is to promote law enforcement cooperation.

Grant award conditions are a traditional aspect of participation in the Byrne JAG Program, and there is no legal infirmity in the decision of the U.S. Department of Justice ("USDOJ") to impose the two Byrne JAG award conditions that the plaintiff challenges here. To further information-sharing, those conditions require grantees to give federal immigration authorities "as much advance notice as practicable" before releasing an alien from criminal custody and to give those authorities access to the recipient's criminal detention facilities to meet with aliens. As a threshold matter, Los Angeles's claims against these conditions are non-justiciable because they have had no effect on the City and may never have an effect. Even setting aside that objection, these conditions are consistent not only with the statutes governing the Byrne JAG Program, *see* 34 U.S.C. § 10102(a)(6), 10153(a), but also with legislative history confirming that the Attorney General is empowered to "place

special conditions on all grants and to determine priority purposes for formula grants." H.R. Rep. No. 109-233, at 101 (2005). Further, there is no merit to plaintiff's claim that these conditions violate limitations on the Spending Clause, in that they are closely related to the Byrne JAG Program's goal of improving criminal justice. And finally, the conditions are a rational means of promoting that goal and thus satisfy the "arbitrary or capricious" standard under the Administrative Procedure Act.

For the reasons stated below and in defendants' opening memorandum, the Court should dismiss Counts One, Two, and Three in plaintiff's Complaint.

## ARGUMENT

### I. Plaintiff Lacks Standing to Challenge the FY 2017 Byrne JAG Award Conditions, and Its Challenge Is Constitutionally Unripe

The Office of Justice Programs ("OJP" or "Office") has not yet acted on Los Angeles's FY 2017 Byrne JAG application, and the City has not yet been asked to certify compliance with the grant conditions that it challenges. Those conditions, therefore, have had no effect on the City. Additionally, OJP is considering whether Los Angeles complies with the separate FY 2017 Byrne JAG award condition requiring compliance with 8 U.S.C. § 1373, which the plaintiff does not challenge here. *See* Declaration of Marilynn B. Atsatt ¶¶ 3-4 (Dkt. No. 86-3); *see also, e.g.*, Compl. ¶ 48 & Ex. 4, ¶ 52 (Dkt. No. 1-4). If OJP determines that the City does not comply with that condition, the Office will deny Los Angeles's FY 2017 Byrne JAG application on that basis, and the notice and access conditions will have no effect on the City. Thus, the plaintiff has not suffered any "concrete" injury as a result of the conditions that it challenges, and its claim "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted).

The fact that the challenged conditions will be included in every FY 2017

grant award, Pl's Opp. at 4 (Dkt. No. 87), has no bearing on the justiciability of plaintiff's challenge. Los Angeles will never receive Byrne JAG award documents for FY 2017 – and will not be asked to comply with the notice and access conditions therein – if OJP determines that the City does not comply with Section 1373. Nor does plaintiff's brief assertion that Section 1373 is unconstitutional render justiciable its challenge to those notice and access conditions. *Contra id*. at 7. Since plaintiff does not seek a ruling that Section 1373 is unconstitutional, it cannot rely on that purported unconstitutionality to establish its standing to challenge the other conditions and the ripeness of its claims.[1] Similarly, plaintiff cannot rely on any justiciability decisions in the *California*, *Chicago*, or *Philadelphia* cases, *id*. at 5-6, because each of those plaintiffs, unlike Los Angeles, pleaded a claim either that Section 1373 is unconstitutional or that the plaintiff's laws comply with Section 1373.

**II. The Challenged FY 2017 Award Conditions Are Authorized by Statute and Do Not Violate the Separation of Powers**

Plaintiff takes a "divide and conquer" approach to the relevant statutory authorities, arguing that "the Byrne JAG statute" does not provide authority for the challenged conditions and, separately, that the overall authority of the Assistant Attorney General ("AAG") does not allow them. Pl's Opp. at 8-10, 12-15. All of

---

[1] In any event, plaintiff's assertion against Section 1373's constitutionality is baseless. The statute is concerned with regulating private actors – aliens in the country illegally – and it covers information regarding those individuals that federal immigration authorities need to perform their functions under the INA. As the Supreme Court has held, the Tenth Amendment does not prohibit federal enactments that "do[] not require the States in their sovereign capacity to regulate their own citizens," but instead "regulate[] the States as the owners of data bases." *Reno v. Condon*, 528 U.S. 141, 151 (2000). Section 1373 is also very different from the statute struck down in *Murphy v. National Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018), which, the Supreme Court held, sought to deflect political accountability by commanding the States to impose regulation in an area where the Federal Government itself had been largely silent. Here, Section 1373 imposes regulation in an area of core *federal* control and accountability.

the relevant statutes must be considered together, however, in determining whether the conditions are authorized. Also, if the AAG's overall authority in 34 U.S.C. § 10102(a)(6) allows her to impose the notice and access conditions, she may do so in any program within her responsibility, provided the conditions are consistent with the specific governing statute. *See* 28 U.S.C. § 530C(a)(4) ("Except to the extent provided otherwise by law, the activities of the Department of Justice (including any bureau, office . . . unit, or other component thereof) may, in the reasonable discretion of the Attorney General, be carried out through any means . . . .").

In truth, these conditions fall squarely within the AAG's multi-faceted authority – expressly granted by Congress – to "plac[e] special conditions on all grants" and to "determin[e] priority purposes for formula grants." 34 U.S.C. § 10102(a)(6). The notice and access conditions are "special conditions" on Byrne JAG grants, and USDOJ has determined that one "priority purpose" of these grants should be to promote state and local cooperation in identifying, locating, and removing criminal aliens.[2] As the plaintiff acknowledges, the Office of Community Oriented Policing Services is governed by different statutory authorities, Pl's Opp. at 8, so this Court's prior ruling in relation to certain scoring factors used by that office has no bearing on the statutory issue now presented.

Plaintiff argues that the statutes at issue here cannot authorize the challenged conditions because the statute authorizing the Byrne JAG Program doesn't include "civil immigration enforcement" among the types of programs that may be funded. *Id*. at 9. The City cannot deny, however, that the express statutory purposes of the

[2] The Court need not address the outer bounds of these authorities, such as whether they would permit conditioning grants on fundamental changes in local criminal law. Pl's Opp. at 10. In any event, any conditions adopted under these authorities would have to adhere to the strictures of the Spending Clause, which requires that grant conditions be germane, non-coercive, and consistent with any independent constitutional requirement. *See S. Dakota v. Dole*, 483 U.S. 203, 207-08 (1987).

Byrne JAG Program include "law enforcement," "prevention" of crime, criminal "corrections," and promoting "criminal justice." *See* 34 U.S.C. §§ 10152(a)(1)(A), (C), (D), 10251(a)(1) (defining "criminal justice" in very broad terms). Obviously, one way to prevent crime is to identify, locate, and remove aliens who have committed crimes in the past, and the FY 2017 notice and access conditions aid federal immigration authorities in accomplishing that task.

Plaintiff also argues that 34 U.S.C. § 10102(a)(6) merely illustrates authority "already vested in the Assistant Attorney General or the Attorney General" elsewhere. Pl's Opp. at 12-13. But the City does not (and cannot) point to any other statute that expressly authorizes the AAG to "plac[e] special conditions on all grants [or] determin[e] priority purposes for formula grants." Plaintiff's understanding, therefore, would render this language completely meaningless, whereas "[w]hen Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect." *Stone v. INS*, 514 U.S. 386, 397 (1995). Additionally, the legislative history of Section 10102(a)(6) states unequivocally that the statute "allows the Assistant Attorney General to place special conditions on all grants and to determine priority purposes for formula grants." H.R. Rep. No. 109-233, at 101 (2005).

Further, plaintiff asserts that giving effect to Section 10102(a)(6) would render "superfluous" certain provisions of the statute authorizing the Byrne JAG Program that explicitly authorize USDOJ to take certain specific actions in relation to the grants. Pl's Opp. at 13-14. It is not unusual, however, for a statute to confer both general powers and more specific powers that are encompassed within the general powers. *See*, *e.g.*, *California* ex rel. *State Water Res. Bd*. v. FERC, 877 F.2d 743, 747 (9th Cir. 1989), *aff'd sub nom. California v. FERC*, 495 U.S. 490 (1990); *Dir., Office of Workers' Comp. Programs v. Mangifest*, 826 F.2d 1318, 1330 n.20 (3d Cir. 1987). Congress may confer the general powers that an officer needs to carry out her responsibilities, while also conferring specific powers to

avoid any uncertainty on certain specific matters.

Lastly, plaintiff argues, quoting this Court's earlier ruling on the COPS Hiring Program, that the challenged conditions "infringe upon the state police power" and therefore must be authorized by a "clear statement" in the statute. Pl's Opp. at 11-12 (citing *City of Los Angeles v. Sessions*, 293 F. Supp. 3d 1087, 1096 (C.D. Cal. 2018)). But this formulation turns the issue on its head. Denying federal immigration authorities access to criminal aliens intrudes upon an area of traditional – and constitutional – *federal* control: the treatment and conduct of aliens in the United States. When a local government exercises its authority in relation to aliens, the matter necessarily and fundamentally involves the Federal Government. Although the INA allows state and local governments to punish criminal conduct by aliens before imposing immigration-related consequences under the INA, 8 U.S.C. § 1231(a)(1)(B)(iii), (a)(4); *see id.* § 1226(c)(1), this reflects a policy judgment by Congress to allow such jurisdictions to vindicate their criminal justice interests against individuals before the Federal Government removes them. Because the treatment of foreign nationals in the United States is quintessentially a federal concern, Congress could have preempted criminal punishment in favor of immigration consequences, thus effectively foreclosing the state or local detention of criminal aliens. *See Arizona v. United States*, 567 U.S. 387, 394 (2012). But by not doing so, Congress certainly did not contemplate that state and local jurisdictions would release criminal aliens back into the community without informing the federal government.

### III. The Challenged FY 2017 Award Conditions Are Consistent with the Spending Clause

In its Complaint, plaintiff alleges that the challenged notice and access award conditions violate the Spending Clause by imposing grant conditions that are purportedly ambiguous and "not sufficiently related" to the purposes of the Byrne JAG Program. Dkt. No. 1 ¶¶ 102-108. Los Angeles seems to have abandoned its

claim of ambiguity, since the City's memorandum in opposition to defendants' motion to dismiss does not mention it. Plaintiff's claim under the "relatedness" aspect of *S. Dakota v. Dole*, 483 U.S. 203 (1987), is equally groundless.

The City completely ignores the key Ninth Circuit case on relatedness, *Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002). Under *Mayweathers*, this aspect of *Dole* suggests only a "possible ground" for invalidating an enactment, and does not impose an "exacting standard." *Id*. at 1067. Specifically, conditions on federal funding must only "bear some relationship to the purpose of the federal spending." *Id*. As shown in defendants' opening memorandum, the FY 2017 notice and access conditions easily satisfy this standard.

In response, plaintiff attempts to frame the Byrne JAG Program as involving only the enforcement of local criminal laws, but that is much too narrow. Pl's Opp. at 15. In reality, Congress enacted the Program to promote "criminal justice," which includes crime *prevention* and *corrections* in addition to criminal *enforcement*. *See* 34 U.S.C. § 10152(a)(1)(C), (D) (directing that Byrne JAG funds may be used for crime "[p]revention and education programs" and for "[c]orrections and community corrections programs"). As noted earlier, one reasonable way to prevent crime is to remove aliens who have committed crimes in the past, and the challenged notice and access conditions help federal immigration authorities with that task. The access condition allows immigration authorities to interview suspected deportable aliens – who are already being held on state or local criminal charges – about their removability and criminal backgrounds. *Cf*. 8 U.S.C. § 1357(a) (stating that federal immigration authorities "have power without warrant . . . to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States"); 8 C.F.R. § 287.5(a) (stating that power in 8 U.S.C. § 1357(a) may be exercised "anywhere in or outside the United States"). And the notice condition allows immigration authorities to take removable aliens into safe, controlled custody after their release from criminal custody. Plainly, there is a

close relationship between criminal immigration enforcement, which the challenged conditions promote, and "the effectiveness . . . and coordination of law enforcement and criminal justice systems at all levels of government" that the Omnibus Crime Control and Safe Streets Act of 1968 (of which the Byrne JAG Program authorizing statute is a part) was expressly enacted to promote. Pub. L. No. 90-351, 82 Stat. 197.

Plaintiff argues that the pursuit of criminal justice does not rely on the enforcement of immigration law, but that is not the standard. Pl's Opp. at 16 (citing *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579, 642 (E.D. Pa. 2017)). Rather, this aspect of the Spending Clause is satisfied if grant conditions "bear some relationship to the purpose of the federal spending," 314 F.3d at 1067; here, therefore, the notice and access conditions must bear "some relationship" to the purposes of the Byrne JAG Program. The purposes of this Program are to promote criminal justice, crime prevention, criminal corrections, and the coordination of law enforcement and criminal justice at all levels of government, and the challenged conditions relate to those purposes by facilitating the identification and removal of criminal aliens in state and local custody.

## IV. Plaintiff's APA Claim Must Be Dismissed

### A. Plaintiff's APA Claim Does Not Challenge Final Agency Action

In relation to the requirement to challenge only "final agency action" under the Administrative Procedure Act, plaintiff relies on the rulings of other district courts that the mere *decision* to impose the challenged grant conditions constituted such final action. Pl's Opp. at 17-18. With respect, those rulings are incorrect. If OJP denies a grant award to Los Angeles based on refusal to abide by the challenged notice and access conditions, the City will have an opportunity at that time to challenge the denial administratively and, if necessary, in court. *See* 34 U.S.C. § 10154; *see generally* 28 C.F.R. Part 18. That would be the appropriate time to

challenge the grant conditions under the APA. The pendency of OJP's consideration of Los Angeles's compliance with 8 U.S.C. § 1373 is another reason why plaintiff's APA claim is premature: If the Office concludes that Los Angeles does not comply with Section 1373, it will deny the City's grant application on that basis, and plaintiff will never have to face accepting or rejecting the notice and access conditions.

**B. The Challenged FY 20176 Award Conditions Are Not Arbitrary or Capricious**

Assuming the Court reaches the merits of plaintiff's APA claim, the challenged conditions are reasonable rather than arbitrary or capricious. The Supreme Court directs that the "arbitrary and capricious" standard affords only a "narrow standard of review," under which "a court is not to substitute its judgment for that of the agency, and should uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-14 (2009) (citation omitted). This standard is "highly deferential," *Providence Yakima Med. Ctr. v. Sebelius*, 611 F.3d 1181, 1190 (9th Cir. 2010) (citation omitted), and does not authorize a district court "to substitute its judgment for that of the agency," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

The notice and access award conditions easily meet this standard because they support the Byrne JAG Program's criminal justice purposes with respect to "activities pertaining to *crime prevention, control, or reduction*, or the enforcement of the criminal law, including, but not limited to, police efforts to prevent, control, or reduce crime or to *apprehend criminals* . . . activities of courts having criminal jurisdiction, and *related agencies*," 34 U.S.C. § 10251(a)(1) (emphases added), by facilitating federal efforts to remove criminal aliens. Once removed, an alien who has committed a removable criminal offense is undeniably no longer present in this country with the potential to re-offend. *See* 8 U.S.C. § 1227(a)(2) (providing that a

criminal conviction for any of a wide array of criminal offenses renders an alien removable). The conditions also rationally promote interests in "maintain[ing] liaison" among tiers of government "in matters relating to criminal justice," 34 U.S.C. § 10102(a)(2), and comport with the intergovernmental cooperation that Congress contemplates in immigration enforcement, *see* 8 U.S.C. §§ 1226(d), 1357(g), 1373; *Arizona*, 567 U.S. at 411-12 (noting that Congress "has encouraged the sharing of information about possible immigration violations").

Plaintiff contends that this rationale – reducing crime based on information-sharing that supports immigration enforcement to remove criminal aliens – does not fully consider the issue and lacks supporting evidence. Pl's Opp. at 18-19. But USDOJ found that it is "common-sense" that facilitating removal to eliminate the threat of recidivism by criminal aliens "help[s] keep our communities safe," Dkt. No. 1, Ex. 2, and, "even in the absence of evidence, the agency's predictive judgment (which merits deference) makes entire sense" as "an exercise in logic rather than clairvoyance." *Fox Television*, 556 U.S. at 521; *see W. Fuels-Illinois, Inc. v. ICC*, 878 F.2d 1025, 1030 (7th Cir. 1989) (noting "great deference to an agency's predictive judgments …within the agency's field of discretion and expertise") (citation omitted). Plaintiff's apparent expectation that USDOJ should have sponsored "peer-reviewed studies" supporting its conclusion, Pl's Opp. at 19, also ignores that Congress did not intend to encumber agencies with burdensome procedural prerequisites for determining grant conditions; to the contrary, Congress expressly exempted "grants" from the APA's ordinary notice-and-comment rulemaking procedures. 5 U.S.C. § 553(a)(2). Plaintiff's assertion of contrary evidence, Pl's Opp. at 19, does not render USDOJ's conclusion irrational, since an agency is entitled to choose among differing viewpoints. *Cf. Sorenson Commc'ns, LLC v. FCC*, 897 F.3d 214, 230 (D.C. Cir. 2018) ("Arbitrary-and-capricious review is generally deferential, but it is particularly deferential in cases such as this, which

implicate competing policy choices, technical expertise, and predictive market judgments.") (citation omitted).

Lastly, plaintiff seeks to undercut defendants' reliance on the 2016 report by the USDOJ Office of the Inspector General ("OIG") on the basis that the report addressed compliance with 8 U.S.C. § 1373 rather than the challenged notice and access conditions. Pl's Opp. at 19. In reality, however, the OIG report discussed state and local laws and policies regarding cooperation with federal immigration authorities in general, including policies on providing release dates and access to detainees. Dkt. No. 86-2, Ex. G. Additionally, plaintiff attacks defendants' reliance on the "Backgrounder on Grant Requirements" issued by USDOJ upon adopting the challenged conditions, arguing that it was not attributed to "the Attorney General or any other decisionmaker." Pl's Opp. at 19. Plaintiff also attacks the accuracy of the statement in the Backgrounder that the conditions would "prevent the counterproductive use of federal funds for policies that frustrate federal immigration enforcement." *Id*. The Backgrounder, however, was attached to a statement by the Attorney General. Dkt. No. 1, Ex. 1. Further, state and local policies against giving immigration authorities notice of release status and access to detainees do, in fact, frustrate federal immigration enforcement. And although Byrne JAG funds are not actually "used" to fund those policies, providing Byrne JAG funds to jurisdictions that have such policies countenances the policies.

**CONCLUSION**

Accordingly, Counts One, Two, and Three in plaintiff's Complaint should be dismissed with prejudice.

Dated: August 27, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

NICOLA T. HANNA
United States Attorney

JOHN R. TYLER
Assistant Director

/s/ W. Scott Simpson

W. SCOTT SIMPSON (Va. Bar #27487)
Senior Trial Counsel

Department of Justice, Civil Division
318 South Sixth Street, Room 244
Springfield, Illinois 62701
Telephone: (202) 514-3495
Facsimile: (217) 492-4888
E-mail: scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANTS