NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF LOS ANGELES,<br><br>    Plaintiff,<br><br>    v.<br><br>JEFFERSON B. SESSIONS, III.; et al.,<br><br>    Defendants. | CASE NO. CV 17-7215-R<br><br>ORDER GRANTING PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION |

Before the Court is Plaintiff's Application for Preliminary Injunction (Dkt. No. 83), filed on July 18, 2018. Having been thoroughly briefed by both parties, this Court took the matter under submission on September 12, 2018.

The federal grant at issue is awarded by the Edward Byrne Memorial Justice Assistance Grant Program (the "Byrne JAG grant"). This grant supports state and local law enforcement efforts by providing additional funds for personnel, equipment, training, and other criminal justice needs. 34 U.S.C. § 10152. The Byrne JAG grant is a formula grant meaning the funds are awarded according to a formula provided by statute based on the state's population and rate of violent crime. 34 U.S.C. § 10156. Plaintiff City of Los Angeles has been a recipient of the Byrne JAG grant every year since 1997, and each year has received more than $1 million in funding. In 2017, Defendant Attorney General announced immigration compliance requirements that the Bureau of Justice Assistance ("BJA") would be imposing on Byrne JAG applicants to render

certain jurisdictions ineligible for funds if they did not change their policies and operations. The announcement explained that, "[f]rom now on, the Department will only provide Byrne JAG grants to cities and states that comply with federal law, allow federal immigration access to detention facilities ["Access Condition"], and provide 40 hours' notice before they release an illegal alien wanted by federal authorities ["Notice Condition"]." The conditions at issue here are the Access Condition and Notice Condition. Plaintiff City of Los Angeles has not changed its policies and operations, and as a result has not received Byrne JAG funding for the 2017 fiscal year. Now before this Court, Plaintiff seeks a preliminary injunction to enjoin the Access and Notice Conditions imposed by Defendants upon the Byrne JAG grant.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A party is entitled to injunctive relief upon a showing that: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in the moving party's favor, and (4) an injunction is in the public interest. *Id.* at 20. This Court finds that Plaintiff is entitled to a preliminary injunction.

First, the Court must determine the likelihood that Plaintiff will succeed on the merits. An agency "has no power to act . . . unless and until Congress confers power upon it." *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 374 (1986). Moreover, Congress may delegate authority and discretion to the Executive Branch through statute. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 489 (2001). But, if an agency "act[s] improperly . . . what they do is *ultra vires*." *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 291 (2013). Therefore, we must look to the statute itself to determine whether Congress has conveyed authority to the Attorney General to impose conditions on the Byrne JAG grant. "If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *Russello v. United States*, 464 U.S. 16, 20 (1983).

Here, the Byrne JAG program is codified at 34 U.S.C. §§ 10151-10158. The authority explicitly granted to the Attorney General within the Byrne JAG statute is limited. The statute

1  provides that the Attorney General is authorized to determine the "form" of the application, 34
2  U.S.C. § 10153(a); "reasonably require . . . the applicant [to] maintain and report . . . data, records,
3  and information (programmatic and financial)," 34 U.S.C. § 10153(a)(4); and "develop
4  guidelines" for "a program assessment . . . in coordination with the National Institute of Justice,"
5  34 U.S.C. § 10152(c)(1).  The language of the statutes gives no indication that DOJ is authorized
6  to add civil immigration conditions to those just mentioned.  Although Congress granted the
7  Attorney General the power to carry out very limited actions, it did not "grant the Attorney
8  General the authority to impose conditions that require states or local governments to assist in
9  immigration enforcement, nor to deny funds to states or local governments for the failure to
10 comply with those conditions."  *City of Chicago v. Sessions*, 888 F.3d 272, 284.  (7th Cir. 2018).

11         To further show that the program is not to be administered according to the Attorney
12 General's discretion, Congress structured the Byrne JAG program as a formula grant.  34 U.S.C.
13 §§ 10151-58.  And formula grants "are not awarded at the discretion of a state or federal agency,
14 but are awarded pursuant to a statutory formula."  *City of Los Angeles v. McLaughlin*, 865 F.2d
15 1084, 1088 (9th Cir. 1989).  The statutory formula requires the Attorney General to give 50% of
16 available funds to each State in proportion to its population, with the remaining 50% to be given to
17 each State in proportion to its violent crime rate.  34 U.S.C. §10156(a).  As stated above, the
18 authority granted to the Attorney General within the Byrne JAG statute regarding distribution of
19 funds is extremely limited and leaves little room for discretion.

20         The only argument presented by DOJ in other cases to support its theory that it has
21 authority to impose the Notice and Access Conditions is 34 U.S.C. § 10102(a)(6).  This provision
22 of the statute states that the Assistant Attorney General "shall . . . exercise such other powers and
23 functions as *may* be vested in the Assistant Attorney General pursuant to this chapter or by
24 delegation of the Attorney General, including special conditions on all grants, and determining
25 priority purposes for formula grants." 34 U.S.C. § 10102(a)(6) (emphasis added).  However, §
26 10102(a)(6) must be viewed in its context of the statute as a whole, rather than as an isolated
27 provision.  Viewed in context, the provision allows the Attorney General to delegate powers to the
28 Assistant Attorney General to aid in administering the Office of Justice Programs, whereas the

Byrne JAG grant is a Bureau of Justice Assistance Program that is codified in a different subchapter of Chapter 101 and isolated from other discretionary grants within its own subchapter. Reading § 10102(a)(6) to authorize the Attorney General to impose conditions on all grants under the entire chapter contradicts the explicit grants of authority in other sections of the statute.

Here, the Notice and Access Conditions exceed statutory authority, and trying to impose such conditions is a violation of the separation of powers doctrine and *ultra vires*. Further, because Congress did not authorize the Attorney General to impose such conditions, this Court finds it unnecessary to determine whether the conditions violate the Spending Clause or the Administrative Procedure Act. Therefore, regarding the Notice and Access Conditions, Los Angeles has shown a likelihood of success on the merits.

Next, the Court must assess the possibility of irreparable injury to Plaintiff in the absence of injunctive relief. Irreparable injury must be more than merely speculative in order to warrant a preliminary injunction. *See Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013).

Here, Plaintiff has made a showing of harm that is sufficient to meet the second element of the *Winter* test. While Los Angeles makes many arguments as to how it will suffer irreparable injury absent an injunction, this Court finds most persuasive its argument that it is faced with an impossible choice: either it must certify compliance with unconstitutional and unlawful directives that impinge on the City's sovereignty, damage community trust, and harm public safety, or it will lose congressionally authorized Byrne JAG funding. *See City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 950 (N.D. Ill. 2017) ("[A] 'Hobson's choice' can establish irreparable harm."). By agreeing to participate in federal civil immigration efforts in order to receive Byrne JAG funds, Los Angeles would have to compromise its longstanding policy that involving LAPD in civil immigration enforcement diminishes community trust and undermines public safety. Like the Seventh Circuit held in *City of Chicago v. Sessions*, some localities "may see such cooperation as impeding the community relationships necessary to identify and solve crimes." 888 F.3d 272, 282 (7th Cir. 2018). "The harm to the City's relationship with the immigrant community if it should accede to the conditions is irreparable." *City of Chicago*, 264 F. Supp. 3d at 950. In addition, Los

Angeles is irreparably harmed because the conditions deprive it of Byrne JAG funding for the 2017 fiscal year, meaning it is barred from receiving a funding opportunity which it has been, and otherwise would be, entitled to based on Congress' statutory formula.  Therefore, Plaintiff has made a showing of irreparable harm.

Finally, Plaintiff must show that the balance of equities tips in its favor and that a preliminary injunction is in the public interest.  Denying the preliminary injunction in this case would cause substantial hardship to Plaintiff, which would be faced with the choice of acceding to DOJ's unlawful conditions or being deprived of significant funding needed for its local law enforcement efforts.  Ultimately, the public interest is better served if the City is not forced to choose between foregoing the Byrne JAG grant funds and losing its rapport with the immigrant community.  Defendants argue that the conditions promote operational efficiency and are authorized by federal law, but as explained above, the conditions imposed are *ultra vires*.  As stated by the Ninth Circuit, it is "always in the public interest" to issue an injunction to "prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).  Accordingly, this Court finds that balancing the equities and weighing the public interest tips the scale in favor of Plaintiff, and thus, Plaintiff in entitled to a preliminary injunction.

**IT IS HEREBY ORDERED** that Plaintiff's Application for Preliminary Injunction is GRANTED.  (Dkt. No. 83).

Dated: September 13, 2018.

                        MANUEL L. REAL
                   UNITED STATES DISTRICT JUDGE